FILED
04 NOV 15 PM 2:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SERRA CHEVROLET, INC. | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| V. | ) CIVIL ACTION NO. |
| | ) |
| GENERAL MOTORS CORPORATION, | ) CV-01-HS-2682-S |
| | ) |
| DEFENDANT. | ) |

### PLAINTIFF'S MOTION FOR SANCTIONS OR, IN THE ALTERNATIVE, FOR DEFAULT JUDGMENT AGAINST GENERAL MOTORS

COMES NOW the Plaintiff, Serra Chevrolet, Inc., and files this Motion for Sanctions or, in the alternative, for a Default Judgment against General Motors (hereinafter "GM") for its dilatory and flagrantly abusive discovery tactics in this matter. In support of its Motion, the Plaintiff says as follows:

1. One of the claims asserted by the Plaintiff in this litigation is that GM has allocated its new vehicle product among the Birmingham area Chevrolet dealers in an arbitrary and unreasonably discriminatory manner and has unlawfully restricted the Plaintiff's allocation of new vehicles. The Plaintiff's vehicle misallocation claims against GM stem from GM's continued preferential treatment of Edwards Chevrolet, including but not limited to GM's authorization for Edwards to purchase Century Chevrolet in 2000. Such authorization to purchase Century Chevrolet has resulted in Edwards having two (2) dealership points in the Birmingham metropolitan area and thereby has enabled Edwards to receive a greater and more favorable allocation of new vehicles, to the detriment of the Plaintiff.

2. On February 23, 2004, the Plaintiff propounded its First Interrogatories and Request for Production upon GM which, in part, asked for any and all allocation records and documents reflecting new vehicles and products delivered to Serra Chevrolet, Edwards Chevrolet, Dewey Barber Chevrolet, and all other Birmingham MDA dealers from 2000 to present.

3. On June 23, 2004, based upon GM's refusal to produce any of the vehicle allocation records for the Birmingham area Chevrolet dealers, with the exception of Serra Chevrolet[1], the Plaintiff filed a Motion to Compel GM to produce all outstanding discovery, including but not limited to the allocation records previously requested.

4. By Order dated August 28, 2004, after hearing oral argument, the Court granted the Plaintiff's Motion to Compel and ordered GM to produce the vehicle allocation records regarding each of the Birmingham metropolitan area Chevrolet dealers. In so doing, the Court afforded GM an additional 60 days in which to produce such allocation records.

5. That despite the Court's August 28, 2004 Order directing GM to produce all such allocation records within 60 days, GM again has failed and refused to do so. Instead, GM waited until the 60th day -- when such records were due to be produced -- and then filed a perfunctory Motion to Reconsider. GM's Motion is meritless for the reasons set forth in the Plaintiff's Opposition thereto, and further evidences GM's continuing efforts to obstruct and delay necessary discovery in this matter.

6. Along with its Motion to Reconsider, GM has produced what purports to be electronic allocation data for the other Birmingham area dealers. However, simultaneously

---

[1] While GM has produced certain allocation data concerning Serra Chevrolet, a review of the Plaintiff's allocation records, in isolation, proves to be of little, if any, value as it fails to take into account what was happening among the Plaintiff's competitors against whom the Plaintiff was competing in sales, and to an extent, for new vehicle product.

therewith, GM instructed the Plaintiff's counsel not to share such electronic data with the Plaintiff or its experts until the Court has ruled on its Motion to Reconsider. Based upon such unilateral restrictions imposed by GM on this production, any purported production is meaningless. Specifically, without affording the Plaintiff's experts an opportunity to review the electronic data which has been turned over to Plaintiff's counsel, it is impossible to know or predict whether such information is fully responsive to the Plaintiff's requests, and complies with the Court's Order. In fact, given the significant deficiencies which still exist with respect to GM's production of allocation data concerning Serra Chevrolet, as set forth hereinbelow, the Plaintiff is reasonably certain that this production by GM is in the same format and thereby is deficient for the same reasons that GM's other allocation production concerning the Plaintiff is deficient.

7.      With respect to GM's previous production of the allocation records for Serra Chevrolet, the Plaintiff has determined that such production is grossly deficient in numerous respects. Specifically, GM's prior production of allocation records with respect to Serra Chevrolet does not constitute the basic allocation records documenting the actual production, ordering, and delivery of new Chevrolets destined for Serra Chevrolet at the actual times of these activities. Such basic allocation records are contained only in the VOM Reports.[2] While GM has produced certain allocation records concerning the Plaintiff, such records do not include the raw allocation data as referenced in GM's VOM Manual. To illustrate, the VOM Reports contain vital weekly allocation data, while GM's production largely consists of aggregate monthly information. In fact, GM's production of allocation records concerning

---

[2] VOM is an acronym (Vehicle Order Management) for GM's online electronic system, introduced in 2000, governing the ordering, production, allocation and delivery of new model year vehicles for its dealership body. Accompanying its new electronic allocation system, GM prepared a VOM Manual.

Serra Chevrolet consists largely of summary compilations purportedly based upon the raw data requested by the Plaintiff. (See Affidavit of Michael Ileo, attached hereto as Exhibit A).

