IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SERRA CHEVROLET, INC., ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION NO. |
| ) | |
| v. ) | CV-01-P-2682-S |
| ) | |
| GENERAL MOTORS CORPORATION, ) | ORAL ARGUMENT REQUESTED |
| ) | |
| Defendant. ) | |

**DEFENDANT GENERAL MOTOR'S RESPONSE TO MOTION FOR SANCTIONS**

Defendant, General Motors Corporation ("GM" or "Defendant), submits this Response in opposition to Plaintiff's Motion for Sanctions, or in the Alternative, for Default Judgment Against General Motors.

**INTRODUCTION**

Plaintiff's motion is interposed solely for purposes of harassment, lacks any factual basis, and is utterly without merit. Plaintiff, through the use of inflated rhetoric, hyperbole, and exaggeration, asks the Court to enter a default judgment against GM based on its mistaken claim that GM has not provided the documents and data that the Court ordered produced. The main claim in Plaintiff's motion appears to be that GM has "withheld" some new Chevrolet vehicle allocation data from Plaintiff. However, as GM Employee Tim A. Jones clearly states in the attached affidavit, GM has produced the data for new vehicle allocation for Serra and Edwards Chevrolet from January 2001 through June 2004 and for the other Birmingham metropolitan area Chevrolet dealers from June 2001 through June 2004, the period for which the data is available for those dealers. See Ex. A, Affidavit of Tim A. Jones, ¶ 2-3. At the August 27, 2004 hearing on the Plaintiff's Motion to Compel, the Court directed GM to produce the vehicle allocation

1

data requested by Plaintiff and GM has done so within the timeframe established by the Court. In fact, GM has provided Plaintiff with the discovery responses with respect to all of the seven areas directed by the Court. The only other item Plaintiff's motion mentions is the sales satellite data, which GM has also produced.

Plaintiff's motion is also in violation of the Court's Scheduling Order. Defendant would show to the Court that Plaintiff did not attempt to address much less attempt to resolve with GM's counsel his latest complaint—that GM has "withheld" vehicle allocation data—prior to seeking the Court's intervention. In fact, the only time that Plaintiff's counsel raised a question about the vehicle allocation data produced by GM was when Plaintiff's counsel informed Defendant's counsel to say that he was unable to locate certain data on the computer disks produced. Defendant's counsel promptly responded with instructions on where to find the data that Plaintiff sought. See Ex. B, Letter to Pl.'s Counsel. GM's counsel has heard nothing further from Plaintiff's counsel concerning the allocation data until the receipt of this motion.

By making no efforts whatsoever to resolve his alleged dispute with opposing counsel short of filing a Motion for Sanctions, Plaintiff is in direct violation of the Court's Scheduling Order, which states:

> No motions concerning discovery matters should be filed until counsel have exhausted all efforts to resolve the dispute among themselves. <u>Every discovery motion must affirmatively state all efforts to resolve the disputed matter; failure to attempt to resolve the dispute without court intervention or to affirmatively so state will result in the automatic denial of the motion.</u>

Docket No. 68, Court's Scheduling Order, p. 3. Plaintiff's violation of the Court's scheduling order is particularly telling here as much of Plaintiff's motion seems to be based on a misunderstanding of the data GM produced. This topic could and should have been addressed first between counsel. Had that been the case, the Plaintiff' motion would now be moot.

2

An additional reason to deny Plaintiff's motion is Plaintiff's failure to produce any evidence that GM acted improperly in any way—much less knowingly and willfully—during the discovery phase of this case. In fact, the only evidence before the Court concerning the discovery issue shows that GM acted in good faith in responding to Plaintiff's discovery requests and supplementing these responses when appropriate. GM has produced all the documents it was required to produce, and no amount of carping by the Plaintiff will change that fact.

In sum, Plaintiff's motion is devoid of legal or evidentiary authority establishing any valid basis under Federal or Alabama law upon which this Court should sanction GM. In further opposition to the motion, Defendant shows unto the Court as follows:

1.  Plaintiff bases it Motion for Sanctions against GM based on GM's alleged "dilatory and flagrantly abusive discovery tactics." Pl.'s Motion for Sanctions, Introduction. In various other parts of its filing, Plaintiff also accuses Defendant of "obstruction of justice," "flagrant disregard for the discovery process," "manifest injustice," "delay and deception," "egregious conduct" and "flagrant conduct." Id. at ¶ 12; Pl.'s Memorandum ¶ 11, 12, 13.

2.  When the Plaintiff's rhetoric and irrelevant citations are stripped away, the Plaintiff's argument boils down to three basic contentions: 1) that Defendant inappropriately filed a Motion to Reconsider the Court's decision concerning Plaintiff's Motion to Compel; 2) that GM has failed to produce "some" new vehicle allocation data in a format described in the VOS manual, and; 3) that GM's response concerning satellite sales agreements with Chevrolet dealers is insufficient. Defendant will address each of Plaintiff's arguments in turn.

