FILED
2004 Nov-30 AM 09:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

A



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SERRA CHEVROLET, INC. | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | |
| v. | ) | CV-01-HS-2682-S |
| | ) | |
| GENERAL MOTORS CORPORATION | ) | |
| | ) | |
| Defendant. | ) | |

_____

## AFFIDAVIT OF TIM A. JONES

After being duly sworn, Tim A. Jones deposes and says:

1.    My name is Tim A. Jones.  I have been employed by General Motors Corporation ("GM") for 32 years and am currently the Director of Allocation and Order Fulfillment for GM's Vehicle Sales, Service and Marketing activity.  In that position, I am very familiar with GM's Vehicle Order Management System ("VOMS").  I have personal knowledge of the matters set forth in this Affidavit.

2.    In response to what I understand to be the discovery requests filed by plaintiff in this case, GM has provided in electronic form the data related to new vehicle allocation for Serra Chevrolet and Edwards Chevrolet for the period January 2001 through June 2004.  Subsequently, pursuant to what I understand to be the court's directives, GM provided the same data in electronic form for the other Chevrolet dealers in the Birmingham multiple dealer area, for the time period June 2001 through June 2004, the period for which the data is available.  The data was produced as maintained by GM in the normal course of business.

3.      GM has produced all the data upon which its new vehicle allocation activity is based for the time periods set forth above.  The statements claiming otherwise in plaintiff's motion and the Ileo Affidavit, which I have read, are wrong, inaccurate without factual basis and appear to be based on a inability to recognize and understand the data produced.   The data, as plaintiff specifically requested, was produced in electronic form.  The data was in two files: (1) The VOM Monthly Allocation data (what the Ileo Affidavit refers to as File A) and (2) the Weekly Order Placement data (what the Ileo Affidavit refers to as File B).  For ease of reference, I will refer to each of them in the same way the Ileo Affidavit does.

A complete list of the Monthly Allocation data produced is:

1.      Selling Source
2.      Distribution Entity
3.      Allocation Group
4.      Allocation Period
5.      BAC
6.      Model Year
7.      Availability Period
8.      Sales Driver
9.      Driving Weeks Sales
10.     In-System Quantity
11.     In-Stock Quantity
12.     Generated Quantity
13.     Balance To Go
14.     Variance Resolution Availability Quantity
15.     Temporary Protection Quantity
16.     Fleet To Retail
17.     Retail To Fleet
18.     Total Vehicle Availability
19.     Temporary Allocation Quantity
20.     Estimated Shipments
21.     Availability Days Supply
22.     National Bar Days Supply
23.     Variance Resolution Availability Days Supply
24.     Daily Sales Rate
25.     Dealer Consensus Quantity
26.     Final Allocation Quantity

2

27.   Calculation Indicator
28.   In-Transit Adjustment
29.   Allocation Method
30.   Sales History Code

(This is what Ileo refers as "File A").

A complete list of the Weekly Order Placement data produced is:

1.    Report Date
2.    Model Year
3.    Allocation Group
4.    Total Preliminary Orders Received From Dealer
5.    Weekly Allocation Quantity
6.    Dealer Weekly Desired Allocation Quantity
7.    Orders Placed Prior
8.    Pass 1 Orders Placed
9.    Pass 2 Orders Placed
10.   Pass 3 Orders Placed
11.   Pass 4 Orders Placed
12.   Weekly Total Placed
13.   Desired Quantity Balance
14.   Total National Availability
15.   Dealer Availability Days Supply
16.   National Availability Days Supply Bar
17.   National Placement Attempts
18.   Dealer Placement Attempts
19.   Sales/Availability Pass 3 As Of Date
20.   Grounded Stock/In-Transit Quantity
21.   In-System Quantity
22.   Selected Pass 1-2
23.   Weighted Availability
24.   Number Of Deliveries
25.   Daily Sales Rate

(This is what Ileo refers to as File "B").

