IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SERRA CHEVROLET, INC., | ) |
| Plaintiff, | ) CIVIL ACTION NO. |
| v. | ) CV-01-02682-VEH |
| GENERAL MOTORS CORPORATION, | ) |
| Defendant. | ) |

### DEFENDANT GENERAL MOTOR'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR SANCTIONS OR, IN THE ALTERNATIVE, FOR DEFAULT JUDGMENT AGAINST GENERAL MOTORS

Defendant, General Motors Corporation ("GM or "Defendant"), submits this Response in opposition to Plaintiff's Renewed Motion for Sanctions, or in the Alternative, for Default Judgment Against General Motors.

### INTRODUCTION

Plaintiff's Renewed Motion for Sanctions stands as the latest example of Plaintiff's utterly vexatious conduct. Plaintiff's conduct wastes this Court's time by filing frivolous and empty motions whose sole aim is to harass the Defendant and divert attention from Plaintiff's meritless claims in this case. In what has now become a familiar routine, Plaintiff, through the use of overblown, overstated, and overreaching rhetoric, asks the Court to enter a default judgment against Defendant essentially because the parties have been unable to find mutually convenient dates to hold only two of the several depositions sought by Plaintiff. Even as to these two depositions, GM has provided Plaintiff with several dates in early March when these depositions can go forward. GM has never refused to schedule any depositions and indeed has cooperated with Plaintiff to make GM retirees available for deposition, eliminating the need for

1

Plaintiff to go to the time and expense to subpoena them. Plaintiff's conduct makes clear that its litigation strategy rests on a warped view of federal court processes, which is itself sanctionable. In short, rather than engage in good faith attempts to ***reasonably*** resolve alleged discovery disputes (many of which are, in reality, non-existent), the Plaintiff instead simply files a motion for sanctions, in direct violation of this Court's standing order.

As if abusing the processes of this Court were not serious enough, the Plaintiff's most recent motion offers misleading and, in some cases, knowingly false statements in support of its position. As only one example, which will be discussed in more detail later in this response, Plaintiff states in its motion that "GM has repeatedly failed and refused to make its designated allocation representative, Tim Jones, available for deposition." (Pl.'s Motion, p. 5). This statement is a knowing misrepresentation by the Plaintiff to the Court. The truth is that GM has never refused to make Mr. Jones available for deposition. Rather, GM has twice offered Mr. Jones for deposition: once for a scheduled deposition on Friday, September 24, 2004 and more recently in early March 2005.[1] On the first occasion, *Plaintiff* cancelled the deposition. In the second case, Plaintiff makes a specious argument that the beginning of March is not soon enough. As proof that this argument has no merit, Plaintiff filed the pending motion despite acknowledging as recently as January 20, 2005 that it understood Mr. Jones's deposition could not be scheduled until GM's lead counsel had completed a jury trial that is being heard before this very Court.

Further evidence of the Plaintiff's utter lack of good faith is found in its shoot first, ask questions later strategy. With this motion, the Plaintiff took the extraordinary step of filing a motion for sanctions for the alleged failure to provide deposition dates for certain GM employees

---

[1] Indeed, GM has provided five days in the first two weeks of March that Mr. Jones can be available.

2

and retirees *without ever filing a motion to compel*. In other words, the Plaintiff wants GM to be sanctioned without ever having been found to have violated a court order.[2] Indeed, this is typical behavior from the Plaintiff, as the current Motion for Sanctions is not the first time that the Plaintiff has prematurely sought this Court's intervention. On November 15, 2004, Plaintiff filed a Motion for Sanctions complaining that GM had "withheld" vehicle allocation data. Prior to filing that motion, Plaintiff had not attempted to resolve its complaints with Defendant's counsel and thereby violated the Court's standing order that counsel must have "exhausted all efforts to resolve the dispute" before filing a motion regarding discovery. See Docket No. 68, Court's Scheduling Order, p. 3. GM went to the expense and time of responding to that motion which Plaintiff subsequently withdrew.

