# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **SERRA CHEVROLET, INC.,** )  | |
| **Plaintiff** ) | |
| ) | |
| v.   ) | **Case No.: CV-01-VEH-2682-S** |
| ) | |
| **GENERAL MOTORS CORP.** ) | |
| **Defendant.** ) | |

## ORDER GRANTING MOTION FOR SANCTIONS

This action was filed on October 23, 2001. It has been assigned and reassigned to three (3) judges. The action has seen multiple discovery motions and Orders. On January 28, 2004, Judge R. David Proctor ordered (doc. 36) discovery to proceed on the topics proposed by Plaintiff Serra Chevrolet, Inc. ("Serra") in Exhibit A to the report of parties planning meeting (doc. 35). On August 30, 2004, following an August 27, 2004, hearing on Serra's motion to compel, the undersigned judge ordered Defendant General Motors Corp. ("GM") to respond to outstanding discovery (doc. 70). On November 16, 2004, the court denied GM's motion to reconsider that Order (doc. 92). Various discovery motions were filed and withdrawn, resulting in an Order by the court on December 3, 2004, denying the pending discovery motions without prejudice (margin Order). On February 3, 2005, the court held a telephone conference on Serra's motion to compel and for sanctions and verbally held GM in contempt. On February 7, 2005, that oral order was reflected in a written Order

granting in part and denying in part Serra's motion to compel and motion for sanctions (doc. 110).

In the February, 2005, Orders, the court held GM in contempt of court for violation of the court's August, 2004, Order compelling the production, **no later than October 27, 2004**, of documents in GM's possession and control **relating to satellite dealerships**, specifically, the documents requested in items numbers 2, 3, and 4 of Serra's request for the production of documents. GM was given fourteen days from February 3, 2005, that is, until **February 17, 2005**, to purge itself by providing "all documents" responsive to such requests. The court ordered that "[f]ailure to comply fully with its production obligations and this Court's orders will result in the imposition of sanctions against General Motors in the amount of $50,000 for every day that GM remains out of compliance. If GM remains out of compliance thereafter, the Court will begin striking GM's defenses." The court stated that "Plaintiff's motion to compel is in all other respects DENIED as premature, pending discovery to resolve the factual disputes regarding the sufficiency of GM's production thus far."

The testimony of GM's representative, Bill Middlekauf, was taken at a two and one-half (2½) hour hearing on May 16, 2005. The allegations regarding documents not produced by GM centered on two areas: information related to satellite dealerships; and information related to vehicle allocation data. As to vehicle

allocation data, the allegations can be further divided into two sub-areas: monthly vehicle allocation data ("File A"), and weekly vehicle allocation data ("File B").

Turning to the issue of production of documents related to satellite dealerships, which, as stated previously, had expressly been ordered to be produced no later than October 27, 2004, and where the court ordered deadline for GM to purge itself of contempt was February 17, 2005, Mr. Middlekauf (GM's representative) testified, *inter alia*, that: (1) he had no personal knowledge GM had searched earlier than the first part of November, 2004, for the documents ordered to be produced; (2) he did not dispute the deposition testimony of (GM employee) William Hepburn that GM had <u>not</u> searched, until the first part of November, 2004, for the documents ordered to be produced; (3) that, on February 11, 2005, he personally had sent an e-mail to regional managers requesting documents responsive to the court's August, 2004, and February 7, 2005, Orders, and had learned of three satellite dealerships that had previously not been disclosed by GM; (4) that prior to the February 11, 2005, e-mail, GM's search for satellite dealerships had been limited to a computer search; (5) that, even after Mr. Middlekauf (and therefore GM) learned, through the responses to the February 11, 2005, e-mail, that the computer search had not disclosed all of GM's satellite dealerships, GM did not perform a manual search of its files until May 12

and 13, 2005[1]; (6) that, as a result of the May 12 and 13, 2005, search, GM identified nine additional satellite dealerships[2]; and (7) that the Vaden, Georgia dealership file delivered to Serra on May 16, 2005, lacked documents[3] that "would be found" in <u>every</u> satellite dealership file[4].

As to the allegations regarding vehicle allocation data, trial counsel for GM represented that: (1) File A data were retained for 36 months and then destroyed by GM; and (2) no File B data was retained prior to the first week of November, 2001, when GM began to retain File B data. GM's representative, its (in house) counsel, and its trial counsel all stated that they had no knowledge about how GM went about destroying documents after the 36 month retention period.

This action was filed on October 23, 2001. Therefore, the court does not find the failure of GM to retain File B data prior to November 7, 2001[5], to be discovery abuse. The question regarding the File A data is, however, different. Serra argued

---

[1] When 14 paralegals hired for the task performed the search over the course of two days.

[2] And produced at least some documents relating to those dealerships.

[3] Specifically, an executed dealer sales and service agreement and a dealer location and premises change proposal.

[4] Thus, a serious question exists as to whether GM has, even now, fully responded as ordered by the court on two previous occasions.

