# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| SERRA CHEVROLET, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
| v. ) | |
| ) | CV-01-HS-2682-S |
| GENERAL MOTORS ) | |
| CORPORATION, ) | |
| ) | |
| Defendant. | |

## GM'S REPLY TO PLAINTIFF'S RESPONSE TO GM'S COUNTER-MOTION FOR SANCTIONS

Defendant, General Motors Corporation ("GM"), files this reply to Plaintiff's Response to GM's Counter-Motion for Sanctions, and hereby shows the Court as follows:

### Introduction

Plaintiff's reply brief abandons all the arguments it made in its previous motion except for three specious, bad faith positions: (1) the Eleventh Circuit's decision does not mean what the Eleventh Circuit said, or the Eleventh Circuit was "wrong" so this Court should disregard its holding; (2) despite all evidence to the contrary, shipment data "really" is allocation data and it was not produced "soon" enough or in the "right" format by GM, despite the fact that Plaintiff never asked

1

for it from GM in discovery and it was produced as kept in the normal course of business; and (3) despite what the Clark Automotive contracts say, and despite the fact that there is no satellite agreement in the Dealer Contract file for Clark Automotive or information in the file that such agreement ever existed, Mr. Middlekauf "testified falsely" about the Clark Automotive dealership. GM respectfully submits this reply limited to these points and again urges the Court to impose sanctions on Plaintiff for its conduct.

## Argument

I. **The Eleventh Circuit's Holding Concerning Plaintiff's Admissions and the Effect of those Admissions Regarding Discovery are Obviously Binding on this Court.**

In order to escape the clear holding of the Eleventh Circuit, Plaintiff incredibly says that the Eleventh Circuit "overlooked" Plaintiff's allegations in the Third Amended Complaint and "fail[ed] to fully consider" its "after the state court litigation" admission. Plaintiff's Brief, p. 12. The Eleventh Circuit did not overlook or fail to consider anything, and Plaintiff should be sanctioned for making the frivolous argument that this Court should ignore a mandate from the Eleventh Circuit.

It is beyond comprehension that Plaintiff now argues that the Eleventh Circuit "overlooked" the allegations in Plaintiff's Third Amended Complaint and

that, therefore, this Court should disregard the mandate from the Eleventh Circuit. The Third Amended Complaint was filed in April 2004, and GM moved to dismiss the Third Amended Complaint on May 3, 2004. Plaintiff's representation to this Court that its misallocation claims were not precluded by res judicata because they arose "after the state court litigation" was made on June 2, 2004. This representation lead to the motion being denied on February 16, 2005. Thus, Plaintiff's claims of misallocation by GM concerning Edwards East in 2000 as a result of the Buy/Sell, brought in the Third Amended Complaint, were directly before the Court when Plaintiff made the judicial admission to avoid dismissal of the Third Amended Complaint on res judicata grounds. These claims and discovery are now barred. As the Eleventh Circuit held, Plaintiff's admission that its misallocation claim did not arise until after the state court litigation "rendered irrelevant" discovery into events which occurred prior to April 16, 2001.

Plaintiff also completely ignores the fact that, after it filed its Third Amended Complaint, Anthony Serra and Plaintiff counsel stated <u>on the record</u> that they were not seeking damages for anything that occurred prior to the trial of the state court action:

> Q: Okay. And so you are not claiming any damages for anything, then, that occurred prior to the *trial* of the State Court action?
>
> A: I don't believe I am.

MR. BADDLEY: That's correct.

Ex. 2, A. Serra depo., pp. 322-23 (emphasis added).[1] This admission too precludes all claims prior to April 16, 2001, and Plaintiff knows it.

The Eleventh Circuit got it exactly right. These admissions mean that discovery into events prior to April 16, 2001 is "irrelevant" precisely because Plaintiff has disclaimed any causes of action which arose prior to April 16, 2001.

Of course, Plaintiff's position that the Eleventh Circuit "got it wrong" or "overlooked" facts is of no consequence as a matter of law. This Court is clearly prohibited from reviewing the decisions of the Eleventh Circuit. Piambino v. Bailey, 757 F.2d 1112, 1119 (11th Cir. 1985); USX Corp. v. Tieco, Inc., 227 F.R.D. 680, 691 (N.D. Ala. 2004). Indeed, not only is this decision binding on this Court, its is also binding on all future Eleventh Circuit panels addressing this issue. Hurth v. Mitchem, 400 F. 3d 857, 862 (11th Cir. 2005) ("we are not permitted to reach a result contrary to a prior panel's decision . . ."). Plaintiff's attempt to have this Court violate the Eleventh Circuit's mandate is sanctionable, and this conduct must be stopped.

---

[1] This deposition was taken on October 5, 2005, which was approximately five months after the Third Amended Complaint was filed.

