# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **SERRA CHEVROLET, INC.,** ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.: 2:01 cv-2682-VEH** |
| ) | |
| **GENERAL MOTORS CORP.** ) | |
| **Defendant.** ) | |

## OPINION AND ORDER ON PLAINTIFF'S RENEWED MOTION FOR SANCTIONS

### I. INTRODUCTION AND THE DISCOVERY DISPUTES

This action was filed by Serra Chevrolet, Inc., ("Serra") against General Motors Corp. ("GM") on October 23, 2001. GM moved to dismiss. (Doc. 4.). At a motions hearing on January 16, 2002, Judge Blackburn granted Serra leave to amend the Complaint. A formal Order was entered January 28, 2002. (Doc. 9). Serra actually filed its Amended Complaint on January 25, 2002, . (Doc. 8). On February 13, 2002, GM moved to dismiss the Amended Complaint. (Doc. 12). Serra filed an Opposition to GM's Motion on March 25, 2002. (Doc. 13). On October 25, 2002, Serra moved amend its Complaint for a second time. (Doc. 18). GM moved to strike and opposed the filing of another amended Complaint.

By Orders entered March 31, 2003, Judge Blackburn denied GM's motion to dismiss the amended complaint (doc. 21), denied GM's Motion to Strike and granted

Serra leave to file its Second Amended Complaint(doc. 22). Serra filed its (Second) Amended Complaint ("SAC"), also on March 31, 2003. (Doc. 23).

A Memorandum Opinion accompanied the March 31,2003, Order denying GM's Motion to Dismiss. (Doc. 20). In that opinion, Judge Blackburn discussed in some detail, and rejected, GM's claims that Serra's action was time barred, barred by *res judicata* and barred because Serra's claims were compulsory counterclaims that should have been, but were not, filed in a state court action involving, *inter alia*, Serra and GM.[1] *Id*. Judge Blackburn also denied GM's motion to dismiss for failure to state a claim. *Id*.

On April 10, 2003, GM, dissatisfied with the March 31, 2003 Order, filed a Motion to Dismiss Serra's SAC, moved to reconsider the denial of its earlier Motion to Dismiss, or in the alternative, requested the court to certify the March 31, 2003 for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). (Doc. 25). On May 16, 2003, GM moved to strike Serra's demand for punitive damages. (Doc. ). On October 17, 2003,while GM's motions were pending, the action was reassigned to Judge R. David Proctor. (Doc. 28). The next relevant development was the November 17, 2003 Status Report filed by the parties. In that report, GM's position on discovery was stated thus:

---

[1] The state court action will be discussed later.

> It is Defendant's position that the only inquiry and needed discovery is for the time period starting with the Defendant's filing of the Declaratory Judgment action in the Circuit Court of Jefferson County" ("the state court action").

Serra filed its state court action (against Leon Edwards and some GM employees) in April, 1998. GM intervened and filed its Declaratory Judgment action on October 30, 1998. Thus, GM, at the very early stages of this action, identified October 30, 1998, as the earliest date where discover should was relevant.

On November 18, 2003, Judge Proctor denied GM's Motion to Dismiss Serra's SAC, moved to reconsider the denial of its earlier Motion to Dismiss, or in the alternative, requested the court to certify the March 31, 2003 for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). (Doc. 34).

The next relevant development were summarized by the Eleventh Circuit in its recent decision on the sanctions Order, *Serra Chevrolet, Inc. v. General Motors Corp.*, 446 F.3d 1137 (11th Cir. 2006) ("*Serra*"):

> On January 9, 2004, Serra and GM submitted a report to the district court that proposed scheduling deadlines and a plan regarding the scope and manner of discovery. With respect to the scope of discovery, the parties disagreed sharply. On January 28, 2004, the district court ordered discovery to proceed on the topics proposed by Serra, including "GM's misallocation of vehicles since 2001" and the "course of dealings between Serra and GM." Although the court ordered discovery on those topics, it allowed GM to object to the extent that Serra operated "outside of the bounds of permissible discovery as outlined by the Federal Rules of Civil Procedure and the case law under the ADDCA" and to seek the assistance of the court if disputes arose.

