# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **SERRA CHEVROLET, INC.,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:01 cv-2682-VEH** |
| | ) | |
| **GENERAL MOTORS CORP.** | ) | |
| **Defendant.** | ) | |

---

## OPINION AND ORDER ON PLAINTIFF'S RENEWED MOTION FOR SANCTIONS, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND DEFENDANT'S MOTION FOR COUNTER-SANCTIONS

### I. Introduction And The Discovery Disputes

This action was filed by Serra Chevrolet, Inc., ("Serra") against General Motors

Corp. ("GM") on October 23, 2001.  (Doc . 1).  GM moved to dismiss.  (Doc. 4).

Judge Blackburn entered a scheduling Order on November 28, 2001, setting deadlines

for Serra's opposition to GM's Motion to Dismiss and GM's Reply, and setting a

hearing on GM's Motion to Dismiss for January 16, 2002.  There is no docket entry

reflecting whether the January 16, 2002, hearing was held, but Judge Blackburn

granted Serra leave to amend the Complaint by Order entered January 28, 2002.

(Doc. 9).  Serra actually filed its Amended Complaint (presumably after an oral

granting of its motion at the hearing) on January 25, 2002.  (Doc. 8).  On February 1,

2002, GM sought leave to extend the time to respond to the Amended Complaint,

(Doc. 10), which the court granted by Order entered February 6, 2002 (Doc. 11).  On February 13, 2002, GM moved to dismiss the Amended Complaint.  (Doc. 12).  Serra filed an Opposition to GM's Motion on March 25, 2002.  (Doc. 13).  On October 25, 2002, Serra moved to amend its Complaint for a second time.  (Doc. 18).  GM moved to strike and opposed the filing of another amended Complaint.  (Doc. 19).

By Orders entered March 31, 2003, Judge Blackburn denied GM's motion to dismiss the amended complaint (Doc. 21), denied GM's Motion to Strike, and granted Serra leave to file its Second Amended Complaint (Doc. 22).  Serra filed its (Second) Amended Complaint ("SAC"), also on March 31, 2003.  (Doc. 23).

A Memorandum Opinion accompanied the March 31, 2003, Order denying GM's Motion to Dismiss.  (Doc. 20).  In that opinion, Judge Blackburn discussed in some detail, and rejected, GM's claims that Serra's action was time barred, that it was barred by *res judicata*, and that it was barred because Serra's claims were compulsory counterclaims that should have been, but were not, filed in a state court action involving, *inter alia*, Serra and GM.[1]  *Id*.  Judge Blackburn's Memorandum Opinion also rejected GM's contention that the SAC failed to state a claim because Serra's

---

[1]  "The state court action" means *Serra Chevrolet Inc. v. Edwards Chevrolet, Inc*., *et al*., Jefferson County Circuit Court Case No. CV 98-2089-AJH, and the appeal taken from the judgment of the Circuit Court, *Serra Chevrolet, Inc. v. Edwards Chevrolet, Inc. / General Motors Corporation v. Serra Chevrolet Inc*., 850 So.2d 259 (Ala. 2002).  Details are set out at page, *infra*.

SAC did not sufficiently plead a "wrongful demand" or "threatened sanction". *Id* at pp. 11 - 13.

On April 10, 2003, GM, dissatisfied with the March 31, 2003, Order, filed a Motion to Dismiss Serra's SAC, moved to reconsider the denial of its earlier Motion to Dismiss, or in the alternative, requested the court to certify the March 31, 2003, Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  (Doc. 25).  On May 16, 2003, GM moved to strike Serra's demand for punitive damages.  (Doc. 27 ).  On October 17, 2003,while GM's motions were pending, the action was reassigned to (newly appointed) Judge R. David Proctor.  (Doc. 28).

The next relevant development was the November 17, 2003, Status Report filed by the parties.  (Doc. 33).  In that report, GM's position on discovery was stated thus:

> **It is Defendant's position that the only inquiry and needed discovery is for the time period starting with the Defendant's filing of the Declaratory Judgment action in the Circuit Court of Jefferson County" ("the state court action")**.  (Emphasis supplied).

Serra's state court action was against Leon Edwards and various competitors primarily for tortious interference with Serra's relationship with GM.  (Doc. 8 at p. 24, Ex. D).  The state court action was filed April 24, 1998.  GM intervened in the state court action and filed its Declaratory Judgment action on October 30, 1998. Thus, GM, at the very early stages of this action, identified October 30, 1998, as the

earliest relevant discovery date.  GM has taken a contrary position ever since, saying

discovery should not go back as far.  *Cf.*  Doc. 33 *with* Doc. 35.[2]

On November 18, 2003, Judge Proctor denied GM's Motion to Dismiss Serra's

SAC, denied GM's Motion to Reconsider the denial of its earlier Motion to Dismiss,

and denied GM's alternative Motion to Certify the March 31, 2003, Order for

interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  (Doc. 34).

The next relevant developments were summarized by the Eleventh Circuit in

*Serra Chevrolet, Inc. v. General Motors Corp.*, 446 F.3d 1137 (11th Cir. 2006)

("*Serra*"):

> On January 9, 2004, Serra and GM submitted a report to the district court that
> proposed scheduling deadlines and a plan regarding the scope and manner of
> discovery.  With respect to the scope of discovery, the parties disagreed
> sharply.  On January 28, 2004, the district court ordered discovery to proceed
> on the topics proposed by Serra, including "GM's misallocation of vehicles
> since 2001" and the "course of dealings between Serra and GM."  Although
> the court ordered discovery on those topics, it allowed GM to object to the
> extent that Serra operated "outside of the bounds of permissible discovery as
> outlined by the Federal Rules of Civil Procedure and the case law under the
> ADDCA" and to seek the assistance of the court if disputes arose.

