FILED
2006 Oct-10 AM 09:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SERRA CHEVROLET, INC., ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION NO. |
| ) | |
| v. ) | CV-01-02682-VEH |
| ) | |
| GENERAL MOTORS ) | |
| CORPORATION, ) | |
| ) | |
| Defendant. | |

## DEFENDANT'S MOTION TO RECONSIDER OPINION AND ORDER ON PLAINTIFF'S RENEWED MOTION FOR SANCTIONS, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND DEFENDANT'S MOTION FOR COUNTER-SANCTIONS

Defendant General Motors Corporation ("GM") hereby moves the Court to reconsider its September 25, 2006 Opinion and Order on Plaintiff's Renewed Motion for Sanctions, Defendant's Motion for Summary Judgment, and Defendant's Motion for Counter-Sanctions (Doc. 242) (hereinafter, the "Order"). As grounds for this motion, GM states as follows:

GM respectfully believes that the Court's Order re-opening discovery and summary judgment briefing is not supported by the record before the Court and runs counter to the rulings of the Eleventh Circuit. Therefore, GM respectfully requests that the Court reconsider its Order, given the following:

## I. GM Did Not Admit That Vehicle Misallocation Discovery Should Go Back to October 30, 1998.

In several places throughout the Order, the Court says that GM made an "admission" in Document No. 33, a joint status report, regarding the relevant time period for discovery. See Order, pp. 3, 4, 9, 27-28. The Court relies on this alleged "admission" to re-open discovery on *misallocation* and to enlarge the date of relevant discovery from the previously ordered date of January 1, 2001. The Joint Status Report at issue is dated November 17, 2003. At the time Document No. 33 was created, there was no misallocation claim in the case. In fact, the misallocation claim was not added until the Third Amended Complaint was filed on April 12, 2004 – some five months after Document No. 33 was created. Document No. 33 was filed when the only claim made by Plaintiff was its *ADDCA claim* for alleged wrongful termination of the Gardendale sales satellite agreement. Thus, GM cannot have "admitted" to any relevant time frame for discovery in Document No. 33 on the misallocation claim since it was not even pled at that point.

The Joint Status Report states GM's position with regard to <u>satellite</u> related discovery – not misallocation. GM's position on discovery concerning Plaintiff's satellite claim was that it should go back to October 30, 1998 (the date on which GM filed its state court declaratory judgment action to terminate the sales satellite agreement), which is when GM argued that the claim accrued.

Once the misallocation claim was filed on April 12, 2004, GM's consistent position on misallocation discovery has been that any misallocation discovery or data prior to April 2001 – the date of the state court trial – should not be conducted and was irrelevant in this case.[1]  In fact, when the Gardendale satellite claim was the only claim in the case, it was GM's position that there should be *no* discovery on misallocation.  Compare Doc. 35, Ex. A with Doc. 35, Ex. B.  Despite asserting only the Gardendale satellite claim in its initial complaint, Plaintiff took the position that it needed discovery in numerous areas, including alleged misallocation, and the Court ultimately sided with Plaintiff on this issue. Thus, as requested by the *Plaintiff*, the Court allowed discovery on misallocation "since 2001." Doc. 35, Ex. A.

Thus, GM has never "admitted" that misallocation discovery should go back to October 30, 1998.

## II.  The Evidence Cited by the Court Is Not "New" As It Was Presented to The Eleventh Circuit And, In Any Event, Does Not Change the Fact that Plaintiff Admitted its Misallocation Claim Arose After the Trial of the State Court Litigation to Avoid Preclusion on Res Judicata Grounds

---

[1] As discussed in part II, supra, the Eleventh Circuit agreed with GM's position and held that misallocation discovery prior to April 16, 2001 was irrelevant. Serra Chevrolet, Inc. v. General Motors Corp., 446 F.3d 1137, 1148 (11th Cir. 2006).

In its Order, the Court cited to shipment and delivery data which was produced after the Court's May 2005 sanctions order[2] and then appears to say that the Eleventh Circuit's conclusion that the Plaintiff's admission that its misallocation claim is limited to events after the state court action is not the law of case because of this "new" evidence. However, GM respectfully submits that this evidence is not "new" and cannot change the effect of the Eleventh Circuit's order.

First, the Eleventh Circuit was aware of the existence of this data long before it issued its opinion. The Plaintiff cited to the production of this very data in its brief to the Eleventh Circuit and argued it as a reason to uphold the very sanctions that were reversed. Appellee's Brief pp. 52-54.

Second, the Court's Order also concluded that the Eleventh Circuit's finding—that Serra's misallocation claim is limited to events after April 2001—is applicable solely to the question of whether GM can be sanctioned for the alleged failure to produce allocation data for the time period from January 1, 2001 to April 16, 2001. GM respectfully submits that the Eleventh Circuit's finding is binding outside the interpretation given to it by the Court.