8. GM's production of allocation records for Serra Chevrolet to date consists of two electronic files (designated as Files A and B), which contain various allocation, sales and related data from January 2001 to April 2004. However, the allocation data contained in Files A and B are inconsistent and conflict in material respects with one another. Furthermore, the allocation records produced DO NOT constitute the raw allocation data needed for meaningful analysis, as specifically referenced in GM's VOM Manual, and are far less extensive than what is contained in the various reports identified in the VOM Manual. (See Affidavit of Michael Ileo) Only upon a review and analysis of the raw allocation data as referenced in GM's VOM Manual will the Plaintiff be able to determine if it was receiving an allocation of vehicles consistent with GM's allocation system.

9. The importance of the production of such raw allocation data cannot be understated. In fact, prior to GM's implementation of the VOM system, there existed an internal GM document, known as the 832 Report, which provided the underlying data concerning a dealer's allocation from GM, and which was critical to any vehicle misallocation claim. It was undisputed that the 832 Report was the "sole source" document which provided vital information concerning every dealer's allocation, and that such document were not furnished nor made available to dealers. While the name of GM's allocation system may have changed, the nature and basis of its system has not. GM's allocation system is still based upon the "turn and earn" concept. Accordingly, internal GM documents still exist, in roughly the same format, which contain the relevant underlying allocation data necessary to determine whether a dealer is receiving its fair share of new vehicle product. Such documents, which

4

have been withheld by GM to date, are necessary to allow the Plaintiff to determine whether GM has provided the Plaintiff with its fair share of new vehicle product relative to the other Birmingham area Chevrolet dealers.

10. Finally, GM's production is also deficient and fails to comply with the Court's August 28, 2004 Order with respect to the Plaintiff's request (Request No.3) regarding the status of all of GM's Chevrolet satellite facilities. Specifically, in response to the Plaintiff's requests regarding the status of these satellite facilities, GM initially provided a list of the names of approximately 23 satellite facilities which GM states are currently "active." The problem with this initial response is that it fails to account for the names and disposition of the remaining 30 to 40 satellite facilities (i.e. whether these satellites were voluntarily terminated, involuntarily terminated, or converted to a full point dealership).[3] Thereafter, and by letter dated November 11, 2004, GM identified the names of approximately 12 additional satellite facilities whose satellite sales agreements have been terminated or have expired since 1990. Again, this response fails to account for a significant number of other Chevrolet satellite facilities, and further fails to state the nature of the termination or expiration (i.e. voluntarily terminated, involuntarily terminated, or converted to a full point dealership).

11. GM's deliberate refusal to produce accurate and complete allocation records, and in the format identified in its VOM Manual, is clearly a by-product of its litigation strategy to withhold and deny the Plaintiff vital information to support its claims, as well as to prevent or short-circuit future misallocation or mal-distribution claims by other dealers. GM has taken such an obstructionist position because it knows that such allocation records are necessary to

---

[3] It is undisputed that Gerald Desmond, GM's former top executive who was responsible for and most knowledgeable about GM's satellite program, testified that there were approximately 70 Chevrolet satellites facilities created by GM.

5

enable the Plaintiff to demonstrate the disparate treatment which GM had afforded the Plaintiff, in contrast to the other Birmingham MDA dealers.

12. GM's conscious decision to withhold the production of such pertinent and material information during the pendency of this litigation constitutes a gross abuse of discovery, as well as a deliberate refusal to comply with the Court's Orders for which the severest of penalties and sanctions is warranted. Such deliberate conduct constitutes an obstruction of justice and demonstrates GM's flagrant disregard for the discovery process. Further, such tactics have resulted in a manifest injustice against the Plaintiff's attempt to obtain necessary and discoverable information.

13. Such tactics to conceal information and hamper the Plaintiff's discovery have greatly prejudiced the Plaintiff's ability to compare its own allocation of vehicles with that of the other Birmingham MDA dealers. General Motors is well aware that such a comparison is critical to demonstrate the disparate and unlawful treatment of the Plaintiff by GM.

14. Based upon GM's utter disregard for the rules of evidence, the Plaintiff respectfully requests that the Court severely sanction the Defendant for its intentional misconduct. In the alternative, the Plaintiff moves the Court to enter a default judgment, pursuant to Rule 37(b)(2)(C), based upon GM's consistent failure to produce requested information which has been specifically ordered by the Court.

WHEREFORE, premises considered, the Plaintiff respectfully requests that this Court grant its Motion for Sanctions and assess monetary sanctions against Defendant General Motors for its part in engaging in abusive discovery tactics, as well as attorneys fees. In the alternative, the Plaintiff requests that the Court enter a Default Judgment against General Motors in an amount determined to sufficiently punish GM for refusal to produce responsive documents as ordered by

the Court, and for any such other further and different relief as to which the Plaintiff may be entitled.

_____
JEFFREY P. MAURO
Bar ID No. ABS-0478-U71J

_____
THOMAS E. BADDLEY, JR.
Bar I.D. NO. ASB-2867-E42T

BADDLEY & MAURO, LLC
Suite 201, 2545 Highland Avenue
Birmingham, Alabama 35205
205/939-0090

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing pleading upon all counsel of record listed below:

Jere F. White
Terence W. McCarthy
LIGHTFOOT, FRANKLIN
The Clark Building
400 20th St N
Birmingham AL 35203-3202

by depositing same in the United States Mail, postage prepaid, on this the __15__ day of __November__, 2004.

_____
JEFFREY P. MAURO

7