3.  By Order dated August 28, 2004, the Court granted the Plaintiff's Motion to Compel and directed GM to produce the vehicle allocation data for the Birmingham area Chevrolet dealers within 60 days of the Court's order. GM had already produced the allocation data for Serra Chevrolet to Plaintiff on August 19, 2004.

3

4.   On October 27, 2004, prior to the 60 day deadline expiring, the Defendant filed a Motion to Reconsider the Court's decision on the Motion to Compel. The motion was based on the subsequently taken deposition testimony of Plaintiff, taken on October 5, 2004, obviously after the Court's granting of the Motion to Compel. Despite Plaintiff's protests, Defendant was clearly within its rights to file such a Motion to Reconsider under Fed. R. Civ. P. 60(b) based on facts developed in the discovery process subsequent to the Court's Order which obviously were not before the Court at the August 27, 2004 hearing.

5.   GM did not unilaterally refuse to provide the data as the Plaintiff suggests. On the very same day the Motion to Reconsider was filed, Defendant's counsel produced the requested Chevrolet vehicle allocation data for the Birmingham area Chevrolet dealers to Plaintiff's counsel. Given that Defendant's Motion to Reconsider was pending, Defendant reached an agreement with Plaintiff's counsel that Plaintiff would not turn over the new vehicle allocation records for the other Birmingham area Chevrolet dealers to anyone until the Court had ruled on Defendant's Motion to Reconsider. See Ex. C, Oct. 27, 20004 Letter to Pl.'s Counsel.

6.   Despite Defendant's good faith compliance with the Court's Order, Plaintiff now complains that Defendant's "purported production [of allocation records for Birmingham dealers] is meaningless." Pl.'s Motion, ¶ 6. Nonsense. Defendant in fact turned over the data to Plaintiff's counsel on a timely basis and Plaintiff's counsel himself *agreed* not disclose them to anyone else until the Court had ruled on GM's Motion to Reconsider. Now that the Court has ruled on the Defendant's Motion to Reconsider, the Plaintiff has been free to share these records with its experts since the date of the Court's ruling, pursuant to the Court's Protective Order.

7.   The second purported basis for Defendant's Motion for Sanctions is that GM's production of the new vehicle allocation data is incomplete. Plaintiff's contention is absolutely false. As GM employee Tim Jones's affidavit makes clear, GM has provided all the data upon

4

which Chevrolet new vehicle allocation is based for the periods indicated as directed by the Court. Mr. Jones's affidavit states this fact unambiguously:

> GM has provided in electronic form the data related to new vehicle allocation for Serra Chevrolet and Edwards Chevrolet for the period January 2001 through June 2004. GM has produced all the data upon which its new vehicle allocation activity is based for the time periods set forth above.

Affidavit of Tim A. Jones, ¶ 2,3.

8. From the outset of this lawsuit, Plaintiff has specifically requested that the new vehicle allocation data be produced in electronic format.[1] Now, in an about-face, Plaintiff claims that GM's production is "incomplete" because it is not in "the format identified in its VOM [Vehicle Order Management] Manual." GM Allocation Director, Tim Jones, explains the VOM system:

> The VOM application is available to the dealers via a web-based computer format which utilizes web-based computer screens to display the data. The "reports" referenced by [Dr.] Illeo in the VOM Manual are simply computer screens which are populated with the allocation data which changes from time period to time period based on normal business activity. The formatted screens themselves are not retained for all the time periods requested by plaintiff but the underlying data is. Further, the screens themselves cannot be provided in electronic format as the plaintiffs requested. As described in paragraph 3, the actual underlying data has been provided in electronic form.

Affidavit of Tim A. Jones, ¶ 4. Thus, GM has provided Plaintiff the data in the format asked for. This obviously is not a basis for a Motion for Sanctions against GM.

9. Proof that Plaintiff misunderstands the data that GM has produced is found in Plaintiff's statement that the "allocation data contained in Files A and B are inconsistent and conflict in material respects with one another." Pl.'s Motion, ¶ 8. However, Plaintiff's

---

[1] In one letter to Defendant, Plaintiff stated that the allocation data "**must**" be in electronic format. (emphasis in original) Ex. H, August 11, 2004 Letter.

speculation that there is an "inconsistency" between the two files, which means something is "missing" from the data, is simply wrong and apparently stems from an inability to understand what was produced. Calculations from the data contained in File A and File B <u>should</u> be different because they reflect different components in the new vehicle allocation process. Jones Aff. ¶ 5.

10. What Plaintiff calls "File A" is the VOM allocation database file and contains data which is used in the <u>monthly</u> allocation consensus process. Jones Aff. ¶ 5. What Plaintiff calls "File B," on the other hand, contains data which is used for the <u>weekly</u> order placement process. <u>Id.</u> Thus, as Mr. Jones described, the data in the two files is for processes that are "different, and take place over different time periods, at different times in the business process and are for different business purposes." Jones Aff. ¶ 5. There is nothing "inconsistent," or anything "missing," in the data as Plaintiff has speculated. Plaintiff's confusion over what was in the data produced could have been easily addressed had Plaintiff followed the Court's Scheduling order and informally asked these questions to Defendant's counsel.