4.      Paragraph 10 of the Ileo Affidavit, which states that the contents of Files A and B are "far less extensive" than contained in "various reports" identified in the VOM Manual, which I understand GM previously produced, is simply wrong. The VOM application is available to the dealers via a web-based computer format which utilizes web-based computer screens to display the data. The "reports" referenced by Ileo in the

3

VOM Manual are simply computer screens which are populated with the actual data which changes from time period to time period based on normal business activity. The formatted screens themselves are not retained for the time periods requested by plaintiff but the underlying data is. Further, the screens themselves cannot be provided in electronic format as the plaintiffs requested. As described in paragraph 3, the actual underlying data has been provided in electronic form as requested.

5.      Review of paragraphs 11-16 of the Ileo affidavit show that the author of it does not understand what has been produced in either the VOM Monthly Allocation data (Ileo's "File A") or the Weekly Order Placement data (Ileo's "File B"). The VOM Monthly Allocation data contains data which is used in the monthly allocation consensus process. The Weekly Order Placement data contains data which is used for the Weekly Order Placement process. These processes are different, and take place over different time periods, at different times in the business process and are for different business purposes. Accordingly, the Daily Sales Rate calculated from the VOM Monthly Allocation data for the Avalanche model at 0.176 at the end of November of 2001, as set forth in Ileo's paragraph 12, is a correct calculation. Similarly, the Daily Sales Rate calculated from the Weekly Order Placement data for the Avalanche model of 0.133 for the weeks of November 8th and November 15, 2001, as set forth in Ileo's paragraph 13, are also correct calculations. There is nothing "incomplete", "inconsistent" or "puzzling" as Ileo speculates about the differences in the Daily Sales Rate numbers calculated from the VOM Monthly Allocation data and the Weekly Order Placement data. As one would expect, the applicable calculations, like Daily Sales Rate, can and should differ because they are made at different times, cover different time periods, and are for different

4

SCAN4122_000.tif

purposes in the business process.   The same calculations are made for all Chevrolet dealers.  Similarly, the calculations set forth in paragraphs 14 and 15 of Ileo Affidavit are correct and what I would expect from a review of the data.   There is no factual basis to speculate, as Ileo has done, that there is anything "missing" from the data.   Simply put, one cannot look at VOM Monthly Allocation data or the Weekly Order Placement data in isolation, as Ileo has done, and then conclude the data is "not correct" or "is not complete" because that is simply comparing apples and oranges.

6.     Paragraph 9 of plaintiff's motion references a document which was called an "832 Report".   That document was used in the Chevrolet distribution system which was discontinued in late 1998 when it was replaced by the VOM system   Thus, that document has not been used for approximately 6 years since the VOM system was put in place.   Plaintiff's motion is simply wrong when it states that "internal GM documents still exist, in roughly the same format"...(as the 832 Report)... which have been "withheld by GM".   These statements are simply untrue.   As set forth in paragraph 3, the actual data has been produced in electronic form as specifically requested by plaintiffs.

7.     Counsel for GM advised me that plaintiff had noticed a deposition of the GM person most knowledgeable about the VOM system.   I believe I am one of the GM employees most knowledgeable about the system and was so identified to plaintiff.   I was prepared to go forward with the deposition requested by plaintiff which was set for Friday, September 24, 2004 but I understand it was cancelled.   Upon reasonable notice, I will again make myself available for deposition.

5

Further affaint sayeth naught.

_Tim A. Jones_ (signature)
Tim A. Jones

Subscribed to and sworn to before me
this _19th_ day of _November_, 2004

_Georgia S. Parr_ (signature)
Notary Public

GEORGIA I. PARR
NOTARY PUBLIC MACOMB CO., MI
MY COMMISSION EXPIRES Feb 24, 2006
ACTING IN WAYNE CO.

6

**B**



# LIGHTFOOT, FRANKLIN & WHITE, L.L.C.

THE CLARK BUILDING

400 20ᵀᴴ STREET NORTH

**BIRMINGHAM, ALABAMA 35203-3200**

TELEPHONE (205) 581-0700

FACSIMILE (205) 581-0799

TERRY W. MCCARTHY          EMAIL: TMCCARTHY@LFWLAW.COM          DIRECT DIAL (205) 581-1512

November 5, 2004

*Via Facsimile*

Thomas E. Baddley
BADDLEY & MAURO, L.L.C.
Suite 201
2545 Highland Avenue
Birmingham, Alabama 35205

       Re:     **Serra Chevrolet v. General Motors**

Dear Tom:

       This morning you informed me that the Serra allocation information that we previously produced did not include the weekly reports that we produced for the other dealers. I spoke to one of my contacts at GM and was told that this information is contained in a zip file on the disc that we previously produced. If you still cannot locate this information, please let me know immediately.