Defendant submits that as long as Plaintiff is permitted to file these frivolous and plainly meritless motions in violation of the court's standing order, this litigation will not proceed to orderly disposition. Therefore, Defendant respectfully requests that this Court deny Plaintiff's most recent Motion for Sanctions and hereafter preclude Plaintiff from making any further motions for sanctions without first seeking leave of the Court, which request would be accompanied by an affidavit from Plaintiff's counsel affirmatively stating all reasonable efforts to resolve the disputed matter. In further opposition to the motion, Defendant shows unto the Court as follows:

## DISCUSSION

Plaintiff bases its Motion for Sanctions against GM based on GM's alleged "dilatory and flagrantly abusive discovery tactics," "grossly deficient" document production, "obstruction of

---

[2] Plaintiff filed its Renewed Motion for Sanctions on January 27, 2005 and then filed a related Motion to Compel on January 28th.

3

justice," "manifest injustice," and "gross abuse of discovery." Pl.'s Motion for Sanctions, Intro., ¶ 13, 26.

When the Plaintiff's rhetoric and hyperbole are stripped away, the Plaintiff's argument boils down to three basic contentions, none of which has any merit: 1) that GM has refused to offer its employee Tim Jones for deposition; 2) that GM is withholding new vehicle allocation data; and 3) that GM's discovery responses concerning GM's satellite Chevrolet dealerships is insufficient. Defendant will address each of Plaintiff's arguments in turn.

## I. GM Has Not Failed To Make Its Employees Available For Deposition.

The first basis that Plaintiff offers in support of its Motion for Sanctions is that GM has "repeatedly failed and refused" to make available GM employee Tim Jones for deposition. Defendant has already demonstrated the falsity of this allegation. The undeniable truth is that GM has twice offered Mr. Jones for deposition: once for a scheduled deposition on Friday, September 24th 2004 and more recently in early March 2005.[3] Moreover, not only is this allegation false, it is also made in bad faith.

As this Court is aware, GM's lead counsel, Jere White, is involved in a lengthy jury trial **before this very** Court that began on January 24, 2005, and is currently under way. Mr. White began preparing for trial in the beginning of January. Accordingly, Plaintiff's counsel was advised of this conflict, advised that Mr. White needed to be present at the deposition, and also informed that Mr. Jones could not be deposed until early March after Mr. White's trial concluded. See Exhibit A, Def.'s 1/13/05 Letter. Plaintiff's counsel conceded that Mr. Jones's deposition is "crucial" and that he appreciates the need for Mr. White to be present at Mr. Jones's deposition. See Exhibit B, Pl.'s 1/20/05 Letter.

---

[3] On January 13, 2005, GM informed Plaintiff counsel that Tim Jones would be available for deposition in early March. Since that time, GM has offered Plaintiff counsel the specific dates of March 2, 3, 4, 8, or 9 for the deposition.

4

In a letter to Defense Counsel Terry McCarthy, Plaintiff's counsel acknowledged the need for Mr. White to attend Mr. Jones's deposition:

> I am hopeful that you can put up Mr. Jones, the allocation expert, as that is truly the individual that I am most anxious to depose. I briefly discussed with Jere that issue, and understand that Jere is going to be in trial before Judge Hopkins in a case expecting to go three to four weeks. **I also understand and respect the fact that Jere must be present at that deposition, and agree that it is a crucial and critical deposition.**

Id. (emphasis added)

Notably, Plaintiff's letter was dated and sent on January 20, 2005. Only <u>seven</u> days after sending this letter, Plaintiff filed the pending motion for sanctions containing the accusation that "GM has repeatedly failed and refused to make its designated allocation representative, Tim Jones, available for deposition." (Pl.'s Motion for Sanctions, p. 5). This is simply not true and the claim is made in bad faith by Plaintiff's counsel.