[5] The date on which, according to counsel for GM, such date <u>first</u> was retained in any format.

that Judge Proctor's Order of January 28, 2004, required GM to produce, *inter alia*, the File A data and that therefore any destruction by GM of File A data for the period earlier than 36 months prior to such Order was a violation of such Order. GM argued that it had no reason to believe that vehicle allocation data other than for Serra and another dealership, Edwards Chevrolet, was the subject matter of discovery in this case[6].

Judge Proctor's January 28, 2004, Order directed discovery to proceed on the topics proposed by Serra in Exhibit A (to doc. 35). That exhibit, at item (9), lists: "The course of dealings <u>between Serra and GM</u> related to: (a) vehicle allocations." (Emphasis supplied.) However, item 10 is <u>not</u> limited. It lists, as an area of discovery, "GM's allocation of vehicles since 2001." Given the multiple items in Exhibit A containing words of limitation, and the total lack of any such limiting language in item 10, the court finds GM's reading of such a limitation into Item 10 to be unreasonable. Serra's initial complaints alleged disparate treatment by GM, clearly indicating the relevance of vehicle allocation data generally, as disparate impact can only be established by comparative means. Additionally, request for production number 5 of Serra's March 8, 2003 Interrogatories and Request for Production, requests: "Please produce any and all documents which show how

---

[6] According to the parties, the data has been produced for the period June, 2001 forward.

5

General Motors' allocation system is operated at the current time, including memoranda, letters, ... and any other documents." Additionally, production request number 20 of that pleading requests: "Any and all 832 reports[7] or other such reports containing the same or similar information for <u>all</u> Chevrolet dealers in the Birmingham Market Area." Additionally, in Serra's interrogatories and requests for production dated February 23, 2004, item 11 requests production of

> [a]ny and all reports, memoranda, correspondence, documents, files in elctronic format, which indicate GM's allocation of vehicles to dealers within the Birmingham Metropolitan Area from 1988 to date, including but not limited to any and all documents or materials internally relied upon by the [sic] GM, whether in hard copy or electronic format, which reflect or relate to the allocation of new Chevrolet vehicles to all Chevrolet dealers within the Birmingham Metropolitan Area from 1998 to date."

In light of all of the above, the court finds unreasonable GM's interpretation of its document preservation and production obligations as limited <u>only</u> to vehicle allocations for Serra and Edwards Chevrolet. Indeed, the court finds that GM has made a practice throughout this action of unreasonably narrow interpretations of discovery requests <u>and</u> court Orders.

GM has engaged in a pattern of disregarding its discovery obligations, not

---

[7] 832 reports are no longer kept in that format. 832 reports contained vehicle allocation data, however, and the request clearly covers other reports containing the same types of data, no matter how the report is titled.

responding to discovery requests until ordered to do so, and even then totally disregarding this court's deadlines for complying with its Orders. This is particularly flagrant in light of the fact that the court <u>found GM in contempt</u> on February 3, 2005, <u>imposed sanctions</u> of $50,000 per day, and <u>told GM</u> that, if it did not purge itself of contempt by February 17, 2005, the court would begin striking GM's defenses. GM <u>knew</u> that it had not performed a manual search of its files. Even after the February Orders, GM chose to continue to rely on its computer search until six (6) days before the end of the period allowed GM to purge itself of contempt, before sending an e-mail to regional managers. Even after the responses to the e-mail established that the computer search was incomplete, GM delayed approximately one (1) <u>month</u> before it undertook the manual search. Further, Middlekauf's testimony that the Vaden, Georgia dealership file lacked documents that "would be" in "every" satellite dealership file, calls into question the completeness of the GM's production even at this late date.

The court finds that GM did not purge itself of contempt until at least May 16, 2005, the date on which the latest satellite dealership records were delivered to Serra.[8] Not counting the date of the Order, the GM was in contempt for  ninety-eight (98)

---

[8] As stated in footnote 4, the court is still not certain that GM has purged itself of contempt.

7

days, for ($50,000 times 98 days) sanctions of Four Million Nine Hundred Thousand Dollars ($4,900,000). However, the court will limit monetary sanctions to Seven Hundred Thousand Dollars ($700,000), the equivalent of fourteen (14) days of contempt, at Fifty Thousand Dollars ($50,000) per day.

The court, in reviewing the totality of the circumstances surrounding GM's discovery conduct, and in exercising its discretion under these circumstances, believes that, in lieu of further monetary sanctions, it is more appropriate to impose non-monetary sanctions.[9] Accordingly, the court hereby STRIKES GM's first, eighth, and tenth affirmative defenses. Finally, GM will not be permitted to challenge any aspect of Serra's expert's report or opinion to the extent that such challenge is based in whole or in part on such expert's lack of information regarding satellite dealerships during any month on or after January, 2001.

DONE and ORDERED this 20th day of May, 2005.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[9] The court will hold in abeyance further sanctions and revisit this limitation in the event that it is established that GM remained in contempt even after May 16, 2005.