## II. Plaintiff Never Propounded a Single Interrogatory or Request for Production Requesting Shipment Data From GM, and GM Cannot be Sanctioned for Voluntarily Producing Information As it Was Kept in the Ordinary Course of Business Several Months Before the Discovery Cutoff.

Plaintiff now calls GM's position that allocation data and shipment data are two different things part of GM's "clever use of semantics" and part of GM's "sanctionable" conduct. Plaintiff's Brief, p. 16. Nonsense. This is from the same Plaintiff *whose counsel agreed with GM's expert that shipment data and allocation data are different*:

> A: Well, I don't necessarily categorize the shipment data as allocation information. Shipment data was furnished to me as part of Dr. Ileo's analysis. And I did supplement that file, yes.
>
> Q: (By Mr. Baddley) All right. I have two questions: Number one, I think you are going to be surprised, *but I think I agree with you*. Shipment data is not allocation data, is it?
>
> A: No sir.

Ex. 10, S. Farhat depo., pp. 55-56 (emphasis added); GM's Brief, pp. 20-21.

Plaintiff now acts like this deposition never took place. These sort of flat, untruthful, knowing misrepresentations to the Court are why GM asks the Court to impose sanctions.

Plaintiff also ignores the testimony of GM witness Tim Jones, *given seventeen months ago*, in which he explicitly informed Plaintiff counsel that

5

shipment data was not included with the allocation data, but it could be obtained from another source. GM's Brief, pp. 19-20.

As further evidence of Plaintiff's blatant record distortions, Plaintiff says that it requested from GM "information showing what vehicles were allocated and ***received (i.e., or shipped to)*** by the other Birmingham MDA dealers." Plaintiff's Brief, p. 16 (emphasis added). Plaintiff's brief has no citation for this statement because it is false.[2] As GM has previously demonstrated, as proven with record citations, Plaintiff's document requests sought allocation data – not shipment data. Plaintiff's first request for shipment data was through subpoenas to the Birmingham dealers, GM then voluntarily produced the shipment data as it was kept in the normal course of business several months before discovery ended. GM's Brief, pp. 17-18. GM cannot be sanctioned for this, and Plaintiff should be sanctioned for saying that GM did anything improper.

---

[2] The following is Plaintiff's verbatim request for allocation data, which shows that, contrary to Plaintiff's representation to this Court, the request did ***not*** ask for any information regarding what vehicles were "received (i.e., or shipped to) by the Birmingham MDA dealers": "Any and all reports, memoranda, correspondence, documents, files in electronic format, which indicate GM's allocation of vehicles to dealers within the Birmingham Metropolitan Area from 1998 to date, including but not limited to any and all documents or materials internally relied upon by the GM, whether in hard copy or electronic format, which reflect or relate to the allocation of new Chevrolet vehicles to all Chevrolet dealers within the Birmingham Metropolitan Area from 1998 to date. To the extent available, the Plaintiff requests that GM produce this information in electronic format." Ex. 6, No. 11.

### III. Plaintiff's Claim that Mr. Middlekauf's Testimony was "False" is Based on Nothing More than its Own Speculation Which is Contradicted By the Actual Contractual Documents.

With regard to the Clark Automotive dealership in Hawaii, Plaintiff has informed the Court that "the documents speak for themselves." Plaintiff's Brief, p. 5. GM agrees. GM previously produced the agreement it uses for approved satellite locations. See Exhibit 16, Satellite Agreement; Notice of Compliance, ¶ 1 (Doc. No. 114). The contract file and documents for Clark Automotive show: (1) no such satellite agreement; (2) no indication that one was ever in place; and (3) that Clark Automotive has two permanent full sales and service locations. GM's Brief, pp. 11-12. These documents do speak for themselves, and Mr. Middlekauf's testimony was exactly in accord with the documents in the Clark Automotive file. This should end the Court's inquiry. See Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice and Procedure*, § 2210 ("A document or thing is not in the possession, custody, or control of a party if it does not exist."). Moreover, Mr. Middlekauf's testimony was based on his own work experience in Hawaii and his research with the regional office.

Plaintiff's entire argument is based on its own ad hoc interpretation of what it thinks a "satellite" is. The fact that Plaintiff thinks that Clark Automotive has a "satellite facility" does not mean that Mr. Middlekauf testified "falsely" when he simply testified to what the contract documents said and what was in the contract

7

file. Satellite agreements are <u>expressly</u> <u>temporary</u>, i.e., they can be terminated pursuant to the written terms of the agreement any time upon written notice. By contrast, the Clark Automotive locations are set forth in the permanent premises addendum to the Dealer Agreement and are subject to the Dealer Agreement's provisions.