446 F.3d at 1141. (Docs. 35 and 36).

Three months later, on March 19, 2004, Serra's punitive damages claim was

struck because each of Serra's Complaint, including the SAC, consisted only of claims under the Automobile Dealers' Day in Court Act, 15 U.S.C. § 1221, *et seq*. ("ADDCA").  The ADDCA does not permit the recovery of punitive damages.  (Doc. 38).

After first obtaining leave to do so, Serra's Third Amended (and current) Complaint ("TAC") was filed on April 12, 2004.  (Doc. 43).  The TAC added three (3) counts to the one-count Second Amended Complaint.  TAC Count One alleged violations of the Automobile Dealers' Day in Court Act, 15 U.S.C. § 1221, *et seq*., and cites in particular GM's termination of a Satellite Agreement.  Count Two alleged violation of Alabama's Motor Vehicle Franchise Act, § 8-20-1 *et seq*., Code of Alabama, 1975 (as amended).  In Count Three Serra alleged that GM was negligent/wanton in assigning a sales area of responsibility to Serra that is too geographically large, and in failing to provide adequate assistance and support for that large sales area.  Count Four alleged negligent/wanton supervision by GM.

On May 3, 2004 GM filed a Motion to Dismiss the TAC.  (Doc. 46.)  Serra's opposition to that motion was filed on June 2, 2004.  (Doc. 51.)  On June 23, 2004, Serra filed a Motion to Compel responses to discovery.  (Doc. )June 28, 2004, while GM's motion to dismiss was pending, the action was reassigned to me.  (Doc. 57.)

By August, 2004, my web site had a specific document posted titled "How To

Avoid and Resolve Discovery Disputes" (Ex. E) and that document stated unequivocally that blanket refusals to answer Interrogatories, or produce documents, were violations of the relevant discovery rules that, standing alone, were sufficient for the imposition of sanctions. http://www.alnd.uscourts.gov/Hopkins/HopkinsPage.htm  Exhibit E, like all the posted materials, was applicable to all pending civil actions. Thus, by August, 2004, GM was on notice of the court's policies on discovery objections, discovery responses, and discovery disputes.

Judge Proctor's January 28, 2004, Order, (doc. 37 directed discovery to proceed on the topics proposed by Serra in Exhibit A to doc. 35.  Number (9), says: "[T]he course of dealings <u>between Serra and GM</u> related to: (a) vehicle allocations." (Emphasis supplied.)  However, item 11 said "GM's misallocation of vehicles since 2001."  Request 11 of Serra's February 23, 2004, Request for Production requested

> [a]ny and all reports, memoranda, correspondence, documents, files in elctronic format, which indicate GM's allocation of vehicles to dealers within the Birmingham Metropolitan Area from 1988 to date, ...which reflect or relate to the allocation of new Chevrolet vehicles to all Chevrolet dealers within the Birmingham Metropolitan Area from 1998 to date.

(Doc. 55, Exhibit 5.)

On August 30, 2004, an Order compelling GM to respond to Serra's discovery was entered. (Doc. 70).  As to the request for production regarding allocation data for all Chevrolet dealers in the Birmingham area from 1998 forward, the court limited the

request from 2001 forward, consistent with Judge Proctor's January 28, 2004, (Doc. 38). On October 27, 2004, GM moved to reconsider that Order as to the allocation data. (Doc. 85). The basis for GM's motion to reconsider was the deposition testimony of Serra where no one could give specific information or data concerning Serra's allocation claims, *e.g.*, what vehicles Serra was "shorted" on. On November 16, 2004, the court denied GM's motion to reconsider that Order. (Doc. 92). Given the information that Serra has obtained since, some from third parties, some from GM, some from GM after subpoenas were issued to other Birmingham Metropolitan Area Chevrolet dealers, it is clear that GM had data that would support Serra's allocation claims, the weekly shipping reports showing which vehicles were delivered to which Chevrolet dealers.

## II.  **THE PENDING SANCTIONS MOTION**

On May 9, 2006, Plaintiff Serra Chevrolet, Inc. ("Serra") filed a Motion to Supplement its previously filed (Third) Motion for Sanctions. (Doc. 218). On May 11, 2006, Defendant General Motors Corp. ("GM") filed an Opposition to Serra's Motion to Supplement. (Doc. 220). On May 16, 2006, the mandate of the Court of Appeals opinion (released April 13, 2006) affirming in part, reversing in part, and remanding this court's May 20, 2005, sanctions Order against GM ("May, 2005, sanctions Order") was received in the Clerk's office. The Court deems and will treat

both Serra's Motion to Supplement and GM's Opposition as timely filed on May 17, 2006, after the receipt of the mandate.