446 F.3d at 1141.  (Docs. 35 and 36).

Three months later, on March 19, 2004, Serra's punitive damages claim was

---

[2]  I do not know why this does not constitute a binding admission against GM barring its
subsequent arguments that the scope of discovery should not go back so far, nor why neither
party brought this to the attention of the Court of Appeals in *Serra, infra*. GM's admission was
made first, and there is no room for doubt about the date it was referring to.  (Doc 33).

struck because each of Serra's Complaints, including the SAC, consisted only of claims under the Automobile Dealers' Day in Court Act, 15 U.S.C. § 1221, *et seq*. ("ADDCA"). The ADDCA does not permit the recovery of punitive damages. (Doc. 38).

After first obtaining leave to do so, Serra's Third Amended (and current) Complaint ("TAC") was filed on April 12, 2004 (Doc. 43), four (4) months after Judge Proctor's January 28, 2004, Scheduling Order that set out the relevant time periods for discovery. The TAC added three (3) counts to the one-count Second Amended Complaint. TAC Count One, essentially a restating of the previous Complaints, alleged violations of the ADDCA, in particular GM's termination of Serra's Satellite Agreement. Count Two alleged violation of Alabama's Motor Vehicle Franchise Act, § 8-20-1 *et seq*., Code of Alabama, 1975 (as amended) ("MVFA"). In Count Three, Serra alleged that GM was negligent/wanton in assigning to Serra a sales area of responsibility that was too large geographically, and in failing to provide adequate assistance and support for that large sales area. Count Four alleged negligent/wanton supervision by GM.

On May 3, 2004, GM filed a Motion to Dismiss the TAC. (Doc. 46.) Serra's opposition to that motion was filed on June 2, 2004. (Doc. 51.) On June 23, 2004, Serra filed a Motion to Compel responses to discovery. (Doc. 55) On June 28, 2004,

shortly after my appointment and while GM's motion to dismiss and Serra's motion to compel were pending, the action was reassigned to me.  (Doc. 57).

No later than the beginning of August, 2004, my web site had a specific document posted titled "How To Avoid and Resolve Discovery Disputes" (Ex. E), which stated unequivocally that blanket refusals to answer interrogatories, or produce documents, were violations of Fed. R. Civ. P. 33(a) and Fed. R. Civ. P. 34(b), respectively, and that such violations, standing alone, were sufficient for the imposition of sanctions.[3]   Exhibit E, like all posted materials, was applicable to all pending civil actions. Thus, by August, 2004, GM was on notice of the court's policies on discovery objections, discovery responses, and discovery disputes.

Judge Proctor's January 28, 2004, Order (Doc. 37), directed discovery to proceed on the topics proposed by Serra in Exhibit A to Doc. 35.  Number (9) says: "[T]he course of dealings between Serra and GM related to: (a) vehicle allocations." (Emphasis supplied.)  As noted by the Court of Appeals (and *incorrectly* stated in my May, 2005, Sanctions Order), Item 11 said "GM's misallocation of vehicles since 2001."  However, Request 11 of Serra's February 23, 2004, Request for Production

---

[3] *See* http://www.alnd.uscourts.gov/Hopkins/HopkinsPage.htm.  While the court's web site has been modified since the summer of 2004, *e.g.*, summary judgment motions procedure, the court believes that the Guidelines for Avoiding and Resolving Discovery Disputes applicable here have not changed.

requested

> [a]ny and all reports, memoranda, correspondence, documents, files in
> electronic format, which indicate GM's allocation of vehicles to dealers
> within the Birmingham Metropolitan Area from 1998 to date, ...which
> reflect or relate to the allocation of new Chevrolet vehicles to all
> Chevrolet dealers within the Birmingham Metropolitan Area from 1998
> to date.

(Doc. 55, Exhibit 5.)

On August 30, 2004, an Order compelling GM to respond to Serra's discovery

was entered. (Doc. 70).  As to the request for production regarding allocation data for

all Chevrolet dealers in the Birmingham area from 1998 forward, the court limited the

request to the period from 2001 forward, consistent with Judge Proctor's January 28,

2004, Order.  (Doc. 37).  On October 27, 2004, GM moved to reconsider that Order

as to the allocation data.  (Doc. 85).  The basis for GM's motion to reconsider was the

F.R.Civ.P. 30(b)(6) deposition testimony of Serra where no one could give specific

information or data concerning Serra's allocation claims, *e.g.*, the vehicles where

Serra was "shorted".  On November 16, 2004, the court denied GM's motion to

reconsider that Order. (Doc. 92).[4]

Given the information that Serra has obtained since, some from third parties

---

[4] Serra maintains that its representatives needed the very information withheld in order to
answer GM's questions.

such as Electronic Data Systems ("EDS")[5], some from GM, and some from GM after subpoenas were issued to other Birmingham Metropolitan Area Chevrolet dealers, it is clear that GM had data that would support Serra's allocation claims, specifically, contemporaneously generated weekly shipping reports showing which vehicles were delivered to which Chevrolet dealers in the Birmingham area.  And GM was on notice, from Serra's Memorandum In Support of Motion for Sanctions Or, In the Alternative For A Default Judgment Against General Motors, that Serra was saying it needed, had requested, and GM had refused to provide, "complete allocation records of all the Birmingham area dealers" and that such records were "necessary to enable the Plaintiff to perform comparative analyses for the purposes of determining the equitability of GM's allocation within and among the Birmingham MDA, the region and the zone."  (Doc. 95 at page 2).