---

[2] As addressed in prior filings, the first time GM learned Plaintiff wanted shipment and delivery data was when Plaintiff requested this data through subpoenas to the Birmingham Chevrolet dealers. GM volunteered to produce this data at that time in an effort to spare the Birmingham dealers the time and expense of the production and produced it well in advance of the close of discovery and in advance of the due date for plaintiff's expert reports.

As the Court will recall, GM moved to dismiss the claim for vehicle misallocation in the Third Amended Complaint based on res judicata, because Plaintiff's claim for damages based on vehicle misallocation previously was tried to a verdict in Alabama State Court in a trial which concluded on April 16, 2001. To avoid dismissal of its claim on this basis, the Plaintiff represented to the Court that "GM's acts and omissions *after the state court litigation* are the basis for its misallocation of vehicles claim herein." (Doc. No. 51, p. 7) (emphasis added). This admission caused the res judicata motion to be denied. Because Plaintiff's misallocation claim with respect to periods before April 2001 is precluded as a matter of law, as the Eleventh Circuit has held, discovery into alleged misallocation for all time periods prior to that date necessarily is irrelevant.

Moreover, at Tony Serra's deposition, Mr. Serra and his counsel admitted that Plaintiff was not seeking damages for anything that occurred prior to the trial of the state court action:

> Q: Okay. And so you are not claiming any damages for anything, then, that occurred prior to the ***trial*** of the State Court action?
>
> A: I don't believe I am.
>
> MR. BADDLEY: That's correct.

T. Serra depo., pp. 322-23 (emphasis added).

5

The foregoing statements are an acknowledgment by Plaintiff and his counsel that they were not making any claim for vehicle misallocation which arose before April 2001. Any claim prior to that date is legally barred by res judicata.

GM respectfully submits that the Eleventh Circuit's holding concerning this issue — that the statements made by the Plaintiff regarding when its misallocation claim arose rendered any misallocation data prior to April 16, 2001 irrelevant in this action – is the law of the case. The rationale for the Eleventh Circuit's finding is that the data prior to April 16, 2001 is irrelevant because the Plaintiff is legally barred from stating a claim for any alleged vehicle misallocation which occurred prior to April 16, 2001. Thus, the finding of the Eleventh Circuit means that all allocation data prior to April 16, 2001 is irrelevant for all purposes, including allowable discovery, and also means that any claim which arose prior to April 16, 2001 is barred. See Schiavo v. Schiavo, 403 F.3d 1289, 1291 (11th Cir. 2005) ("'Under the law-of-the-case doctrine, [the resolution of] an issue decided at one stage of a case is binding at later stages of the same case.' … The doctrine operates to preclude courts from revisiting issues that were decided explicitly or by necessary implication in a prior appeal." (internal citations omitted)).[3]

---

[3] The Order also seems to at least imply that because GM's experts analyzed data before April 2001, this somehow makes that time period relevant. This analysis was prompted by Plaintiff's expert improperly suggesting that Plaintiff had been damaged for "misallocation" based on events that occurred in 2000 with

There is nothing in the record which changes the res judicata effect of the state court trial on misallocation or the law of the case effect of the Eleventh Circuit's finding that the Plaintiff limited its misallocation claim to events occurring after April 16, 2001.[4]

### III. Shipment and Delivery Data are Different from File B Data, and the Eleventh Circuit was Aware that GM Produced This Data After It Produced the File B Data.

The Court implies that GM may have misled Plaintiff, the Court, and the Eleventh Circuit about the production of File B allocation data. From the outset, GM has stated that no File B data existed prior to November 2001. The Court has now apparently concluded that when GM produced shipment and delivery data in June 2005, GM produced what was essentially File B data it previously claimed it did not have. Order, pp. 20-21. The Court questions whether the Eleventh Circuit's analysis would have been different had it known that "GM in fact

---

respect to Edwards East. It thus became necessary for GM's experts to review data prior to 2001 to rebut this claim.

[4] As GM noted in its motion for summary judgment, under binding Eleventh Circuit precedent, the shipment and delivery data cited by this Court in its Order is irrelevant to the Plaintiff's claim for misallocation of vehicles, since the only relevant inquiry is whether Serra received all vehicles to which it was entitled. Cabriolet Porsche Audi, Inc. v. American Honda Motor Co., Inc., 773 F.2d 1193 (11th Cir. 1985) (holding that there can be no misallocation claim where the Plaintiff received the vehicles it was entitled to under the manufacturer's allocation system).

7

retained but did not produce File B data." Id. GM believes this portion of the Court's order is incorrect for two reasons.