11. A further sign that Plaintiff does not understand Defendant's allocation records is his insistence that GM maintains "832 Reports." The 832 Report was a document used in the Chevrolet distribution system until 1998 when it was replaced by the Vehicle Order Management System [VOMS]. Jones Aff. at ¶ 6. Here again, in spite of Plaintiff's speculation, these documents have not been used for <u>six years</u>, well before the time periods at issue here. See Id.

12. Another fact that Plaintiff cannot change is that the Court directed Defendant to provide vehicle allocation data going back only to 2001. <u>See</u> Ex. D, Court Transcript, p. 30. Dr. Ileo, however, states in his affidavit that "[a]ccuracy, completeness, and consistency, as well as reconciliation of information conflicts are achievable only thorough [sic] production by GM of all the data . . . starting with the new 2001 model year in May/June 2000." Ileo Aff. ¶ 17. Thus,

6

a further basis of the motion is that GM did not produce data from periods <u>before</u> January 2001, despite the parameters set by the Court's Order on this topic.

13. The Court was very clear that Plaintiff was entitled to allocation records going back to calendar year 2001 and no more. During the hearing on Defendant's Motion to Compel, the Court expressly stated that it was enforcing Judge Proctor's prior Order in which he stated that Plaintiff was permitted to conduct discovery into Plaintiff's proposed topic, "GM's misallocation of vehicles since 2001." Ex. D, Motion to Compel Hearing Transcript, J. Hopkins, at p. 30; Ex. E, Order, Jan. 28, 2004, J. Proctor, p. 3. Therefore, the claim by Plaintiff that Defendant has failed to comply with the Court's order by not providing records dated prior to January 2001 must be rejected.

14. Finally, Plaintiff argues that GM's production is also "deficient" with respect to GM's agreements with Chevrolet dealers concerning satellite facilities. Plaintiff's Request for Production No. 3 asks for a list of all Chevrolet dealers who participated in the satellite program "and the status of each of these satellite facilities (i.e., open, full point, or termination)."

15. GM has provided Plaintiff with a list of 23 Chevrolet Dealers who have active satellite agreements with GM and a separate list of 12 Chevrolet dealers whose satellite sales agreements have been terminated or have expired since 1990. This information was provided based upon a review of GM's current business records to determine the information. <u>See</u> Ex. F, Aff. of William Hepburn. Plaintiff claims that this response is insufficient. Plaintiff apparently relies on the deposition of former GM employee Gerald Desmond, who, according to Plaintiff, "testified that there were approximately 70 Chevrolet satellites [sic] facilities created by GM."

16. Mr. Desmond, who unfortunately passed away in October 2002, testified that there were "no more than 60 or 70, but no less than 50 or 60, right in that area . . . and that is a guess. Ex. G, Depo. of Gerald M. Desmond, p. 38, taken June 29, 2000.

SCAN4123_000.tif

17. Thus, the Plaintiff's whole motion here is based on what Mr. Desmond termed a "guess" in his deposition. The information in GM's business records is the correct information and has been provided to Plaintiff.

18. Finally, Plaintiff's motion argues that GM's production of the satellite sales agreement is "deficient" because it "fails to state the nature of the termination or expiration" of the agreements. Pl.'s Motion, ¶ 10. Specifically, Plaintiff wants to know why the satellites were terminated. However, Plaintiff's Request for Production did not ask GM for this information. Plaintiff's discovery request simply stated that it wanted a list of the satellite facilities and the status of each of these satellite facilities (i.e. open, full point, or termination). As noted, Defendant produced a list of the Chevrolet dealers with active sales satellite agreements with GM and those whose agreements had expired or were terminated. Plaintiff cannot base a Motion for Sanctions on GM's failure to provide information that Plaintiff did not even ask for.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion should be denied and Plaintiff should be made to pay Defendant's costs for having to respond to this motion, which, as stated previously, was filed in violation of the Court's Scheduling Order.

Respectfully submitted,

_____
One of the Attorneys for Defendant

OF COUNSEL:
Jere F. White, Jr. (WHI007)
Terry W. McCarthy (MCC119)
Sanford G. Hooper (HOO033)
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, Alabama 35203
(205) 581-0700
(205) 581-0799 (fax)

## CERTIFICATE OF SERVICE

This is to certify that on this 23rd day of November, 2004, a true and correct copy of the foregoing was served on counsel of record by depositing a copy of same in the United States Mail, postage prepaid, properly addressed to

    Thomas E. Baddley, Jr., Esq.
    Jeffrey P. Mauro, Esq.
    BADDLEY & MAURO, LLC
    2545 Highland Avenue, Suite 201
    Birmingham, AL 35205

_____
OF COUNSEL