                  Very truly yours,

                  Terry W. McCarthy

TWM:mae

cc:     Jere F. White, Jr., Esq.
        Sandy G. Hooper, Esq.

C

EXHIBIT

C

# LIGHTFOOT, FRANKLIN & WHITE, L.L.C.

SAM C. POINTER, JR.
WARREN B. LIGHTFOOT
SAMUEL H. FRANKLIN
JERE F. WHITE, JR
MAC M. MOORER
JOHN M. JOHNSON
M. CHRISTIAN KING
E. GLENN WALDROP, JR.
ADAM K. PECK
HARLAN I. PRATER IV
MICHAEL L. BELL
WILLIAM H. KING III
WILLIAM S. COX III

SARA ANNE FORD
MADELINE H. HAIKALA
WILLIAM H. BROOKS
J. BANKS SEWELL III
LEE M. HOLLIS
JACKSON R. SHARMAN III
WYNN M. SHUFORD
MELODY H. EAGAN
ROBIN H. HINKLE
J. BRADLEY POWELL
WILLIAM H. MORROW
ANNE SIKES HORNSBY
STEPHEN J. ROWE

THE CLARK BUILDING
400 20TH STREET NORTH
BIRMINGHAM, ALABAMA 35203-3200

TELEPHONE (205) 581-0700
FACSIMILE (205) 581-0799

Writer's Direct Dial: 205-581-0718
E-Mail: jwhite@lfwlaw.com

SUZANNE A. FLEMING
STEPHANIE K. WOMACK
W. LARKIN RADNEY IV
JAMES F. HUGHEY III
LANA K. ALCORN
KEVIN E. CLARK
TERRENCE W. McCARTHY
J. CHANDLER BAILEY
S. ANDREW KELLY
DAVID R. PRUET III
NIKAA BAUGH JORDAN
ENRIQUE J. GIMENEZ
JOHN G. THOMPSON

LEE L. SHEPPARD
ANDREW S. NIX
NATASHA L. WILSON
PHILIP M. BRIDWELL
SARAH O. WARBURTON
JACOB M. TUBBS

_____

OF COUNSEL

IVAN B. COOPER
CRAIG N. ROSLER

October 27, 2004

**_Via Hand Delivery_**

Thomas E. Baddley, Jr., Esq.
Baddley & Mauro, LLC
2545 Highland Avenue, Suite 201
Birmingham, Alabama 35205

> Re:   *Serra Chevrolet, Inc. v. General Motors*

Dear Tom:

In accordance with our conversation, as I indicated to you this morning, General Motors is going to file a Motion to Reconsider the order that General Motors produce electronic data relating to its allocation of new Chevrolet vehicles to the other Chevrolet dealers in the Birmingham Multiple Dealer Area. We are advising the Court that we are producing the data to you, but you agree not to produce or disclose it to anyone, including the plaintiff, experts/consultants and third parties, until the Court orders that said production and disclosure is appropriate. Consistent with the terms of our agreement, I am producing the data in the attached package.

As for other outstanding discovery, I expect to receive documents from GM tomorrow which will respond to Nos. 5, 6 and 7 of your Requests for Production. I will forward these documents on to your office as soon as I have them. With respect to Nos. 3 and 10 of your Requests for Production, my client still needs a couple more days to gather these documents but they too will be forwarded to you as soon as I have them.

Thomas E. Baddley, Jr., Esq.
October 27, 2004
Page 2

Thanks for cooperating with me on this extension.

Very truly yours,

Jere F. White, Jr.

JFW:lag
Enclosure

cc:     Terry W. McCarthy, Esq.
        Sandy G. Hooper, Esq.