By comparing the language in Plaintiff's January 20th letter with the language in Plaintiff's Motion for Sanctions, it is clear that Plaintiff's counsel is attempting to have it both ways – telling GM's counsel he understands the trial conflict and the "key" nature of Mr. Jones's deposition and then turning around and seeking sanctions against GM because Mr. Jones could not be made available because of the trial conflict. Besides being unfair, the charge in Plaintiff's motion misleads the court into thinking that Defendant is obstructing the discovery process by refusing to offer Mr. Jones for deposition. The exact opposite is true. GM has <u>no objection whatsoever</u> to Mr. Jones being deposed as soon as Mr. White is available following the trial and has told the Plaintiff that repeatedly. Apparently, the Plaintiff would have Mr. White ask for a continuance of the jury trial presently proceeding before this very Court so that Mr. White could be present for a deposition at the time and place demanded by the Plaintiff. GM submits that this is unreasonable, and shows a total lack of good faith on the part of the Plaintiff.

5

The remaining complaints regarding the scheduling of deposition dates are likewise without merit. The evidence shows that GM has repeatedly and consistently attempted in good faith to comply with Plaintiff's other deposition requests. On December 10, 2004, Plaintiff requested by letter the depositions of six current and former GM employees: Tim Jones, Ronte Smith, Larry Hall, William Hepburn, Jr., Ron Sobrerro, and S.D. Moore. GM has never objected to Plaintiff deposing any of these individuals and, in fact, has worked to get dates that are mutually convenient for both parties' counsel to hold the depositions. Mr. Hall's deposition is scheduled for February 9, 2005 in Tallahassee, Florida, Mr. Sobrerro's for February 11 in Detroit, Mr. Moore's for February 22 in California and Mr. Hepburn for February 11, 2005 in Detroit. GM has provided Plaintiff with dates for Mr. Smith's deposition, which was previously set for September 16, 2004, but was canceled because of Hurricane Ivan.

Three of the individuals that Plaintiff wants to depose <u>are GM retirees.</u> In other words, these individuals are no longer under GM's control. Despite having no obligation to do so,[4] GM has located and contacted these former employees, obtained their consent to appear without the need of subpoena, and worked with Plaintiff's counsel to schedule their depositions. Third, Plaintiff's counsel specifically requested in a December 21 letter to Defendant's counsel that it would like to schedule the deposition of Mr. Jones and Mr. Hepburn during the same trip to Detroit since both men work there. Exhibit C, Pl.'s 12/21/04 Letter. Defendant has been happy to try to accommodate this request, but Plaintiff's counsel apparently does not appreciate that a

---

[4]Because these individuals are retired, GM could have simply told Plaintiff to attempt to subpoena the individuals to appear at whatever location they currently reside. However, in the spirit of working to get discovery done, GM made considerable effort to locate these retired employees, requested that they appear for deposition, coordinated their schedules with those of GM's counsel, and offered deposition dates to Plaintiff—all without making Plaintiff go to the time and expense of getting out-of-state subpoenas served.

6

request to find consecutive days when both men are available obviously delayed the scheduling of the depositions.

Plaintiff further states that it has been "unable to secure a deposition date" for GM employee William Hepburn. Nonsense. GM has provided Plaintiff two separate dates to depose Mr. Hepburn and Plaintiff rejected the first one and ultimately agreed to the second date of February 11, 2005. See Exhibit C, Pl.'s 12/21/04 Letter; Exhibit D, Def.'s 1/27/05 Letter. Notably, GM had submitted the first proposed date before the motion for sanctions was filed. Thus, it is beyond GM's understanding why Plaintiff would complain to this Court about the inability to secure Mr. Hepburn for deposition.