As Plaintiff's brief admits, Mr. Middlekauf brought the original Clark Automotive dealer contract file to the Show Cause hearing. One of the express reasons for having the Show Cause hearing was to clear up any confusion regarding Hawaii and the Clark Automotive dealership. In fact, Plaintiff recognizes that GM was ordered "to produce a witness knowledgeable to testify regarding this dealership." Plaintiff's Brief, p. 8. That is why Mr. Middlekauf came, and that is why he brought the file. Plaintiff counsel questioned Mr. Middlekauf briefly, yet he refused to examine the documents in the very file that Plaintiff says "speak for themselves." If he had, this issue could have been resolved then. It is mind boggling that Plaintiff would refuse to examine the file, not ask Mr. Middlekauf about the documents contained in the file, yet now, more than a year later, accuse GM of hiding the ball.

Plaintiff has the audacity to say that GM "now" says that the Clark Automotive dealership has two permanent sales and service facilities. Plaintiff's

Brief, p. 7. GM has never said anything different. Mr. Middlekauf testified about these two sales and service facilities at the Show Cause hearing last May:

> Q: And how many dealerships does Clark Automotive Group have on the big island of Hawaii?
>
> A: It has two full, two full sales and service points.

Ex. 3, Hearing Transcript, p. 45.

Finally, GM was ordered to produce the documents relating to the sales satellites of Chevrolet dealerships with satellite agreements. It is undisputed that GM did this concerning Clark Automotive – not once, but twice. As already discussed, Mr. Middlekauf physically brought the original dealer contract file to the Show Cause hearing for Plaintiff to inspect. Next, on June 30, 2005, GM offered to make the relevant dealer contract files available for inspection in Detroit where they are kept in the normal course of business. Thus, GM fulfilled its obligations under the Rules by making the documents available whether Plaintiff chose to inspect them or not.[3]

---

[3] Plaintiff says that the reason it refused GM's offer to inspect the dealer contract files is because it was "beyond untimely." Plaintiff's Brief, pp. 14-15. There was nothing untimely about GM's offer. After GM produced the documents discovered in its manual search of the 4,100 files, Plaintiff counsel continued to harass GM about the alleged "incomplete" production of records from these files. Because GM knew Plaintiff would never be satisfied regardless of what GM produced, GM sought to satisfy Plaintiff by making the complete files available for its inspection. Rather than actually reviewing the files, Plaintiff continued its tactics of trying to manufacture a discovery dispute at every turn.

9

## IV. Plaintiff Continues to Ask This Court to Ignore the Eleventh Circuit Law Regarding the Guidelines By Which to Impose Sanctions.

In Part IV of Plaintiff's brief, Plaintiff once again ignores the mandate of the Eleventh Circuit and argues that the Court should actually *increase* the sanction that was reversed by the Eleventh Circuit. Amazingly, Plaintiff admits that its argument on this issue was "enumerated in the Plaintiff's brief with the Eleventh Circuit." Plaintiff's Brief, p. 17. In fact, much of the argument and case citations in its brief were simply cut and pasted from Plaintiff's Eleventh Circuit brief. Compare, Plaintiff's Brief, pp 19-21 with Ex. 1, Plaintiff's Appellee Brief, pp. 58-60. This is wholly improper for Plaintiff to ask this Court to reconsider arguments that the Eleventh Circuit already rejected.

Plaintiff should be sanctioned for asking this Court to ignore the mandate of the Eleventh Circuit. As GM has previously addressed, when determining the appropriate sanction on remand, the Eleventh Circuit stated that it would be appropriate for the Court to consider the costs to the Court for the various motions, hearings, and orders, or the costs to Plaintiff in compelling the relevant discovery. See GM's Brief, p. 4, n. 1; Serra Chevrolet, Inc. v. General Motors, Corp., 446 F.3d 1137, 1156 (11th Cir. 2006). Plaintiff's briefs do not even pretend to address either of these factors, and completely ignore the Eleventh Circuit's directions, relying here on arguments and cases the Eleventh Circuit already rejected.

## Conclusion

Simply put, Plaintiff's Supplemental Motion for Sanctions was frivolous. It has no basis in the truth, and Plaintiff knows it. It ignored or asked this Court to somehow reject the holding of the Eleventh Circuit <u>in this very case</u>. Enough is enough. GM respectfully requests that it be awarded its costs, including attorney's fees, for responding to Plaintiff's frivolous motion and defending against the misallocation claim for the past two years which, as the Eleventh Circuit held, is barred due to the Plaintiff's own admissions.

s/Terrence W. McCarthy
One of the Attorneys for Defendant
General Motors Corporation

OF COUNSEL:
Jere F. White, Jr. (WHI007)
Terrence W. McCarthy (MCC119)
Sanford G. Hooper (HOO033)
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, Alabama 35203
(205) 581-0700
(205) 581-0799 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Thomas E. Baddley, Jr., Esq. and Jeffrey P. Mauro, Esq.

s/Terrence W. McCarthy
Of Counsel