Serra's Motion to Supplement alleged newly discovered (*i.e.*, discovered since the entry of the May, 2005 sanctions Order) information that Serra says is relevant to the sanctions issues before the court on remand, and that the new information provides additional grounds for sanctions against GM. GM opposed Serra's proposed supplemental submissions on the basis that the filing was procedurally improper and untimely, and that Serra's Motion was barred by law of the case, *i.e.*, the remand order from the Eleventh Circuit on the May, 2005, sanctions Order.    Serra's Motion to Supplement was granted by margin Order entered July 7, 2006.

Serra's Supplemental Submission in Support of its Motion for Sanctions was filed July 17, 2006, together with supporting exhibits. (Docs. 227, 228, and 229). GM filed a Motion the next day, July 18, 2006, seeking leave to file a response brief to Serra's Supplemental Submission. (Doc. 230). A second margin Order, entered July 19, 2006, granted GM's Motion for leave to file a response brief on or before July 31, 2006. GM filed its Response Brief on July 31, 2006. (Doc. 231). GM's Response was accompanied by fifteen (15) Exhibits, totaling at least five hundred (500) pages. GM included a Counter Motion for Sanctions as part of its response. *Id*. Serra's Reply to GM's Response and Counter Motion for Sanctions was filed

August 7, 2006.  (Docs. 236 and 237).

For the sake of brevity, Serra's Supplemental Submission in Support of its Motion for Sanctions will be referred to hereafter as "Serra's Motion" or "the Motion."  GM's pleading will be referred to, as appropriate, "GM's Response" or "GM's sanctions motion".

### III.  **SANCTIONS ORDER BACKGROUND AND POSTURE**

Any analysis or discussion of the questions arising from Serra's Motion and GM's Response begins with the decision of the Court of Appeals in *Serra, supra*. There the Court of Appeals reversed this court's May, 2005 finding of contempt against GM for GM's failure to produce Chevrolet vehicle allocation data, affirmed its finding of contempt regarding GM's failure to produce satellite dealership information, vacated the sanctions imposed ($700,000.00 fine, striking of GM's issue preclusion defenses, including res judicata and collateral estoppel) as a violation of GM's due process rights, and remanded for further proceedings consistent with its opinion.  *Id*. at 1152 - 1153.  *Serra* did not modify in any manner the final sanction assessed against GM in the May, 2005, Order, i.e., that "GM would not be permitted to challenge any aspect of Serra's expert report or opinion to the extent that such challenge is based in whole or in part on such expert's lack of knowledge regarding satellite dealerships during any month on or after January, 2001."  (Doc. 132).

A.   Due Process limitations on fines

A fine imposed as part of a sanctions Order will not be sustained on appeal "unless there is offered on the record both a justification for the sanction and an accounting by the [district] court." *Id.* at 1151, *quoting Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1453 (11th Cir. 1985). Here, the May, 2005, Order failed to set forth the reasons justifying the monetary sanction and failed to provide an accounting of how the monetary sanction amount was calculated.

B.   Due Process limitations on striking of defenses

The portion of the May, 2005, Order that struck certain GM affirmative defenses was vacated by the Court of Appeals because those defenses were not "specifically related to the particular 'claim' which was at issue in the order to provide discovery". *Id*. at 1152, *quoting Ins. Co. Of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707, 102 S.Ct. 2099, 2107 (1982). The contempt and discovery order violated by GM involved GM's failure to produce satellite dealership information, while the defenses struck involved prior state court litigation between the parties that GM says is preclusive, in whole or in part, of the claims and issues in this action. Because there was a lack of relationship between the discovery abuse and the struck defenses, the striking of those defenses violated GM's due process rights. *Id*.

## IV. RES JUDICATA & LAW OF THE CASE ISSUE

At the initiation of this action, GM moved to dismiss Serra's Amended Complaint. (Doc. 12). The second basis for dismissal was *res judicata*. As previously noted, Judge Blackburn denied GM's Motion by Order and Memorandum Opinion entered March 31, 2003. (Docs. 20 and 21). The Memorandum opinion found, *inter alia*, that Serra's Automobile Dealer's Day in Court Act ("ADDCA") claim was not barred by *res judicata*, doc. 20 at 6 -10, because the claim did not accrue until September 12, 2001, after the entry of judgment in the state court action, and also because the pertinent part of the state court action, GM's declaratory judgment action against Serra, "did not resolve the issues in the present action." *Id*. At 9.