It is also clear that GM was providing Serra additional data on Chevrolet vehicles delivered to Birmingham MDA dealers, "shipment data" _after_ the May, 2005 entry of the Sanctions Order.  Serra's expert, Michael Ileo, used some, if not all, of this information in an updated report to Serra's counsel in September, 2005.  Exhibit 28 (Doc. 186) to GM Motion for Summary Judgment (Doc. 181).  GM's expert, Sarif

---

[5]  The business history of GM and EDS, described in Serra's Motion, _see_ p. 21.C., _infra_, is common knowledge.

Farhat, testified about the shipment data in his deposition taken February 7, 2006. Exhibit 30 (Doc. 187 at pp. 32, 180, 223) to GM Motion for Summary Judgment (Doc. 181).

In summary, there is clearly an issue in the case involving whether or not Serra was being short-changed by GM when it came to vehicle allocation, and a very relevant, perhaps key, time period was 2000 - 2001, when Edwards Chevrolet either became the successor to Century Chevrolet, or was awarded a new dealership[6], in either case renamed "Edwards East".[7]  The disconnect between Judge Proctor's January 28, 2004, Order (Doc. 37), and the subsequent discovery disputes between the parties can, in part, be laid at my door .  I did not recognize, at the time the case was reassigned to me, that the posture of the case had recently changed as a result of Serra's Third Amended Complaint ("TAC") filed, as noted above on April 12, 2004. (Doc. 43).  With the new counts added in the TAC, the scope of discovery was necessarily broadened.  I believe that, had he reconsidered his discovery Order in

---

[6]  GM has described the transaction both ways in pleadings filed in this action.

[7]  In particular, GM's "special" allocation of 418 +/- additional vehicles to Edwards East during the latter half of 2000 and the first half of 2001, an allocation Serra says violated the MVFA, in part because it gave Edwards East extra vehicles to sell, particularly then-fast selling vehicles, at a time when Serra was not being offered similar vehicles or similar increased shipments of vehicles.

light of the TAC, and had GM's original admission in Doc. 33[8], that October 30, 1998, was the earliest relevant discovery date, been brought to his attention, Judge Proctor would have modified his discovery Order accordingly.  I know I would have. Further compounding the discovery analysis matters was Serra's filing and withdrawing at least one motion to compel and for sanctions, and my vacating an Order compelling GM to respond to discovery (Docs. 59 & 62, respectively).[9]

## II. __Sanctions Order Background And Posture__

Any analysis or discussion of the questions arising from Serra's Motion and GM's Response begins with the decision of the Court of Appeals in *Serra, supra*. There the Court of Appeals reversed this court's May, 2005, finding of contempt against GM for GM's failure to produce Chevrolet vehicle allocation data, affirmed its finding of contempt regarding GM's failure to produce satellite dealership information, vacated the sanctions imposed ($700,000.00 fine, striking of GM's issue preclusion defenses, including res judicata and collateral estoppel) as a violation of GM's due process rights, and remanded for further proceedings consistent with its opinion.  *Serra*, 446 F.3d at 1152 - 1153.  *Serra* did not modify in any manner the last sanction assessed against GM in the May, 2005, Order, *i.e.*, that "GM would not be

---

[8]  This admission was never withdrawn.

[9]  The *Serra* opinion, and the parties' pleadings, frame the issue as GM having been ordered to produce vehicle allocation data.

permitted to challenge any aspect of Serra's expert report or opinion to the extent that such challenge is based in whole or in part on such expert's lack of knowledge regarding satellite dealerships during any month on or after January, 2001." (Doc. 132).

A.    Due process limitations on fines

A fine imposed as part of a sanctions Order will not be sustained on appeal "unless there is offered on the record both a justification for the sanction and an accounting by the [district] court." *Id.* at 1151, *quoting Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1453 (11th Cir. 1985). The May, 2005, Order failed to set forth the reasons justifying the monetary sanction and failed to provide an accounting of how the monetary sanction amount was calculated.

B.    Due process limitations on striking of defenses

The portion of  the May, 2005, Order that struck certain GM affirmative defenses was vacated by the Court of Appeals because those defenses were not "specifically related to the particular 'claim' which was at issue in the order to provide discovery". *Id.* at 1152, *quoting Ins. Co. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707, 102 S.Ct. 2099, 2107 (1982). The contempt and discovery order violated by GM involved GM's failure to produce satellite dealership information, while the defenses struck involved prior state court litigation

between the parties that GM says is preclusive, in whole or in part, of the claims and issues in this action.  Because there was a lack of relationship between the discovery abuse and the struck defenses, the striking of those defenses violated GM's due process rights.  *Id.*

### III.  **The Pending Sanctions Motion**

On May 9, 2006, Serra filed a Motion to Supplement its previously filed (Third) Motion for Sanctions.  (Doc. 218).  GM filed an Opposition to Serra's Motion to Supplement on May 11, 2006.  (Doc. 220).  On May 16, 2006, the mandate of the Court of Appeals opinion (released April 13, 2006) affirming in part, reversing in part, and remanding this court's May 20, 2005, sanctions Order against GM ("May, 2005, sanctions Order") was received in the Clerk's office. The Court deems and will treat both Serra's Motion to Supplement and GM's Opposition as timely filed on May 17, 2006, after the receipt of the mandate.