First, even Plaintiff's own expert, Dr. Michael Ileo, recognizes that GM's "supplemental production" was not File B data at all. Rather, as he admits, and as GM has said repeatedly, GM's later production "differed significantly" from the available File B data that was previously requested and produced:

> The File B began with information in November of 2000.[5] And it did, indeed, have weekly placement in other data therein.
> ***The subsequent information that was produced differed significantly from what was contained in File B*** in the following respect: File B essentially mirrored the ordering, placement into production and expected delivery date, that entire process.
> The subsequent information that was made available designated when vehicles were actually delivered and in addition, that information, subsequent information, also designated the dates when MDA Chevrolet dealers actually delivered vehicles to end-users or customers; ***so that the subsequent information could not be characterized as an extension or a completion, if you will, of the File B data***.

Ileo Depo. pp. 69-70 (emphasis added). There is no dispute that File B data did not exist prior to November 2001.

Second, even Plaintiff's expert recognizes that the "shipment" data and "allocation" data are different and therefore this cannot be "a distinction without a

---

[5] Dr. Ileo misspoke. It is, in fact, undisputed that File B data did not exist prior to November, 2001.

8

difference." Rather, as Plaintiff's expert testified, these two types of data "differ[] significantly." In addition, Plaintiff's counsel's acknowledged to GM's expert Sharif Farhat that even he agrees that shipment data and allocation data are not the same:

> A: Well, I don't necessarily categorize the shipment data as allocation information. Shipment data was furnished to me as part of Dr. Ileo's analysis. And I did supplement that file, yes.
>
> Q: (By Mr. Baddley) All right. I have two questions: Number one, I think you are going to be surprised, ***but I think I agree with you***. Shipment data is not allocation data, is it?
>
> A: No sir.

Farhat depo., pp. 55-56 (emphasis added).

Given that every expert in this case, as well as Plaintiff's own counsel, recognize that the two types of data are different, GM respectfully asserts that there is a difference between shipment data and allocation data.

Finally, there is no reason or basis to speculate "how" the Eleventh Circuit would have ruled had it "known" about GM's production of the shipment data, because the Eleventh Circuit ***did know***. Plaintiff placed this information before the Eleventh Circuit when, in its Appellee's Brief, it cited to and discussed GM's "supplemental production" of shipment data as a basis on which the Eleventh Circuit should affirm the sanction which that Court ultimately reversed. Appellee's Brief pp. 52-54.

Indeed, in its Appellee's brief, Plaintiff informed the Eleventh Circuit that, after this Court's orders, GM produced shipment data for the time period beginning January 1, 2000. Id. Plaintiff argued to the Eleventh Circuit that "shipment data is clearly a component of GM's allocation data which had been sought by the Plaintiff."[6] Id. at 53. Plaintiff further claimed to the Eleventh Circuit that data going back to 2000 was relevant and "critical" because Edwards East took over Century Chevrolet in August 2000. Id. at 54. Thus, a suggestion that the Eleventh Circuit did not know this data was produced, or that Plaintiff never informed them of the alleged "relevance" of having data going back to 2000, is incorrect. Having heard these facts and arguments from Plaintiff, the Eleventh Circuit plainly ruled that misallocation data prior to April 2001 was "irrelevant."

## IV. The Court's Order Reopening Discovery and Summary Judgment Briefing is Not Warranted and Grants the Plaintiff Relief it Never Requested.

In its Order, the Court treated Plaintiff's motion as a motion to compel and ordered GM to produce additional information dating back to 1999. Further, the Court re-opened summary judgment briefing and allowed Plaintiff to revise its expert reports based on this data. GM submits that the Court's order goes beyond

---

[6] Plaintiff's position in its brief is clearly in contrast to the position taken by its expert and counsel in Mr. Farhat's deposition, supra p. 9.

any relief requested by the Plaintiff and the relief is not warranted by any "new evidence."

Although the Court treated Plaintiff's motion as a motion to compel, the Plaintiff does not argue that it does not have all the data relating to misallocation it requires. Rather, the Plaintiff asked this Court to sanction GM because of the alleged delay in the production. Indeed, the record is clear that the Plaintiff has received all information it says it needs on the misallocation claim.

For example, Plaintiff's expert, Dr. Ileo, testified at his deposition on November 21, 2005 – after the shipment data and delivery data at issue here had been produced – that he did not need to do any additional work to form his opinions in the case. Ileo Depo., p. 10. In fact, Dr. Ileo specifically testified that he had all the delivery, shipment and "File A" type data he needed to form his opinions:

> Q. So let me break this down. You have the delivery and shipment information that you want, correct?
>
> A. That's correct.
>
> Q. All right. You have the completed ordering information since November of either 2000 or 2001?
>
> A. That's correct.
>
> Q. . . . You have completed information in a similar format to what is File A for the time periods that you want, correct?