**D**

EXHIBIT

D

1          IN THE UNITED STATES DISTRICT COURT
2         FOR THE NORTHERN DISTRICT OF ALABAMA
                    SOUTHERN DIVISION

3

4   SERRA CHEVROLET,              *   Case No. CV-01-HS-2682-S

5              Plaintiff,         *   Birmingham, Alabama

6     v.                          *   August 27, 2004

7   GENERAL MOTORS CORPORATION,   *

8              Defendant.         *

9   * * * * * * * * * * * * * * * * * * * * * *

10

11              TRANSCRIPT OF HEARING
       BEFORE THE HONORABLE VIRGINIA EMERSON HOPKINS
              UNITED STATES DISTRICT JUDGE

12

13  FOR THE PLAINTIFF:

14  Thomas E. Baddley, Jr.
    Jeffrey P. Mauro
15  Baddley & Mauro
    2545 Highland Avenue, Suite 201
16  Birmingham, Alabama  35205

17  FOR THE DEFENDANT:

18  Terrence W. McCarthy
    Lightfoot, Franklin & White
19  The Clark Building
    400 North 20th Street
20  Birmingham, Alabama  35203

21

22  Court Reporter:

23  Penny L. Adams, RPR
    Federal Court Reporter
24  1729 North Fifth Avenue, Suite 325
    Birmingham, Alabama  35203

25

28

1        THE COURT:  Apparently you are both unavailable

2   Monday.

3        MR. BADDLEY:  I can make myself available for the

4   Court.  I would love to not go to Cullman.

5        THE COURT:  No.  That's fine for Tuesday.  I'm just

6   trying to not put this off because I don't want to move your

7   deadlines out.

8        MR. McCARTHY:  Sure, we can be available on Tuesday.

9        MR. BADDLEY:  I will notify Your Honor Monday by 12:00

10  noon on request number ten.

11       THE COURT:  Fine.  Now we have one left, number

12  eleven.

13       MR. BADDLEY:  Number eleven asks for in electronic

14  format the allocation records.  And that is a significant issue

15  and it was recognized in Judge Proctor's order on paragraph

16  ten, on page three.  We asked for the records in an electronic

17  format from the beginning of 2001 to date.

18       Well, our initial request -- I'll be honest with you,

19  Judge, our initial request asks for the records from '98 to

20  date that we filed in January and February.  I do not know why,

21  but Judge Proctor's order, in paragraph ten, says 2001 to

22  date.  I don't know why, because there was a gap in the

23  allegation.  Specifically, Edwards bought Century Chevrolet in

24  2000.

25       So we asked for the allocation records of each

Chevrolet dealer in the Birmingham zone.  They produced to us in electronic format only Serra Chevrolet's.  We set out our reason for the supplementation on page ten of our motion to compel, and more significantly Dr. Illeo goes into the reason that we need the allocation in paragraph seven of his affidavit, as well as in paragraph twelve and thereafter.

I did get a report by telephone conference this morning that the experts had been able to open the electronic files.  They only contain Serra Chevrolet, so we have nothing to compare them to.

We've been down this road.  We know we're entitled to these.  You can't prove discriminatory allocation until you compare it to other dealers' allocation.  It's subject to a confidentiality order.  So we've got to have the other dealers' allocation from '98 to date.

THE COURT:  Mr. McCarthy, do you know what's in that information that you've provided to Mr. Baddley?

MR. McCARTHY:  The Serra Chevrolet allocation records which is what we told him we were going to produce.

THE COURT:  And y'all are refusing to produce other allocation records so that they can show that there's been disparate treatment?

MR. McCARTHY:  Your Honor, under the Alabama Motor Vehicle Franchise Act, we're not allowed to give out confidential information unless the dealer consents or unless

there's a court order.  We tried to get the consent of Leon

Edwards to produce his allocation records because, you know,

he's sort of been involved.

THE COURT:  You now have your court order.

MR. McCARTHY:  Okay.

THE COURT:  Are you -- Mr. Baddley, I think you're

limited to the 2001.

MR. BADDLEY:  I wish I had caught it, because we need

from '98 forward, and I didn't catch it.

THE COURT:  I'm enforcing Judge Proctor's order.

MR. BADDLEY:  I know.  Judge, I would tell you that

the information that we have is not complete.  There are

missing months from each and every model, and it doesn't begin

until April.  They are supposed to begin in January 2001.

MR. McCARTHY:  Your Honor, that's the first I had

heard of that.