## II.     The Allocation Data Provided to the Plaintiff Is Complete.

The second purported basis for Plaintiff's Motion for Sanctions is that GM's production of new vehicle allocation data is "deficient" in some unspecified way. Plaintiff's contention is absolutely false. As GM employee Tim Jones's November 19, 2004 affidavit makes clear, GM has provided all the data upon which Chevrolet new vehicle allocation is based for the periods indicated, as directed by the Court. Mr. Jones's affidavit states this fact unambiguously:

> GM has provided in electronic form the data related to new vehicle allocation for Serra Chevrolet and Edwards Chevrolet for the period January 2001 through June 2004. Subsequently . . . GM provided the same data in electronic form for the other Chevrolet dealers in the Birmingham multiple area dealer . . . GM has produced all the data upon which its new vehicle allocation activity is based for the time periods set forth above.

Exhibit E, Affidavit of Tim A. Jones, ¶ 2,3.

From the outset of this lawsuit, Plaintiff has specifically requested that the new vehicle allocation data be produced in electronic format.[5] GM has done exactly that. Now Plaintiff says

---

[5] In one letter to Defendant, Plaintiff stated that the allocation data "**must**" be in electronic format. (emphasis in original). Exhibit H, August 11, 2004 Letter.

7

that this is not good enough because the data is not presented in the Vehicle Order Management (VOM) application. GM Allocation Director, Tim Jones, explains the VOM system:

> The VOM application is available to the dealers via a web-based computer format which utilizes web-based computer screens to display the data. The "reports" referenced by [Plaintiff's expert, Dr.] Illeo in the VOM Manual are simply computer screens which are populated with the allocation data which changes from time period to time period based on normal business activity. The formatted screens themselves are not retained for all the time periods requested by plaintiff but the underlying data is. Further, the screens themselves cannot be provided in electronic format as the plaintiffs requested. As described in paragraph 3, the actual underlying data has been provided in electronic form as requested.

Exhibit E, Affidavit of Tim A. Jones, ¶ 4.

GM has provided Plaintiff the data in the format it asked for. This obviously is not a basis for a Motion for Sanctions against GM. GM has repeatedly asked Plaintiff to specify what exactly it thinks is "incomplete" from the data or what the specific "problem" is so GM could address it if it exists. See Exhibit F, Def.'s 1/20/05 Letter; Exhibit G, Def.'s 1/27/05 Letter. All this has been to no avail and Plaintiff simply files a sanctions motion with the Court.

A charge that further mystifies GM is Plaintiff's insistence that GM currently maintains documents in "roughly the same format" as "832 Reports." (Pl.'s Motion, p. 7). As GM has discussed in its still pending Motion to Dismiss (Docket No. 46), the Plaintiff filed suit in state court alleging, just as it does here, that GM has allocated vehicles in a discriminatory manner.[6] During discovery in the state court action in which the Plaintiff alleged the same claim it alleges in this case, the operative documents were, in fact, 832 Reports. The 832 Report was a document used in the Chevrolet distribution system until 1998 when it was replaced by the

---

[6] The Alabama Supreme Court held that the Plaintiff's prior claim based on vehicle misallocation accrued in the early 1990s, and has long since been time barred. Serra Chevrolet, Inc. v. Edwards Chevrolet, Inc., 850 So. 2d 259 (Ala. 2002)

8

Vehicle Order Management System [VOMS]. Exhibit E, Jones Aff. at ¶ 6. According to Tim Jones, the Director of Allocation and Order Fulfillment for GM's Vehicle Sales, Service and Marketing activity who has been employed by GM for 32 years, those documents obviously do not exist for the time periods at issue here. Id. at ¶ 6. So, in spite of Plaintiff's speculation, the evidence shows that 832 reports have not been used for six years, well before the time periods at issue here. See id.

In short, the Plaintiff comes to this Court seeking sanctions with nothing more than rank speculation that GM has not changed its records or new vehicle allocation system since the last time the Plaintiff tried this case. In other words, the Plaintiff has come to this Court seeking sanctions, even the ultimate sanction of a default judgment, based on nothing more than a false *assumption*. The facts, which the Plaintiff purposefully ignores, show that the Plaintiff's motion is frivolous.