Serra subsequently amended its pleadings, ending with its Third Amended Complaint filed on April 12, 2004. (Doc. 43). GM moved to dismiss the Third Amended Complaint. (Doc. 46). Serra filed its Opposition to GM's Motion to Dismiss on June 2, 2004. (Doc. 51).

In *Serra*, the Eleventh Circuit said that Serra's made a admission in its Opposition (doc. 51) that limited its misallocation claim to the period beginning April 16, 2001. Review of that pleading shows that the statement in question is most likely found at page 5, where Serra said that Serra's newly added Alabama Motor

Vehicle Franchise Act ("AMVFA") claim was "predicated on acts and omissions that did not occur until after the state court litigation". The Eleventh Circuit said this rendered irrelevant any allocation data from January 1, 2001 through April 16, 2001.

As a matter of law of the case, specifically the imposition of sanctions, this court is bound by the Eleventh Circuit's statement. At to that data, the sanctions discussion is ended, foreclosed by *Serra*. The relevance issue is not similarly foreclosed, however. GM's **[expert Farhat?] [designated allocation representative, Tim Jones] testified [when?]** that allocation data for the year 2000 would be required in order to properly analyze the 2001 allocations. Thus, while the January to April 16, 2001 data was irrelevant to imposition of sanctions on GM, that data has, according to **[whom?]** a relevance separate and independent from sanctions.

## V. DISCUSSION OF SERRA'S MOTION

1.   In *Bank Atlantic v. Blythe Eastman Paine Webber, Inc.*, 127 F.R.D. 224 (S.D. Fla. 1989) ("*BankAtlantic*"), *aff'd* 12 F.3d 1045 (11th Cir. 1994), the district court faced an analogous set of circumstances: BankAtlantic had moved for sanctions against Blythe Eastman Paine Webber, Inc. ("Paine Webber"), including the striking of Paine Webber's pleadings and the entry of default against Paine Webber, on the basis that Paine Webber had concealed damaging evidence in defiance of a prior

11

court order.[2]  127 F.R.D. at 225.

>   The court described its task thus:
>
>   The Court is therefore faced with a delicate task. Our mission is to preserve the integrity of the discovery process while protecting Defendant's right to a full and fair trial on the merits. These important values sometimes conflict. When presented with such a case, the Court must balance the competing interests to reach a fair result.

*Id*.

In this case, as in *BankAtlantic*, the court was faced, in 2005 and now, with assertions that a defendant, here GM, after being ordered to produce information, failed to do so. However, unlike the situation before the *BankAtlantic* district court in 1989, here it is law of the case that GM failed to produce satellite dealership information. Further, the Eleventh Circuit has ruled, and this too is law of the case, that "[I]t was not an abuse of discretion for the district court to conclude that the failure of GM to produce documents about satellite dealerships was due to contumacy rather than good faith misinterpretation." *Serra, supra*, 446 F.3d at 1150.[3]

2.    The claims in Serra's Motion, and the evidentiary submissions that accompany

---

[2] Serra has previously sought entry of default against GM as one possible sanction. The court declined to do so.

[3] Black's Law Dictionary (8th Ed. 2004) defines "contumacy" thus: "Contempt of court; the refusal of a person to follow a court's order or direction"; "contumacious conduct" is defined as "[A] willful disobedience of a court order". *Id*.

12

it, can be summarized as follows[4]:

> A.  The testimony of GM's designated representative, William Middlekauf, at the May 16, 2005, show cause hearing, that there had never been a satellite operation in Hawaii, was at best misleading, and at worst, categorically false.  *See* Exhibits B. and C. to the Motion.
>
> B.  GM failed to produce, until after Serra was in the process of obtaining the information from third parties, information that related to Chevrolet File B data.  Specifically, GM represented to Serra and the court that File B data, which is the weekly new retail Chevrolet allocation data applicable to Birmingham MDA Chevrolet dealers, was not saved prior to November, 2001.  After the May, 2005 sanctions Order, GM advised Serra that it had and would produce data showing the number and model of new Chevrolets supplied to Birmingham MDA dealers from January 1, 2000 forward.  According to Serra, GM explained the discrepancy by saying "shipment" data is not the same as "allocation" data.  Serra says this was information requested in production, specifically the vehicles received (and thereby "shipped") to each dealer from 2000 forward.  Serra Motion at 9.