Serra's Motion to Supplement alleges newly discovered information (*i.e.*, discovered since the entry of the May, 2005 sanctions Order) that Serra says is relevant to the sanctions issues before the court on remand, and that the new information provides additional grounds for sanctions against GM.  GM opposed Serra's proposed supplemental submissions on the basis that the filing was procedurally improper and untimely, and that Serra's Motion was barred by law of

the case, *i.e.*, the opinion and remand order from the Eleventh Circuit on the May, 2005, sanctions Order, *supra*. Serra's Motion to Supplement was granted by margin Order entered July 7, 2006.

Serra's Supplemental Submission in Support of its Motion for Sanctions was filed July 17, 2006, together with supporting exhibits. (Docs. 227, 228, and 229). GM filed a Motion the next day, July 18, 2006, seeking leave to file a response brief to Serra's Supplemental Submission. (Doc. 230). A second margin Order, entered July 19, 2006, granted GM's Motion for leave to file a response brief on or before July 31, 2006. GM filed its Response Brief on July 31, 2006. (Doc. 231). GM's Response was accompanied by fifteen (15) Exhibits, totaling at least five hundred (500) pages, for which leave to file was neither sought nor granted. GM's filing also included a Counter-Motion for Sanctions as part of its response, for which leave to file was neither sought nor granted. *Id*. The court treats GM's filings as properly filed. Serra's Reply to GM's Response and Counter Motion for Sanctions was filed August 7, 2006. (Docs. 236 and 237). Like GM, Serra included exhibits, and those are also treated as properly filed.

For the sake of brevity, Serra's Supplemental Submission in Support of its Motion for Sanctions will be referred to hereafter as "Serra's Motion" or "the Motion." GM's Response Brief and Counter-Motion for Sanctions will be referred

to as "GM's Response" or "GM's sanctions motion", respectively.

### IV.   <u>Res Judicata & Law Of The Case: Sanctions, et al.</u>

The State Court Litigation

On April 6, 1998, Serra filed a complaint in state court against Leon Edwards, Edwards Chevrolet, NADA, and several representatives of GM.   The complaint alleged that the defendants had violated the Motor Vehicle Franchise Act (MVFA) under Alabama law.   *See Serra Chevrolet, Inc. v. Edwards Chevrolet, Inc.,* 850 So.2d 259, 261 (Ala.2002).   Serra contended that the defendants conspired to interfere with the relationship between Serra and GM and to restrict unlawfully the allocation of vehicles to Serra.   *See id.*   On October 18, 1998, GM filed a motion to intervene with both an answer to the complaint and a counterclaim against Serra for a declaratory judgment, *see id.* at 262, that GM could legally terminate the satellite agreement between GM and Serra.   After the trial court granted the motion to intervene, Serra amended its complaint to add GM as a defendant, and alleged, among other things, misallocation of vehicles in violation of the MVFA.   *See id.*

GM ultimately prevailed on both the complaint by Serra and the counterclaim.   With regard to the counterclaim, the trial **\*1141** court concluded that GM could lawfully terminate the satellite agreement. The Supreme Court of Alabama affirmed that decision without opinion. As for the complaint filed by Serra, although the jury returned a verdict in favor of Serra on its misallocation claim, the Supreme Court of Alabama reversed and held that the claim was barred by the statute of limitations.   *Id.*

*Serra*, 446 F. 3d at 1440-41.

At the initiation of this action, GM moved to dismiss Serra's Amended Complaint.   (Doc. 12).   The second basis for dismissal was *res judicata*.   As previously noted, Judge Blackburn denied GM's Motion by Order and Memorandum

Opinion entered March 31, 2003.  (Docs. 20 and 21).  The Memorandum opinion

found, *inter alia*, that Serra's ADDCA claim was not barred by *res judicata*, Doc. 20

at 6 - 10, because the claim did not accrue until September 12, 2001, after the entry

of judgment in the state court action, and also because the pertinent part of the state

court action, GM's declaratory judgment action against Serra, "did not resolve the

issues in the present action."  *Id*. at 9.[10]

In *Serra,* the Eleventh Circuit found that Serra made an admission on June 2,

2004, in its Opposition to GM's Motion to Dismiss Serra's TAC that limited its

misallocation claim to the period beginning April 16, 2001.  Review of that pleading,

Doc. 51, shows that the statement in question is probably found at page 5, where

Serra said that Serra's newly added AMVFA (TAC Count Two) claim was

"predicated on acts and omissions that did not occur until after the state court

litigation".  The Eleventh Circuit said this rendered irrelevant to the Sanctions Order

---

[10]  "[T[hat Chrysler Motors may have had grounds for lawful termination of the automobile dealership does not permit this court to set aside a jury verdict...ADDCA is not as concerned with what the parties did as it is concerned with why they did it."  *York Chrysler-Plymouth, Inc. v. Chrysler Credit Corp*., 447 F.2d 786, 791-92 (5th Cir. 1971).  GM's Declaratory Judgment sought, and Judge Hanes ruled, that under the terms of its Agreement, GM had the right to terminate Serra's satellite dealership.  That does not foreclose Serra from asserting, as it has, that GM terminated Serra's satellite dealership after the repeated urging of Leon Edwards, who was president of NADA for a time and thereby in regular contact with GM personnel, and whose Chevrolet store was a chief competitor of Serra. Nor does it foreclose Serra from arguing that GM's termination was retaliation because Serra refused to drop the state court action.

any allocation data from January 1, 2001 through April 16, 2001.[11]

As a matter of law of the case, specifically the imposition of sanctions, this court is bound by the Eleventh Circuit's ruling.  As to allocation data from January 1, 2001 through April 16, 2001, any further consideration of sanctions is foreclosed by *Serra*.  Whether that same data has relevance to issues not litigated or decided in *Serra* is a separate and independent issue.  As previously noted, after GM's appeal was taken from the May, 2005, Sanctions Order, both Serra's and GM's experts gave testimony based in part on vehicles delivered in 2000.  GM's allocation expert, Tim Jones, testified that allocation data for the year 2000 would be required in order to properly analyze 2001 allocations.  Thus, while the January to April 16, 2001, data was irrelevant to imposition of sanctions on GM, and will stay irrelevant to any further consideration of sanctions, that data has significance and relevance separate and independent from sanctions.