11

>A.  I can't agree with the "similar format." There are lots –
>
>Q.  I'm sorry. I didn't mean to say similar format. You have similar information to File A in a different format?
>
>A.  Yes.
>
>Q.  All right. And as to that similar information in a different format, you have the completed information you need, correct?
>
>A.  Yes.

Ileo Depo., p. 282-283.

The Plaintiff also apparently agreed that it had all the data it needed, as the Plaintiff did not file a Rule 56(f) affidavit stating that more information was needed to respond to GM's summary judgment. See Fed. R. Civ. P. 56(f).[7] If the Plaintiff lacked any necessary information, it surely would have brought this to the attention of the Court and asked the Court to compel production prior to responding to GM's motion for summary judgment. It did not do so. So, both the Plaintiff and Plaintiff's expert apparently agree that it already had – before the

---

[7] Fed. R. Civ. P. 56(f) states: "Should it appear from the affidavits of a party opposing motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

summary judgment briefing – all the information it needed in this case. No further discovery is needed.

Therefore, the Court's reopening of discovery and briefing, encompassing time frames which, until the Court's order, were never at issue in this case,[8] and encompassing the time period already litigated to a jury verdict in Alabama state court, is unwarranted.

## V. If the Court Allows the Re-Opening of Discovery, Expert Reports, and Summary Judgment Briefing, the Schedule Should be Amended.

Should the Court allow discovery, expert reports and summary judgment briefing to re-open as described in its Order, GM respectfully requests that the Court amend the schedule set forth in its Order. As it currently stands, Plaintiff's experts can supplement their previous reports by November 30, 2006, and Plaintiff can file a new response to GM's Motion for Summary Judgment by December 15, 2006. The Court has not yet decided whether GM's experts can submit rebuttal reports, and the Order does not give GM the opportunity to file a new Motion for Summary Judgment based on Plaintiff's new expert reports.

As an initial matter, if Plaintiff's experts do indeed file new reports, GM should be given the opportunity to both depose the experts with respect to any

---

[8] Additionally, as GM has previously noted, the Eleventh Circuit's opinion in this matter compels the conclusion that the earliest relevant period for misallocation discovery is April 16, 2001.

"new" report and file rebuttal expert reports should GM deem them necessary. Likewise, if GM submits rebuttal reports, Plaintiff should have the opportunity to depose GM's experts on these reports as well.

Furthermore, GM would respectfully show unto the Court that, pursuant to the Court's prior discovery order, GM has taken no misallocation discovery prior to the January 2001 time frame and specifically limited its questions of Plaintiff's representatives to periods after that date. If the Court expands misallocation discovery back to 1999, GM requests the option to re-depose Plaintiff's corporate representatives on the misallocation claim and request any supporting documents and data from Plaintiff.

With regard to summary judgment, GM further submits that any summary judgment briefing should be done after this latest round of discovery, if permitted, is complete. If Plaintiff's experts file new reports, GM requests the opportunity to file a new motion for summary judgment, with Plaintiff's response and GM's reply to follow. Indeed, the new expert reports could present different grounds for summary judgment, and GM asks that it be allowed to put these grounds before the Court in a new motion. As the Order currently stands, Plaintiff could be "responding" to arguments that GM has not yet made or to arguments which may have been rendered moot by a revised expert opinion.

Finally, the Court's schedule allows Plaintiff to submit its bill for costs associated with obtaining the additional satellite related documents. GM respectfully requests the opportunity to respond to this if GM deems a response is necessary.

## VI. <u>Conclusion</u>

Because the Record and the Eleventh Circuit's opinion show that the misallocation claim is barred and that discovery into the period prior to April 16, 2001 is irrelevant, GM asks the Court to reconsider its Order re-opening discovery into barred time periods and re-opening expert discovery and summary judgment briefing to allow Plaintiff to address this barred time period. GM respectfully believes that reopening discovery and briefing would be inconsistent with the mandate of the Eleventh Circuit.

Therefore, GM respectfully requests that this Court reconsider and withdraw its Order of September 25, 2006.

*/s/ Sanford G. Hooper*
One of the Attorneys for Defendant

OF COUNSEL:
Jere F. White, Jr. (WHI007)
Terrence W. McCarthy (MCC119)
Sanford G. Hooper (HOO033)
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.

The Clark Building
400 North 20th Street
Birmingham, Alabama  35203
(205) 581-0700
(205) 581-0799 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on October 10th, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Thomas E. Baddley, Jr., Esq. and Jeffrey P. Mauro, Esq.

_____
Of Counsel