MR. BADDLEY:  We've just discovered that.

MR. McCARTHY:  We'll gladly -- if there's anything --

THE COURT:  Y'all work this out by noon on Monday, and

let me know if we need to have a hearing on it on Tuesday.

MR. McCARTHY:  May I ask and get some clarification?

THE COURT:  I'll try.

MR. McCARTHY:  I know he's winning, but we sort of --

some of the earlier discovery requests we sort of grouped them

together, and I want to make sure I know what I'm supposed to

**E**



37

EXHIBIT

E

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA 04 JAN 28  AM II: 29
SOUTHERN DIVISION

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| SERRA CHEVROLET, INC., | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | Case No.: CV-01-P-2682-S |
| | } | |
| GENERAL MOTORS | } | |
| CORPORATION, | } | **ENTERED** |
| | } | |
| Defendant. | } | JAN 2 8 2004 |

## ORDER

Pursuant to the December 4, 2003 status conference held in the above-referenced case, the parties conducted the Parties' Planning Meeting and submitted a report to the court proposing scheduling deadlines and a discovery plan regarding the scope and manner of discovery. (Doc. #35). The parties indicated those issues on which they could agree and set forth their respective positions when a compromise could not be reached. Having taken into account the positions of both parties, the court will issue a scheduling order setting forth deadlines and other limitations on the manner of discovery. With respect to the scope of permissible discovery, the parties' positions differed vastly. For the reasons outlined below, the court will allow discovery to proceed on the topics proposed by the plaintiff. First, however, it is instructive to outline the nature of the underlying dispute in this case.

The Plaintiff's claim in this case arises under the Federal Automobile Dealers Day in Court Act, 15 U.S.C. § 1222, et. seq. ("ADDCA"), which allows an automobile dealer to bring suit against an automobile manufacturer for failure "to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise

with said dealer." 15 U.S.C. § 1222. The Joint Status Report submitted to the court sets forth the following facts. (Doc. # 33). Serra Chevrolet, Inc. ("Serra") operates a Chevrolet dealership in Centerpoint, Alabama and opened a "satellite facility" in Gardendale, Alabama pursuant to a 1989 agreement with General Motors ("GM"). (Doc. # 33, at 1). The parties dispute whether the satellite facility originally was intended to be temporary or permanent. In April 1998, Serra filed a state court lawsuit under the Alabama Motor Vehicle Franchise Act against one of its competitors and several GM representatives alleging that they sought to restrict Serra's allocation of vehicles, bring financial harm to Serra, and force the closure of the Gardendale satellite. (Doc. # 33, at 2). GM intervened, seeking, among other things, a declaration that Serra was not entitled to operate the satellite facility in Gardendale after October 1998. (Doc. # 33, at 2). The state court granted summary judgment on the declaratory judgment action in favor of GM; the Alabama Supreme Court affirmed and GM terminated the satellite agreement on September 12, 2001. (Doc. # 33, at 2). On October 28, 2001, Serra filed this action under the ADDCA alleging that GM terminated the satellite agreement in bad faith and with ulterior motives. (Doc. # 1).

In proposing a discovery plan, the Plaintiff points out that "consistent with well-established case law regarding [ADDCA] claims, the trier of fact is entitled to consider the entire course of dealings between the manufacturer and dealer." (Doc. # 35, Ex. A). The Plaintiff maintains that, pursuant to the ADDCA legislative history, "the existence of coercion or intimidation depends upon the circumstances arising in each particular case and may be inferred from a course of conduct." (Doc. # 35, Ex. A). Accordingly, the Plaintiff proposes discovery in the following general areas:

(1) GM's Satellite Program
(2) market studies, report, survey, or analysis regarding the Birmingham area,
(3) the Century Chevrolet dealership awarded to Edwards Chevrolet,

2

(4) GM's advertising program,
(5) communications between GM and Serra,
(6) the way in which the termination of the satellite was effected,
(7) GM's refusal to allow Kevin Serra as successor,
(8) GM's efforts to cause Anthony Serra to resign as Dealer Operator,
(9) course of dealings between Serra and GM,
(10) GM's misallocation of vehicles since 2001,
(11) configuration of each dealer's AGSSA within Birmingham,
(12) consequences of GM's closure of the Gardendale satellite, and
(13) damages related to closure of the Gardendale satellite.