## III.  GM Has Adequately Responded to the Requests Regarding Satellite Facilities.

Finally, Plaintiff argues that GM's production is also "deficient" with respect to its satellite facilities because GM has not provided the "status" of these facilities. (Pl.'s Motion, p. 8). To date, GM has provided Plaintiff with a list of 23 Chevrolet Dealers who have active satellite agreements with GM and a separate list of 12 Chevrolet dealers whose satellite sales agreements have been terminated or have expired since 1990. That is the "status" of these agreements. This information was provided based upon a review of GM's current business records to determine the information. See Exhibit I, Aff. of William Hepburn. Therefore, any suggestion by Plaintiff that it has not complied with this discovery request is inaccurate.

In typical fashion, the Plaintiff states that GM should be sanctioned because, as Plaintiff implies, there "has to be more" satellites. The Plaintiff misleadingly cites to deposition testimony of Gerald Desmond from the state court action. The Plaintiff makes the bold

9

statement that "It is undisputed that Gerald Desmond, GM's former top executive who was responsible for and most knowledgeable about GM's satellite program, testified that there were approximately 70 Chevrolet satellite facilities created by GM." (Plaintiff's Motion at p. 11, n. 5). The Plaintiff is well aware that this is a misleading statement.

The full testimony of Mr. Desmond, as opposed to what the Plaintiff selectively and misleadingly cites to the Court, is that, Mr. Desmond, who unfortunately passed away in October 2002, testified that there were "no more than 60 or 70, but no less than 50 or 60, right in that area . . . **and that is a guess**." Exhibit J, Depo. of Gerald M. Desmond, p. 38, taken June 29, 2000.

So, Mr. Desmond never, as the Plaintiff claims, unequivocally testified that there were 70 satellites. Instead all he could do was offer a "guess." Now, the Plaintiff wants this Court to sanction GM because a deceased employee offered a guess on the number of satellites which turned out to be different than the actual numbers. The truth is, however, that GM has provided the Plaintiff the names of all the satellites GM could locate.

Next, the Plaintiff seeks to have GM sanctioned for failing to produce documents the Plaintiff never requested in the first place. The Plaintiff wants this Court to sanction GM for the alleged failure to produce documents relating to the specific satellites identified. In the prior hearing, the Court ordered GM to produce the list of satellite dealers and all documents "within the scope of their request." Their requests, however, make no mention of the documents for each satellite:

> 2. Any and all documents, in hard copy or in electronic format, regarding General Motors' Satellite Program, including but not limited to its implementation, when it was first made available to the Chevrolet dealer body, the purpose of the program, the parameters of the program, and the name, address and telephone number of the GM officials who were responsible for the implementation and overall oversight of the program to date.

> 3. A complete list of any and all Chevrolet dealers who participated in and/or were awarded satellite facilities under the same or similar terms as the terms of the satellite facility awarded Serra Chevrolet, and the status of each of these satellite facilities (i.e. open, full point or termination, etc.).

Plaintiff's Request for Production.

As the Court can see, the documents the Plaintiff now seeks are far outside the scope of the document requests. Conspicuously absent from this request is a request for documents relating to each specific satellite. The Plaintiff cannot now seek to have GM sanctioned for failing to respond to requests the Plaintiff may have meant to propound but never did.

Finally, Plaintiff states that GM has failed to provide the name (including principal owner), address, and phone number of the Chevrolet dealers that were awarded satellite dealerships. Not surprisingly, the first time the Plaintiff mentioned this alleged deficiency to GM is in its Motion for Sanctions. Had Plaintiff informed GM's counsel informally that it wanted this information before it filed its motion, as the duty to attempt to resolve discovery disputes without the Court's intervention requires, GM would have provided a supplement to its discovery responses. GM will now do so by providing this information to Plaintiff.