The significance of the File B data is two-fold: first, it influenced this court's ruling on May 20, 2005 because the court accepted GM's representation that it had no such data.  The "shipment" versus "allocation" argument is a distinction without a difference: Serra was entitled to discover information about the vehicles received by other Birmingham dealers in order to compare with the vehicles Serra received. The shipment data revealed that information and was responsive to Serra's discovery

---

[4] The court is not making findings of fact when it sets out Serra's contentions, nor is it making findings of fact when discussing those contentions.  That is for another day.  The court's analysis assumes, unless the context indicates otherwise, that Serra has made at least a *prima facie* showing, and that assumption carries forward for purposes of analysis and discussion.

request and to Judge Proctor's January 28, 2004, Order that directed discovery to go foward from the time period January 1, 2001, forward.  Left for another day is Serra's contention that it requested this data for 2000, and, also important to the court, whether Serra moved to compel production of the 2000 data.  The second significant point is that the Court of Appeals thought the matter worth mentioning:

> "Second, the court addressed the allocation data.  The court found that the failure of GM to retain File B, or weekly allocation, data, before November 7, 2001, the date on which GM first began retaining such data, was not discovery abuse".  446 F.3d at 1145.

Whether the appellate analysis would have been different had the Eleventh Circuit known that GM in fact retained but did not produce File B data, this court cannot say.  The court does say that, as to the <u>discovery</u> matters in this court (as opposed to <u>sanctions</u>), it matters.  I do not read *Serra* as saying, for all purposes and forever, the matter of pre-June 2001 vehicle allocation data, was and always will be, irrelevant. The Court of Appeals ruled on the record before it.  No one put before the Court of Appeals, in the Briefs, or in the Record Excerpts [**local rule 30-1**?] the issue that GM had information, it just wasn't called File A or File B information, that would show, <u>for all of 2000</u>, the Chevrolet what of whether or not GM information that showed which dealers particularly data showing what

> C.    GM failed to produce, until after Serra was in the process of obtaining the information from third parties, information that related to

> Chevrolet File A, or monthly allocation, data. Specifically, GM has represented to this court and argued to the Court of Appeals that it could not produce File A data from January 1, 2001 - June 1, 2001 because the data had been destroyed. Thereafter, Serra issued a subpoena to Electronic Data Systems ("EDS"), a large systems information management company founded by H. Ross Perot. EDS was formerly owned by GM, and GM contracts with EDS to maintain, *inter alia,* GM's allocation data. Following issuance of the EDS subpoena, GM contacted Serra and said the January 1, 2001 - June 1, 2001 File A data was available. According to Serra, the January 1, 2001 - June 1, 2001 File A data was at all times available from EDS, and the reason it wasn't produced was that GM did not request data from EDS that covered the period January 2001-May 2001.

As to File A data, the Court of Appeals accepted GM's representation and appears to have relied on it:

> "On August 27, 2004, the district court ordered GM to produce the allocation data for all Birmingham dealers from January 2001 forward, but under the retention policy of GM, the data from January 2001 until June 2001 regarding other Chevrolet dealers had been destroyed. When ordered to produce the data on August 27, 2004, GM complied and produced all that it had-allocation data from June 2001 forward. GM could not produce what it did not possess. . .the district court abused its discretion when it held GM in civil contempt and imposed sanctions for the failure by GM to obey the order of the district court to produce document GM did not possess. *See Pesaplatic, C.A.*, 799 F.2d at 1520 ('A party held in contempt may defend his failure to obey a court's order on the grounds that he was unable to comply.')." *Serra, supra*, 446 F.3d at 1148-1149.

The court's review of Serra's request for production, and the court's August 30, 2004 Order, contemplated production of documents that, if not in GM's direct possession, were under GM's control. The EDS data was under GM's control. To obtain it, all

15

GM had to do was ask. Serra asserts GM did not ask.