GM's assertion that *Serra* ruled that any vehicle allocation preceding April of 2001 was irrelevant for all purposes sweeps too broadly.  The issue before the court in *Serra* was the relevance of that data to an award of sanctions for failing to produce

---

[11]   As discussed *infra*, the Court of Appeals accepted GM's appellate argument that Serra's statement, Doc. 51, p.7 "after the state court litigation" meant "the end of the state court litigation", April 16, 2001.  Appellant's Brief at 14n.6.  GM 's appellate filings did not explain its contrary, and earlier, admission that discovery was relevant for the time period commencing October 30, 1998, the date GM filed its Declaratory Judgment intervention in the state court action.

such data; *Serra* said the data was not relevant because of Serra's June 2, 2004, (Opposition to GM Motion to Dismiss, Doc. 51) admission.  There is nothing in *Serra* indicating the Court of Appeals knew GM had, could produce, was producing, or had produced, data, albeit data not *called* "vehicle allocation data," showing what vehicles were delivered to Birmingham area Chevrolet dealerships for all of 2000 and 2001, nor is there any indication that the Court in *Serra* meant to foreclose discovery of such information for other, non-sanctions, purposes, particularly where, as here, the availability of the information and its use by both sides' experts occurred <u>after</u> the sanctions Order, and after the appeal of the sanctions Order.  It's not absolutely clear from the record before me, but some of this vehicle delivery data[12] production appears to have taken place after *Serra* was under submission in the Court of Appeals awaiting an opinion.

In my analysis of the law of law of the case, I am guided by the Eleventh Circuit's analysis: law of the case is not an inexorable command, and new evidence is one exception to its application.  *U.S. v. Escobar-Urrego*, 110 F.3d 1556, 1561 (11th Cir. 1997), *quoting White v. Murtha*, 377 F2d 428, 431-32 (5th Cir. 1967) (footnotes omitted).[13]  Other exceptions are a change in the law, not applicable here,

---

[12] Which, as already noted, reveals vehicle allocation.

[13] Decisions of the Fifth Circuit made on or before September, 30, 1981, the day before the Fifth Circuit was split into the Fifth and Eleventh Circuits, are binding precedent in the

or a case where the earlier decision was clearly erroneous and would work a manifest

injustice, an exception I do not believe it is necessary to reach.

## V. <u>Discussion Of Serra's Motion</u>

1.      In *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 127 F.R.D. 224 (S.D.

Fla. 1989) ("*BankAtlantic*"), *aff'd* 12 F.3d 1045 (11th Cir. 1994), the district court

faced an analogous set of circumstances: BankAtlantic had moved for sanctions

against Blythe Eastman Paine Webber, Inc. ("Paine Webber"), including the striking

of Paine Webber's pleadings and the entry of default against Paine Webber, on the

basis that Paine Webber had concealed damaging evidence in defiance of a prior

court order.[14]  127 F.R.D. at 225.

> The *BankAtlantic* court described its task thus:

> The Court is therefore faced with a delicate task. Our mission is to
> preserve the integrity of the discovery process while protecting
> Defendant's right to a full and fair trial on the merits. These important
> values sometimes conflict. When presented with such a case, the Court
> must balance the competing interests to reach a fair result.

*Id*.

> Like *BankAtlantic*, this court faced, in 2005, and faces newly documented

assertions now, that a defendant, here GM, failed to produce information after being

──────────────

Eleventh Circuit.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

   [14]  Serra has previously sought entry of default against GM as one possible sanction.  The
court declined to do so.

ordered to do so. However, unlike the situation before the *BankAtlantic* district court in 1989, here it is law of the case that GM failed to produce satellite dealership information. Further, the Eleventh Circuit has ruled, and this, too, is law of the case, that "[I]t was not an abuse of discretion for the district court to conclude that the failure of GM to produce documents about satellite dealerships was due to contumacy rather than good faith misinterpretation." *Serra, supra*, 446 F.3d at 1150.[15]

2.      The claims in Serra's Motion, and the evidentiary submissions that accompany it, can be summarized as follows[16]:

> A.      The testimony of GM's designated representative, William Middlekauf, at the May 16, 2005, show cause hearing, that there had never been a satellite operation in Hawaii, was at best misleading, and at worst, categorically false. *See* Exhibits B. and C. to the Motion.

> B.      GM failed to produce, until after Serra was in the process of obtaining the information from third parties, information that related to Chevrolet File B data. Specifically, GM represented to Serra and the court that File B data, which is the weekly new retail Chevrolet

---

[15]  Black's Law Dictionary (8th Ed. 2004) defines "contumacy" thus: "Contempt of court; the refusal of a person to follow a court's order or direction"; "contumacious conduct" is defined as "[A] willful disobedience of a court order". *Id*.