(Doc. # 35, Ex. A).

The Defendant maintains that discovery is necessary only with regard to the following: (1) GM's basis for the termination of the Gardendale sales satellite agreement, (2) the manner in which the termination was effected, (3) the effect of the termination, and (4) any purported damages of the termination with respect to Serra. (Doc. # 35, Ex. B).

At this early stage, it is difficult for the court to predict which, if any, of the proposed discovery topics are not relevant to a claim or defense in this case or not "reasonably calculated to lead to the discovery of admissible evidence" under the Rule 26 standard. Fed. R. Civ. P. 26(b). Moreover, the court is concerned about imposing limitations on discovery in ADDCA actions in light of the Third Circuit's reversal of the district court in *Arnold Pontiac-GMC, Inc. v. General Motors Corp.*, 786 F.2d 564 (3d Cir. 1986), for erroneously denying the plaintiff full discovery on its ADDCA claim. *Arnold Pontiac-GMC*, 786 F.3d at 576. The Third Circuit found that the court-ordered limitation on the production of records deprived the plaintiff of discovery that, "if able to be shown by credible evidence might sufficiently [have proven] the bad faith element" of the ADDCA claim. *Id.* at 575-576. Having reviewed the topics proposed by the plaintiff and considering the elements of an ADDCA claim, including the necessary proof of intent, the court cannot conclude

3

at this time that any of the topics proposed by the Plaintiff fall outside of the bounds of the Rule 26 standard. Therefore, the court **ORDERS** discovery to proceed on the topics proposed by the plaintiff in Exhibit A to the Report of Parties' Planning Meeting. (Doc. # 35).

Nonetheless, if at any point during the course of discovery the defendant believes that the plaintiff is operating outside of the bounds of permissible discovery as outlined by the Federal Rules of Civil Procedure and the case law under the ADDCA, and is unable to resolve the matter through discussions with plaintiff, the defendant may seek the court's assistance in setting those parameters.

**DONE** and **ORDERED** this _28th_ day of January, 2004.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

4

F

**EXHIBIT**

tabbies®

F

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SERRA CHEVROLET, INC. | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | |
| v. | ) | CV-01-HS-2682-S |
| | ) | |
| GENERAL MOTORS CORPORATION | ) | |
| | ) | |
| Defendant. | ) | |

## AFFIDAVIT OF WILLIAM T. HEPBURN, JR.

After being duly sworn, William T. Hepburn, Jr. deposes and says:

1.    I have been employed by General Motors Corporation ("GM") for approximately 27 years and my current position with GM is as a Manager in its Dealer Contractual Department located in Detroit, Michigan.  I have personal knowledge of the matters set forth in this Affidavit.

2.    I understand that the court directed GM to provide plaintiff with the number of Chevrolet dealerships nationwide which currently have an approved satellite sales location pursuant to a satellite agreement with GM.  Review of available GM records indicated that there are 23 Chevrolet dealers nationwide with currently approved satellite agreements in place with GM.  Attached is a true and correct copy of a list of those dealers attached as exhibit A.

3.    I also understand GM was directed to provide a list of Chevrolet dealers nationwide who no longer had satellite agreements.  Based on review of available GM records, which go back to 1990, there are 12 Chevrolet dealers who had satellite sales

agreements that are no longer in place. A true and correct copy of a list of those dealers is attached as exhibit B.

4. I was also asked to determine the date a retired GM employee, Gerald Desmond, died. Based on a review of GM's records, Mr. Desmond passed away on October 22, 2002.

Further affiant sayeth naught.

_William T. Hepburn, Jr._

William T. Hepburn, Jr.