### IV. Plaintiff Cannot Show Any Sanctionable Conduct on the Part of GM

For most litigants, seeking sanctions is an avenue of last resort. And for good reason. When a party seeks sanctions, it accuses the other party of wrongful conduct, and accuses the other party of disobeying court orders. This is not something to be taken lightly. Indeed, for most litigants, the filing of a motion for sanctions is one of the hardest decisions it ever has to make.

Unfortunately, this cannot be said for this Plaintiff.

Instead, this Plaintiff uses motions for sanctions as a matter of course. It uses motions for sanctions in blatant attempts to poison the well, harass the opposing party, and paint it in a bad

11

light, regardless of the true facts. To this Plaintiff, filing a motion for sanctions is just another part of its trial strategy. This is wholly improper.

One thing is clear: there was no sanctionable conduct on the part of GM. At worst, all that is at issue here is that the parties have differing views of the scheduling of depositions and the scope of Plaintiff's discovery requests. Absolutely nothing GM has done has shown any disregard whatsoever for this Court. Plaintiff cannot point to a single court order that GM has disregarded.

But, the Plaintiff does not stop at merely requesting sanctions. Instead, consistent with its hyperbolic claims that the "sky is falling" every time it does not get exactly what it wants (whether it exists or not) when it wants (regardless of the schedule of the opposing party), the Plaintiff takes the truly remarkable step in asking this Court to enter a default judgment. Not surprisingly, the Plaintiff does not cite any law whatsoever in support of this outlandish request. That is because the request is completely baseless.

A fact ignored by the Plaintiff is that the entry of a default judgment is to be used sparingly, and in extreme situations:

> Entry of a judgment by default is a drastic remedy which should be used only in extreme situations, as the court has available to it a wide range of lesser sanctions. The former Fifth Circuit had adopted the view that such action is too harsh except in extreme circumstances. Moreover, we must respect the usual preference that cases be heard on the merits rather than resorting to sanctions that deprive a litigant of his day in court.

Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1316-1317 (11th Cir. 2002) (quoting Wahl v. McIver, 773 F.2d 1169, 1174 (11th Cir. 1985)).

Throughout this response, GM has shown that the Plaintiff has not acted in good faith when filing these motions with the Court. Nothing shows that like this request for default. What was the "extreme situation" which Plaintiff claims warrants a default? First, GM wants its lead

12

counsel, who is currently in trial before this very Court, to be present for what the Plaintiff itself states is a critical deposition. Second, despite testimony from Mr. Jones to the contrary, the Plaintiff does not believe that GM has given it "complete" allocation data. Finally, the Plaintiff claims that GM has failed to deliver documents the Plaintiff never asked for. By moving for default judgment under these circumstances, the Plaintiff is simply proceeding in bad faith.

## CONCLUSION

For the second time in a little over two months, Plaintiff has filed a Motion for Sanctions against GM lacking any factual basis or merit. The prior motion was withdrawn by Plaintiff. GM notes the irony of the continuing unavailability of Plaintiff's counsel for certain depositions of its <u>own witnesses</u> but Plaintiff's counsel's continued availability to file long and winding Motions for Sanctions. With each additional motion that Plaintiff files, and the responses and court hearings that are triggered, more days of discovery are wasted. For the foregoing reasons, Plaintiff's most recent motion should be denied and Plaintiff should be made to pay Defendant's costs for having to respond to this motion.

Respectfully submitted,

_____
One of the Attorneys for Defendant

OF COUNSEL:

Jere F. White, Jr. (WHI007)
Terrence W. McCarthy (MCC119)
Sanford G. Hooper (HOO033)
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, Alabama 35203
(205) 581-0700
(205) 581-0799 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Thomas E. Baddley, Jr., Esq. and Jeffrey P. Mauro, Esq.

_____
Of Counsel