> D.   GM's failure to timely produce the File A, File B, and shipment data meant that Serra's expert, Technical Associates, Inc. ("TAI") did not have the information it needed when it analyzed the data produced by GM and opined on the issue of misallocation. Specifically, Serra says that the information not produced would have shown what vehicles were new "retail" Chevrolets from those vehicles that were new "fleet" Chevrolets. Serra says GM's expert, Urban Science Applications, Inc. ("USAI") criticizes TAI's analysis as fatally flawed because of its failure to break out the retail vehicles from the fleet vehicles. Serra also says that USAI testified that TAI did not have this information and that USAI had to request the information from GM's new vehicle allocation representative, Tim Jones, who provided USAI with the supplemental information (retail vs. fleet) that USAI required for its analysis. Serra also says that GM did not advise it or TAI when it provided this supplementary information to USAI for its use in analyzing the allocation of vehicles and TAI's analysis of the allocation of vehicles. Serra Motion at 14-15 (exhibit citations omitted, see n.3, *supra*).

3.   Serra's Motion claims it has been materially prejudiced by GM's discovery misconduct. It asserts substantial amounts of time and money have been expended in having TAI evaluate GM's inadequate and piecemeal production, in having to continually demand that GM fully and accurately respond to discovery requests, and in having to come before the court on repeated occasions in efforts to obtain the requested discovery and remedy GM's failure to comply with discovery requests and district court orders.

## V.   **DISCUSSION OF GM'S OPPOSITION AND RESPONSE**

1.   In its Opposition to Serra's Motion to Supplement, GM, in addition to the timeliness and procedural issues resolved in I., above, asserted that Serra's Motion, is barred by the law of the case and the Eleventh Circuit's remand Order. The court

is skeptical. First, there remain, at this late stage of the litigation, after discovery has closed and GM's summary judgment motion has been filed, what appear to be substantial issues about whether GM has complied with its discovery obligations to Serra and its obligations under the orders issued by Judge Proctor and me. Second, any law of the case, if applicable, would have been based on the facts known to this court and the Eleventh Circuit and, if GM did not produce information that should have been produced, then the law of the case would have been obtained, at least in part, by violations of GM's discovery obligations to Serra and the court. If that should turn out to be the case, the court would enter appropriate remedial order(s). Further, the Court of Appeals was ruling on what was before it, and to the extent that discovery issues and facts were not available at the time it ruled, or to the extent that the Eleventh Circuit relied on "facts" that were inaccurate or incomplete, I believe this court would be obliged to take the appropriate actions and enter the appropriate orders based on a complete and accurate record.

2. GM's Opposition to Serra's Motion to Supplement said this court should follow the two "guideposts" provided by the Eleventh Circuit. June 28, 2004. The Court of Appeals said one appropriate consideration was the costs to this court of the numerous related motions, hearings, and orders. 446 F.3d at 1152. Second, the Eleventh Circuit said that this court may also find that the fine is better deemed costs

17

to be paid in full or in part to Serra or its attorneys for the expenses incurred in compelling the discovery. *Id.*; *see also Carlucci, supra*, 775 F.2d at 1454.

This court is very mindful of what the Eleventh Circuit held, and what it suggested, and has already entered an Order vacating those sanctions where the Court of Appeals reversed the sanctions Order. The court intends to implement the remand fully and faithfully. However, it does not agree with GM that the only issue implicated by Serra's Motion relates to Serra's expenses, and that the remand leaves no room for any other information to be brought before the court. To follow such a course would be inconsistent with the court's duty to preserve the integrity of the discovery process while also protecting the right of both parties to have a fair trial. *See BankAtlantic, supra*. A fair trial is an informed trial, at least it is when, as here, a litigant (Serra) has made the appropriate efforts to become informed. If GM continued to withhold information that Serra had requested, or that the court had ordered produced,[5] then it would be wrong to permit GM to take advantage of its misconduct at any stage of the proceedings in this court, be it discovery, summary judgment, or trial. At this point, what the court has are questions about whether the representations made and testimony taken last May were accurate and complete, and whether there has been full and complete compliance with the discovery orders

---

[5] The court is not making any such finding in this Opinion.

issued by this District Court. Until these questions are answered, the integrity of the fact finding process, and the rights and obligations of the parties under the Federal Rules of Civil Procedure, and their due process rights, cannot be determined.

**ENTERED** this 28th day of August, 2006.

                                                    **VIRGINIA EMERSON HOPKINS**
                                                    United States District Judge