[16]  The court is not making findings of fact when it sets out Serra's contentions, nor is it making findings of fact when discussing those contentions. That is for another day. The court does find, and its analysis assumes, unless the context indicates otherwise, that Serra's filing and submissions have made at least a *prima facie* showing that the claims in its Motion have substance, and that GM's filing and submissions have not successfully rebutted that *prima facie* showing.

allocation data applicable to Birmingham MDA Chevrolet dealers, was not saved prior to November, 2001.  After the May, 2005, sanctions Order, GM advised Serra that it had and would produce data showing the number and model of new Chevrolets supplied to Birmingham MDA dealers from January 1, 2000 forward.  According to Serra, GM explained the discrepancy by saying "shipment" data is not the same as "allocation" data.  Serra says this was information requested in production, specifically the vehicles received by (and thus necessarily "shipped" to) each dealer from 2000 forward.  Serra Motion at 9.

The significance of the File B data is two-fold: first, it influenced this court's ruling on May 20, 2005, because the court accepted GM's representation that it had no such data.  I find the "shipment" versus "allocation" argument to be a distinction without a difference; Serra was entitled to discover information about the vehicles received by other Birmingham dealers in order to compare it with the vehicles Serra received.  The shipment data revealed that information and was responsive to Serra's discovery request and to Judge Proctor's January 28, 2004, Order that directed discovery to go forward from the time period January 1, 2001, forward.

The second significant point is that the Court of Appeals thought the matter worth mentioning:

> "Second, the court addressed the allocation data.  The court found that the failure of GM to retain File B, or weekly allocation, data, before November 7, 2001, the date on which GM first began retaining such data, was not discovery abuse".  446 F.3d at 1145.

Whether the appellate analysis would have been different had the Eleventh Circuit

known that GM in fact retained but did not produce File B data, the court cannot say. The court does say that, as to the <u>discovery</u> disputes in this court (as opposed to <u>sanctions</u>), it matters.  I do not read *Serra* as saying, for all purposes and forever, that the matter of pre-June 2001 vehicle allocation data was, and always will be, irrelevant. *Escobar, supra; White, supra*.  The Court of Appeals ruled on the record before it.  Neither party put before the Court of Appeals for decision, in the Briefs or in the 11th Circuit R.30-1 <u>Record Excerpts</u>, the relevancy of pre-June 2001 GM data showing which Birmingham Chevrolet dealers received which (and how many) Chevrolet vehicles to Serra's ability to prove its claims in the TAC.  The issue was whether the record supported the sanctions imposed in the Sanctions Order, and the Court of Appeals ruled it did not.   The record as it now stands clearly makes such information relevant: both GM's and Serra's experts have said that knowing who got what in 2000 is relevant to assessing whether there was a misallocation to Serra in 2001.  The record also now reflects that GM had such information, it just wasn't called File A or File B data.  The record now shows that GM had, <u>for all of 2000</u>, shipment data showing which dealers received which Chevrolet vehicles for 2000. For purposes of relevancy, it doesn't matter to me what GM called the data, what matters is whether or not GM had such data and Serra says that GM did have such data under its control (by contract with EDS), but it never bothered to ask EDS for

the data.

> C.    GM failed to produce, until after Serra was in the process of obtaining the information from third parties, information that related to Chevrolet File A, or monthly allocation, data.  Specifically, GM has represented to this court and argued to the Court of Appeals that it could not produce File A data from January 1, 2001 - June 1, 2001 because the data had been destroyed. Thereafter, Serra issued a subpoena to Electronic Data Systems ("EDS"), a large systems information management company founded by H. Ross Perot.  EDS was formerly owned by GM, and GM contracts with EDS to maintain, *inter alia,* GM's allocation data.  Following issuance of the EDS subpoena, GM contacted Serra and said the January 1, 2001 - June 1, 2001 File A data was available.  According to Serra, the January 1, 2001 - June 1, 2001 File A data was at all times available from EDS, and the reason it wasn't produced was that GM did not request data from EDS that covered the period January 2001-May 2001.

As to File A data, the Court of Appeals accepted GM's representation and appears

to have relied on it:

> "On August 27, 2004, the district court ordered GM to produce the allocation data for all Birmingham dealers from January 2001 forward, but under the retention policy of GM, the data from January 2001 until June 2001 regarding other Chevrolet dealers had been destroyed.  When ordered to produce the data on August 27, 2004, GM complied and produced all that it had-allocation data from June 2001 forward.  GM could not produce what it did not possess. . .the district court abused its discretion when it held GM in civil contempt and imposed sanctions for the failure by GM to obey the order of the district court to produce documents GM did not possess. *See Pesaplatic, C.A.*, 799 F.2d at 1520 ('A party held in contempt may defend his failure to obey a court's order on the grounds that he was unable to comply.')." *Serra, supra*, 446 F.3d at 1148-1149.

My review of Serra's requests for production reveals, and the August 30, 2004,

Order contemplated, production of documents that, if not in GM's direct possession, were under GM's control.  The EDS data was under GM's control.  To obtain it, all GM had to do was ask.  Serra asserts GM did not ask.

> D.    GM's failure to timely produce the File A, File B, and shipment data meant that Serra's expert, Technical Associates, Inc. ("TAI") did not have the information it needed when it analyzed the data produced by GM and opined on the issue of misallocation.  Specifically, Serra says that the information not produced would have shown what vehicles were new "retail" Chevrolets from those vehicles that were new "fleet" Chevrolets.  Serra says GM's expert, Urban Science Applications, Inc. ("USAI") criticizes TAI's analysis as fatally flawed because of its failure to break out the retail vehicles from the fleet vehicles.  Serra also says that USAI testified that TAI did not have this information and that USAI had to request the information from GM's new vehicle allocation representative, Tim Jones, who provided USAI with the supplemental information (retail vs. fleet) that USAI required for its analysis.  Serra also says that GM did not advise it or TAI when it provided this supplementary information to USAI for its use in analyzing the allocation of vehicles and TAI's analysis of the allocation of vehicles.  Serra Motion at 14-15 (exhibit citations omitted, see n.3, *supra*).