Subscribed to and sworn to before me
this 23 rd day of _November_ 2004

_Sheila D. White_

Notary Public

**SHEILA D. WHITE**
Notary Public, Wayne County, Michigan
My Commission Expires July 15, 2005

2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION



| | | |
|---|---|---|
| SERRA CHEVROLET, INC., | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | |
| v. | ) | CV-01-HS-2682-S |
| | ) | |
| GENERAL MOTORS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S SUPPLEMENTAL RESPONSE TO PLAINTIFF'S REQUEST FOR PRODUCTION

Defendant, General Motors Corporation ("GM" or "Defendant"), for its supplemental response to plaintiff's first request for production, hereby says as follows:

## REQUEST FOR PRODUCTION

3.     A complete list of any and all Chevrolet dealers who participated in  and/or were awarded satellite facilities under the same or similar terms as the terms of the satellite facility awarded Serra Chevrolet, and the status of each of these satellite facilities (i.e. open, full point or termination etc).

**SUPPLEMENTAL RESPONSE:**   Without waiving previous objections, the below referenced Chevrolet dealers currently have active Satellite Sales Agreements with General Motors:

| DEALER NAME | CITY | STATE |
|---|---|---|
| PROSTROLLO MOTOR SALES INC | HURON | SD |
| BERGSTROM CHEV-OLDS-CAD INC | APPLETON | WI |
| ROYAL CHEV INC | BLOOMINGTON | IN |
| LARRY ROESCH CHEV INC | BENSENVILLE | IL |
| GRAFF CHEVROLET-BUICK-OLDSMOBILE INC | SANDUSKY | MI |
| MCKINLEY CHEVROLET, PONTIAC, BUICK, | OSAGE | IA |
| KEMNA AUTO CENTER | ALGONA | IA |
| NESENGER 112 CHEVROLET | MEDFORD | NY |
| OURISMAN'S ROCKMONT CHEVROLET | ROCKVILLE | MD |
| SUTLIFF CHEVROLET CO | HARRISBURG | PA |
| BARNES-BAKER MOTORS INC | CHILLICOTHE | MO |
| SUE HARTON, INC. | MARBLE FALLS | TX |
| MORRIS MOORE CHEVROLET-BUICK-GMC-PON | SILSBEE | TX |
| ALLISON CHEVROLET | JASPER | TX |
| ALEXANDER CHEVROLET-OLDSMOBILE, LLC | DICKSON | TN |
| KEVIN WHITAKER CHEVROLET OLDSMOBILE | GREENVILLE | SC |
| F. H. DAILEY MOTOR CO. | SAN LEANDRO | CA |
| MICHAEL CHEVROLET | FRESNO | CA |
| MADERA CHEVROLET-OLDSMOBILE-TOYOTA | MADERA | CA |
| DIRKES' INC. | CHOTEAU | MT |
| E & L MOTORS, INC. | DIAMONDVILLE | WY |
| BRADLEY CHEVROLET | LAKE HAVASU CITY | AZ |
| SANDS MOTOR COMPANY | GLENDALE | AZ |

One of the Attorneys for Defendant
General Motors Corporation

2

SCAN4122_000.tif

OF COUNSEL:

Jere F. White, Jr. (WHI007)
Terry W. McCarthy (MCC119)
Sanford G. Hooper  (HOO033)
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, Alabama  35203
(205) 581-0700
(205) 581-0799 (fax)

## CERTIFICATE OF SERVICE

This is to certify that on this 29 day of October, 2004, a true and correct copy of the foregoing was served on counsel of record by depositing a copy of same in the United States Mail, postage prepaid, properly addressed to

> Thomas E. Baddley, Jr., Esq.
> Jeffrey P. Mauro, Esq.
> BADDLEY & MAURO, LLC
> 2545 Highland Avenue, Suite 201
> Birmingham, AL  35205

_____
Of Counsel

3



EXHIBIT
B
to Ex. F.
'tabbies'