3.    Serra's Motion claims it has been materially prejudiced by GM's discovery misconduct.  It asserts that substantial amounts of time and money have been expended in having TAI evaluate GM's inadequate and piecemeal production, in having to continually demand that GM fully and accurately respond to discovery requests, and in having to come before the court on repeated occasions in efforts to obtain the requested discovery and remedy GM's failure to comply with discovery

requests and district court orders.

## VI.  Discussion Of GM'S Opposition And Response

1.      In its Opposition to Serra's Motion to Supplement, GM, in addition to the

timeliness and procedural issues resolved in I., above, asserts that Serra's Motion is

barred by the law of the case and the Eleventh Circuit's remand Order.  The court is

not persuaded.

First, there remain, at this late stage of the litigation, after discovery has closed

and GM's summary judgment motion has been filed, what appear to be substantial

issues about whether GM has complied with its discovery obligations to Serra and

its obligations under the orders issued by Judge Proctor and me.  Second, any law of

the case, if applicable, would have been based on the facts known to this court and

the Eleventh Circuit and, if GM did not produce information that should have been

produced, then the law of the case would have been obtained, at least in part, by

violations of GM's discovery obligations to Serra and the court and possibly by

misrepresentations by GM to this court and to the Eleventh Circuit.  If that should

turn out to be the case, the court would enter appropriate remedial order(s).[17]

Further, the Court of Appeals was ruling on what was before it, and to the extent that

discovery issues and facts were not available at the time it ruled, or to the extent that

---

[17]  No such finding is being made in this Order.

the Eleventh Circuit relied on "facts" that were inaccurate or incomplete, I believe the Eleventh Circuit would expect this court to take appropriate action and enter appropriate orders based on a complete and accurate record.

2.    GM's Opposition to Serra's Motion to Supplement said this court should follow the two "guideposts" provided by the Eleventh Circuit.  The Court of Appeals said one appropriate consideration was the costs to this court of the numerous related motions, hearings, and orders.  446 F.3d at 1152.  Second, the Eleventh Circuit said that this court may also find that the fine is better deemed costs to be paid in full or in part to Serra or its attorneys for the expenses incurred in compelling the discovery.  *Id*.; *see also Carlucci, supra*, 775 F.2d at 1454.

This court is very mindful of what the Eleventh Circuit held, and what it suggested, and has already entered an Order vacating the sanctions whose imposition was reversed by the Court of Appeals.  The court intends to implement the remand fully and faithfully.  However, it does not agree with GM that the only issue implicated by Serra's Motion relates to Serra's expenses, and that the remand leaves no room for any other information to be brought before the court.  *Serra*'s holdings do not say that.  Further, to follow such a course of action would be inconsistent with the court's duty to preserve the integrity of the discovery process while also protecting the right of both parties to have a fair trial.  *See BankAtlantic, supra*.  A

fair trial is an informed trial, at least it is when, as here, a litigant (Serra) has made appropriate efforts to become informed.[18]  If GM continued to withhold information that Serra had requested, or that the court had ordered produced, then it would be wrong to permit GM to take advantage of its misconduct at any stage of the proceedings in this court, be it discovery, summary judgment, or trial.

At this point, what the court has are questions about whether the representations made and testimony taken last May were accurate and complete, and whether there has been full and complete compliance with the discovery orders issued by two judges of this Court.  Until these questions are answered, the integrity of the fact finding process, and the rights and obligations of the parties under the Federal Rules of Civil Procedure, and their due process rights, cannot be sufficiently determined.[19]

---

[18]  Based on the record as it now stands, it appears that Serra made more than appropriate discovery requests to obtain information from GM about Chevrolet vehicle allocation to the various Birmingham dealers during the relevant time periods and that GM repeatedly refused to produce responsive data or did so only after Serra was in the process of obtaining the data from third parties like EDS or other Birmingham area Chevrolet dealers.

[19]  I express no opinion on whether GM was candid with the Eleventh Circuit regarding its discovery responses, nor do I imply it was not.  I do note that GM's argument, accepted by the Eleventh Circuit, that the relevant date in the state court action was April 24, 2001, "the date judgment was entered", is only accurate as to Serra's counterclaim against GM in the state court litigation.  As to the satellite issues, Judge Hanes ruled on October 20, 2000, that GM was entitled to terminate the Serra Satellite Agreement "effective October 31, 2000 in accordance with the terms of the agreement".  (Doc. 8, p. 21). Judge Hanes certified that ruling for appeal under A.R.Civ.P. 54(b), and it was affirmed on appeal.  Serra's Application for Rehearing was denied by the Alabama Supreme Court on August 31, 2001.  Doc. 8 page 23 (Ex. C to Doc. 8)

## VII.  **RULINGS ON SERRA AND GM MOTIONS**

For these reasons, the court pretermits, or defers, any further ruling on sanctions other than those contained herein, and in particular defers determination of appropriate sanctions to be imposed on GM for its contempt regarding the satellite data.  And, rather than engage in another set of hearings and arguments about what was produced when, or why it didn't have to be produced because it wasn't properly requested or  because Serra did not use the correct words or correct GM terminology, or the information wasn't properly ordered to be produced, and what the effect of such data, either that has now been produced or which may be produced hereafter, will have on the matters at issue between Serra and GM, I think the better course of action is to deal with the information issues on their merits and later decide what further sanctions, if any, should be imposed for the manner in which that information was produced.  Accordingly, it is **ORDERED** as follows:

1.     Serra's Motion for Sanctions (Doc. 218) will be treated, in part as a motion to compel and extend discovery.  Because the record now clearly indicates the relevance to disputed issues in the action of the information obtained by Serra since April 1, 2005, the filing date of Serra's Motion for Sanctions that resulted in the May, 2005, Sanctions Order, Serra's experts will be permitted to furnish new or updated

---

(Astorga termination ltr to Serra).