Cars Unlimited of Suffolk, LLC
Medford, NY

John S. Haines, Inc.
Glenwood Springs, CO

Lockwood Chevrolet, Inc.
Herscler, IL

Love Chevrolet Company
Cayle, SC

Jimmy Gray Chevrolet-Oldsmobile, Inc.
Neshit, MS

Dees Chevrolet Company
Biluyi, MS

Glen's Chevrolet & Subaru Company
Pocatello, IA

Crystal Motor Car Company, Inc.
Homosassa, FL

Tommy Thomas Chevrolet, Inc.
Panama City, FL

Hoffpauir-Shrader Chevrolet, Oldsmobile, Buick, Inc.
Burnet, TX

Capitol Chevrolet, Inc.
Austin, TX

Valley Auto, Inc.
Fort Kent, ME

G



EXHIBIT
G

GERALD MICHAEL DESMOND, JUNE 29, 2000

1                    IN THE CIRCUIT COURT OF

2                 JEFFERSON COUNTY, ALABAMA

3

4   SERRA CHEVROLET, INC.,              )

5         PLAINTIFF,                    )

6     - vs -                           )    Case No. CV 98-2089

7   LEONARD EDWARDS, an individual;    )

8   EDWARDS CHEVROLET, INC.,           )

9   NATIONAL AUTOMOBILE DEALERS        )

10  ASSOCIATION; GENERAL MOTORS        )

11  CORPORATION; DEWEY BARBER          )

12  CHEVROLET, INC.,                   )

13        DEFENDANTS.                  )

14  _____)

15

16        The deposition of GERALD MICHAEL DESMOND, a

17  witness in the above-entitled matter, taken before

18  WILLIAM J. RITTINGER (CSR-2176), a Notary Public, at

19  35980 Woodward, Bloomfield Hills, Michigan, on June 29,

20  2000, commencing at or about 9:00 o'clock a.m.

21

22

23

24                     COURT ORIGINAL

25

Oakland Court Reporters - (248) 645-5035

1        temporary, it was really only for three years

2        because we weren't sure how it would work and we

3        didn't want to have dealers put in an exorbitant

4        amount of money if we had to close it up.

5   Q.   Do you recollect now that she was referring to

6        the Serra Chevrolet satellite?

7   A.   Now, after the fact, after hindsight, knowing

8        that there was only one in the Birmingham

9        multiple dealer area, she had to be referring to

10       that, but that was the first time.

11  Q.   Do you have a judgment as to how many satellite

12       facilities were open through the years by

13       Chevrolet?  Would it be hundreds, would it be

14       thousands?

15  A.   No, because -- no.  There weren't many dealers

16       that wanted to do it in the first place because

17       of the investment.  And it really evolved because

18       dealers wanted to try it.  I would say probably

19       no more than 60 or 70, but no less than 50 or 60,

20       right in that area.

21  Q.   Through the years that GM approved?

22  A.   Yes, and that is a guess.

23  Q.   I understand.

24  A.   No, let me backtrack.

25            MR. ROBINSON:  You want to correct

                Oakland Court Reporters - (248) 645-5035

SCAN4122_000.tif

**H**

EXHIBIT

H

# BADDLEY & MAURO, L.L.C.

ATTORNEYS AT LAW
SUITE 201
2545 HIGHLAND AVENUE
BIRMINGHAM, ALABAMA 35205
E-MAIL: badmaur@bellsouth.net

THOMAS E. BADDLEY
JEFFREY P. MAURO

TELEPHONE (205) 939-0090
FACSIMILE (205) 939-0064

August 11, 2004

VIA FAX

Jere F. White, Jr.
LIGHTFOOT, FRANKLIN & WHITE
The Clark Building
400 20th Street North
Birmingham, AL 35203

      **Re:**    **Serra Chevrolet v. General Motors**

Dear Jere:

      This acknowledges receipt of your letter under date of August 10 and I agree that we will take Tim Jones' deposition Friday, September 24th at 9:00 a.m. EST. Further, this confirms that portion of our conversation and my prior correspondence that I **must** have the allocation records long ago requested in electronic format prior to the deposition. We will need that to analyze before Mr. Jones' deposition. Further, as I advised, to the extent that we have questions regarding any acronyms or other aspects of the software program, I would request that a conference call be set up between Mr. Jones and Dr. Ileo and his staff, where the attorneys can listen, but that conversation be completely off the record and anything said or discussed during it would be inadmissible in Court. We have done that before without any problems.

      I will contact Renaissance Court Reporting for a Court Reporter as well as a conference room and will advise.

                        Sincerely yours,

                        BADDLEY & MAURO, LLC.

                        THOMAS E. BADDLEY, JR.
                        ATTORNEY AT LAW

TEB/emb

cc.    Anthony Serra
       Dr. Michael Ileo – via fax

**RECEIVED**

AUG 16 2004

JERE F. WHITE, JR.