27

reports or opinions on issues relating to regarding satellite dealerships (including but not limited to Serra's satellite termination) commencing three (3) years before September 12, 2001, the date Serra's cause of action under the ADDCA accrued (Doc. 8, p. 23), and, as to vehicle allocations, starting any month on or after October 30, 1998, the date of GM's intervention and filing of its Declaratory Judgment action in the state court action, the date GM first said was relevant to discovery in this action. (Doc. 33). The court cautions both parties that just because discovery can be had does not mean it should be had. As a hypothetical example, if Serra's experts say that GM satellite or vehicle allocation data information prior to 2000 is unnecessary, and that information does not have separate and independent relevance to disputed facts, then I would expect the discovery to be shortened accordingly. The same is true for GM: if something happened prior to 2001, for example, but that information does not have separate and independent relevance to disputed facts, then I would expect the discovery to be shortened accordingly.

2.    For the same reasons, GM is to produce forthwith if not already produced, and no later than October 30, 2006, all vehicle shipment data and any other data (including metadata), regardless of the form or medium of preservation and including data preserved, stored, or kept by third parties pursuant to written or oral agreements with GM including but not limited to EDS and including any kept by its

in-house or outside counsel, unless work product or attorney-client privileged, showing what Chevrolet vehicles were delivered to any and all Birmingham metropolitan area Chevrolet dealers, or the Birmingham MDA, whichever geographic area is larger, for the years 1999, 2000, 2001, and 2002. The data will be produced at Serra's counsel's office in Birmingham, Alabama. The cost of production will be borne by GM. Failure to produce such data may result in the imposition of sanctions, including but not limited to, the striking of GM's pleadings regarding vehicle allocation and the entry of default judgment against GM and in favor of Serra on any or all claims where Serra alleges, as part of its claim, that GM's Chevrolet vehicle allocations in those years damaged Serra, and GM is put on notice accordingly. The last two sentences of 2., above, dealing with unnecessary discovery are incorporated by reference as though fully set forth here.

3.    Serra's experts will be allowed until November 30, 2006, to supplement their reports or opinions using the data produced pursuant to 1. & 2., above, or any other data which they did not have (*e.g.*, fleet sales data versus retails sales data) prior to the date of previous reports and opinions expressed. The court reserves, until after December 1, 2006, the question of whether GM's experts will be permitted to supplement their reports, or their trial testimony, to rebut any new or different opinions expressed by Serra's experts as a result of the data produced in response to

29

this Order.

4.      Serra will submit, no later than December 1, 2006, a verified and detailed

list of its expenses, including expert and attorneys' fees, incurred through November

30, 2006, with respect to discovery of satellite data.  Serra will prepare, but not file,

a detailed list of similar expenses relating to vehicle allocation data (which, as already

noted, includes vehicle shipment data) for possible future consideration should it

become appropriate.

5.      Further consideration of Serra's motion for sanctions is deferred until

after December 1, 2006.

6.      Serra's time to respond to GM's Motion for Summary Judgment is

reopened until December 15, 2006, provided that any additional brief by Serra will

be a replacement brief and executive summary (replacing Docs. 196 and 197), not a

supplemental brief and executive summary.  Serra shall not refile its evidentiary

submissions, but may supplement them.  GM's time to reply shall be the standard

time as set out in this court's standing order regarding summary judgment motions

and shall also be a replacement of, not a supplementation to, its current reply and

executive summary (Docs. 222 and 224).[20]

---

[20] Executive summaries shall be no more than five (5) pages single spaced, not counting the case style, signature lines, or certificates of service.  Additional exhibits should be filed sparingly; both sides have filed far too many irrelevant exhibits "supporting" their positions on

7.     GM's Counter-Motion for Sanctions (Doc. 231) is **DENIED**.  Serra's filings are within the bounds of proper advocacy under the Federal Rules of Civil Procedure, and the court finds that Serra did not mislead this court nor does it appear Serra misled the Eleventh Circuit[21].  The issue of "what dealer(s) received which vehicles" remains relevant to Serra's claims, and *Serra*, for the reasons already discussed, did not foreclose that inquiry for all claims and purposes.

**DONE AND ENTERED** this 25th day of September, 2006.

VIRGINIA EMERSON HOPKINS
United States District Judge

---

summary judgment and sanctions.  This must stop.  What also has to stop is the tone of the pleadings.  This started in the state court action: Judge Hanes had to correct the record in response to assertions made by GM's counsel in GM's Rule 59 Motion for Judgment / New Trial, and he commented on that filing's tone as well as its content.  (Doc. 8, Ex. D, p. 1, 5-6).  Serra and GM are represented by experienced counsel and, regardless of any ill will existing between their clients, counsel's duty is to maintain civility and professionalism, which includes refraining from making filings that, for lack of a better description, are shrill and accusatory.  Such filings are singularly unpersuasive; the reader is distracted by the tone to the detriment of the argument.

[21]  Of course here, as with GM's admission that the relevant time period for discovery was the filing of GM's Declaratory Judgment intervention in the state court action (October 30, 1998), it is for the Eleventh Circuit, should the issue come before it, to determine if either of the parties failed to apprise the Court of Appeals of all relevant facts and proceedings bearing on the discovery disputes and, if so, whether that failure was negligent or intentional.

31