FILED
 2006 Oct-27  PM 01:33
 U.S. DISTRICT COURT
     N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **SERRA CHEVROLET, INC.,** ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 2:01 cv-2682-VEH |
| ) | |
| **GENERAL MOTORS CORP.** ) | |
| Defendant. ) | |

**OPINION AND ORDER ON DEFENDANT'S MOTION TO RECONSIDER
OPINION ON PLAINTIFF'S RENEWED MOTION FOR SANCTIONS,
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND
DEFENDANT'S MOTION FOR COUNTER-SANCTIONS**

Defendant General Motors Corp. ("GM") filed, on October 10, 2006, a motion seeking reconsideration ("*Motion*; "the motion") of the Opinion and Order filed September 25, 2006 ("the September 25 Order"). The September 25 Order is document 242; the Motion to Reconsider is document 243. GM's Motion is granted in part and denied in part. Its arguments are discussed in the order presented in the motion.

**I.    GM did not admit that vehicle Misallocation Discovery Should Go Back to October 30, 1998.**

GM's Motion says it did not admit that vehicle misallocation discovery should go back to October 30, 1998. GM's reconsideration argument is that it made no admission that discovery should go back to April of 1998 as to vehicle misallocation

claims. GM points out that this action was an ADDCA[1] case until Serra filed its Third Amended Complaint ("TAC") on April 12, 2004.[2] GM says that it has consistently taken the position that discovery on vehicle misallocation prior to April 16, 2001, the date of the jury verdict in the state court action[3], is irrelevant and should not be conducted. *Motion* at 3.

GM is essentially correct: there was no separate or discrete vehicle misallocation claim pending in November of 2003.[4] GM's statement in Document 33 that the scope of discovery should go back to its state court action Declaratory Judgment action filed October 30, 1998 applied to the only claims pending, Serra's

---

[1] Automobile Dealers' Day in Court Act, 15 U.S.C. § 1221, *et seq*. ("ADDCA").

[2] The TAC added three (3) counts to the one-count Second Amended Complaint. TAC Count One, essentially a restating of the previous Complaints, alleged violations of the ADDCA, in particular GM's termination of Serra's Satellite Agreement. Count Two alleged violation of Alabama's Motor Vehicle Franchise Act, § 8-20-1 *et seq*., Code of Alabama, 1975 (as amended) ("MVFA"). In Count Three, Serra alleged that GM was negligent/wanton in assigning to Serra a sales area of responsibility that was too large geographically, and in failing to provide adequate assistance and support for that large sales area. Count Four alleged negligent/wanton supervision by GM.

[3] Jefferson County Circuit Court Case No. CV 98-2089-AJH, and the appeal taken from the judgment of the Circuit Court, *Serra Chevrolet, Inc. v. Edwards Chevrolet, Inc. / General Motors Corporation v. Serra Chevrolet Inc*., 850 So.2d 259 (Ala. 2002) ("*the state court action*")

[4] I qualify my agreement because, in paragraph 15. of the January 25, 2002 Amended Complaint and the March 31, 2003 (Second) Amended Complaint, Serra alleges a discriminatory GM vehicle allocation system strategy "to allocate vehicles in an arbitrary and/or discriminatory fashion among the Birmingham MDA dealers". (Document 23 at 4-5). Paragraph 15. goes on to say that as a result of that scheme, Edwards Chevrolet, Inc.'s sales increased dramatically while all the other Birmingham MDA Chevrolet dealers' sales fell, including Serra's.

ADDCA claims.

The vehicle misallocation claim in the TAC is Count Two, the MVFA claim, specifically 4c), which accuses GM of a vehicle allocation scheme which unduly favored Serra's chief competitor, Edwards Chevrolet, Inc. while simultaneously restricting Serra's allocation of new vehicles in violation of § 8-20-4(2) and § 8-20-4(3)(a), Code of Alabama, 1975 (as amended). Accordingly, the September 25 Order is amended to make explicit that, as to Serra's vehicle misallocation claims that GM violated Serra's rights in violation of Ala. Code § 8-20-4(2) and § 8-20-4(3)(a) (Count Two of the TAC), the scope of the claim and discovery about that claim is limited to events occurring after April 16, 2001.

I do not understand GM's motion to be saying that, as to Serra's ADDCA claims, it claims that discovery should not go back to October 30, 1998, or that its statement in Document 33 that discovery on Serra's ADDCA claims should go back to October 30, 1998, is withdrawn. And October 30, 1998 is an appropriate date because it encompasses the three (3) year period from the time that GM intervened in the state court action. Accordingly, the September 25 Order will be amended to make October 30, 1998, not September 12, 1998, the earliest date applicable to discovery concerning Serra's ADDCA claims.

II. **The Evidence Cited Is Not "New" As It Was Presented to the Eleventh Circuit And, In Any Event, Does Not Change the fact that Serra Admitted its Misallocation Claim Arose After the Trial of the State Court Action to Avoid Preclusion on Res Judicata Grounds**

III. **Shipment and Delivery Data are Different from File B Data, and the Eleventh Circuit was Aware that GM Produced This Data After It Produced the File B Data.**

These two arguments are intertwined because of the facts relating to what data GM produced and when it produced it. They will be discussed together.

GM's first point is that the Eleventh Circuit was aware of the existence of, and GM's production of, shipment data. GM says, and for this purpose I accept, that shipment data is not the same as File A data (monthly vehicle shipments) or File B data (weekly vehicle shipments).[5]

GM's second point is that the state court action is *res judicata* as to misallocation claims before April 16, 2001, barred by *Serra*:

> The rationale for the Eleventh Circuit's finding is that the data prior to April 16, 2001 is irrelevant because the plaintiff is legally barred from stating a claim for any alleged vehicle misallocation which occurred prior to April 16, 2001. Thus, the finding of the Eleventh Circuit means that all allocation data prior to April 16, 2001 **is irrelevant for all purposes, including allowable discovery, and also means that any claim which arose prior to April 16, 2001 is barred.** See Schiavo v. Schiavo, 403 F.3d 1289, 1291 (11th Cir. 2005) ("Under the law-of-the-case doctrine, [the resolution of] an issue decided at one stage of a case

---

[5] As discussed in Exhibit A, *infra,* File A and File B are not terms used by GM's data storage personnel, *see EDS Deposition*, Document 229, at 32-33.

>is binding at later stages of the same case'...The doctrine operates to preclude courts from revisiting issues that were decided explicitly or necessary implication in a prior appeal'" (internal citations omitted)).

*Motion* at page 6. (Emphasis supplied).

I think GM misunderstands the September 25 Order. Serra will not be permitted to use any pre-April 16, 2001 allocation data to support its misallocation claim (Count Two). That data is irrelevant to Serra's misallocation claim. And, since GM says it produced all the allocation data (data going back years before) at the deposition of Electronic Data System ("EDS") in September of 2005, the vehicle allocation data discovery issue appears to be resolved. To the extent GM has produced the EDS data that the September 25 Order, as amended herein, directs be produced, GM need not do so again.

The data I have ordered GM to produce is relevant to or may lead to the discovery of relevant evidence as to Serra's ADDCA claims. The ADDCA is concerned with why a manufacturer did what it did. September 25 Order, p.15 n.19; *see also* Judge Blackburn's March 31, 2003, Memorandum Opinion (Doc. 30); and *York Chrysler-Plymouth, Inc. v. Chrysler Credit Corp.*, 447 F.2d 786, 791-92 (5th Cir. 1971) ("*York*").

>That certain specific conduct has been held not to constitute a violation of the Act in certain cases does not lead to the conclusion that such conduct would not violate the Act in the setting of another case. The actions of the manufacturer must be considered under the circumstances

>  arising in each particular case. The entire course of dealing between manufacturer and dealer may be considered and it may then be concluded by the jury that the total conduct was violative of the Act.

*Id*. at 793. (Footnote omitted).

The court has seen, perhaps in one of the summary judgment pleadings, where GM has said that *York* is either not good law, or should be overruled.  I am bound by precedent, and *York* remains the law of this Circuit.[6]  Serra has long said, and remains free to argue at summary judgment and (depending on what claims remain after summary judgment) at trial, *inter alia*, that the reason GM terminated the Serra Satellite Agreement was to curry favor with, or as a response to pressure from, Leon Edwards, a competitor, and that the termination was in that respect wrongful.  I see no reason why Serra could not support its theory by showing that, as another means of currying favor with Edwards, or in responding to pressure from Edwards to give Edwards what it wanted, GM allocated Edwards more or better selling vehicles than it gave Serra, or that GM allocated Edwards extra or better selling vehicles when Edwards East was opened.  Serra's ADDCA  claims put these relationships and transactions into play.  So "who got what" is not just information relating to Count Two vehicle misallocation claims, it is or may lead to admissible evidence supporting

---

[6]  In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

Serra's ADDCA claims. And just because this discovery may not supply all of the required elements of an ADDCA claim, *e.g.*, it may not prove a threat to or coercion of Serra by GM, it may be part of a body of evidence that, taken as a whole, makes out a *prima facie* ADDCA claim. Discovery on an issue need not reveal evidence of all the elements of a claim for the discovery to be permissible. If the law did not permit the examination of "[T]he entire course of dealing between manufacturer and dealer", *York*, *supra*, GM's argument would carry substantially more weight.

Also I, like Judge Proctor, am concerned about imposing limitations on Serra's discovery in its ADDCA claims in light of the Third Circuit's reversal of the district court in *Arnold Pontiac-GMC, Inc. v. General Motors Corp.*, 786 F.2d 564 3rd Cir. 1986), for erroneously denying the plaintiff full discovery on its ADDCA claim.

Finally, since GM identified October 30, 1998, as the relevant date for ADDCA discovery, and has not sought reconsideration or modification with regard to that position, imposing such limitations on ADDCA discovery could also implicate estoppel, waiver, or law of the case concerns, which could lead to reversal of any judgment entered in GM's favor.

On the issue of whether or not the data disclosed by GM in September, 2005, as part of the EDS deposition could be "new evidence" and therefore an exception to law of the case, that part of the September 25 Order will be withdrawn as moot. A

review of the EDS deposition ("*EDS*") clearly shows that the data GM produced in September of 2005 was available from EDS all along, but that GM never asked EDS if EDS had it until Serra issued a subpoena to EDS in August, 2005.[7]  Serra mentioned the September, 2005, data production in its Appellee's Brief in the appeal of the May, 2005 Sanctions Order, *Serra Chevrolet, Inc. v. General Motors Corp.*, 446 F.3d 1137 (11th Cir. 2006) ("*Serra*"), stating the September, 2005, GM data production  was not part of the record.  Serra may or may not be correct.  I am unwilling, until I have to, to try to discern whether that Serra's reference, without more, took the September, 2005, data production out of the category of "new evidence" on the one hand, or whether Serra's reference would fall under the category of a passing reference to an issue in a brief was that was insufficient to properly raise that issue.  *See Greenbriar, Ltd. v. City of Alabaster,* 881 F.2d 1570, 1573 n. 6 (11th Cir.1989) (holding that issues not argued on appeal are deemed waived, and that a passing reference to an issue in a brief was insufficient to properly raise that issue).  I have not found, nor have the parties cited me to, any Eleventh Circuit authority that speaks directly to this point, and if it is a question of first impression, this court

---

[7] EDS is, for purposes of the data discovery disputes is this action, GM's Custodian of Records.  The vehicle misallocation and vehicle allocation disputes have used File A (monthly shipment) and File B (weekly shipment) to describe the disputed data.  File A and File B are not terms used by EDS's data storage personnel, *see EDS* at 32-33.

should abstain from a decision on the point unless there are no other available grounds of decision. For purposes of the record, should there be subsequent proceedings related to GM's document production in this action, Exhibit A. to this Opinion and Order sets out the facts elicited in the EDS deposition that have relevance to the past few years' data production disputes in this action.

**IV.    The Court's Order Reopening Discovery and Summary Judgment Briefing Is Not Warranted and Grants the Plaintiff Relief it Never Sought.**

**V.    If the Court Allows the Re-Opening of Discovery, Expert Reports, and Summary Judgment Briefing, the Schedule Should Be Amended.**

In an attempt to be more explicit than it was in the September 25, Order, the court has not said its final words on what further discovery, expert discovery or reports, pleadings, or related evidentiary supplementation, would be permitted in addition to the leave already granted both GM and Serra in the September 25 Order to file new summary judgment pleadings. The September 25 Order was designed to ensure that data relevant to the ADDCA claims was produced, if it had not already been produced. Having considered the EDS deposition while reviewing GM's motion, it looks like all data production issues have or will resolve on their own since GM has said it produced this data to Serra in September of 2005. Were Serra to file something new from its experts that GM has not previously addressed in its summary judgment motions, I would grant GM leave to respond. And, should it become

necessary, the schedule will be adjusted to take into account any changes in the case's procedural or substantive posture.

Further, in the event that paragraph 2 of the directive portion of the September 2005 Order (beginning at page 28) is ambiguous or confusing, the penultimate sentence will be amended to reflect that sanctions for failure of production will be linked specifically to the ADDCA claims because I have expressly determined that vehicle allocation data may be relevant to Serra's ADDCA claims (*e.g.*, as part of the history of dealings between the parties) although not for other purposes (such as the MVFA claims).

For the reasons stated in this Opinion and Order, GM's Motion is **GRANTED** in part and the September 25, Opinion and Order is **AMENDED**:

A) to reflect what is made explicit herein as to the effect of Document 33 on vehicle misallocation claims and vehicle misallocation discovery predating April 16, 2001, *i.e.*, that there are no such claims and will be no discovery as to such claims;

B) to make October 30, 1998, not September 12, 1998, the earliest date applicable to discovery concerning Serra's ADDCA claims;

C) to say that if there was a finding made that the GM September 25 data production at the time of the EDS deposition was "new evidence" as to vehicle

misallocation, or that any earlier GM data production (*e.g.*, the June, 2005 shipment data production) was "new evidence" as to vehicle misallocation, then, as to any such production that was (or is later determined to be) part of the *Serra* Record on Appeal, any such finding is **WITHDRAWN** as **MOOT** because the Eleventh Circuit was aware of it at the time it issued its opinion in *Serra*.

  D)  the last two sentences of Paragraph 2. at 28-29 are **stricken**, and replaced by the following:

> **Because, *inter alia*, the deposition of GM's record custodian, EDS, shows this data has always been available for production merely upon request by GM, failure to produce such data may result in the imposition of sanctions on GM, including but not limited to the striking of GM's pleadings regarding Serra's ADDCA claims, and the entry of default judgment against GM and in favor of Serra on Serra's ADDCA claims where, as a result of such failure, Serra is found to have been prejudiced in its ability to prove that the manner in which GM allocated vehicles during any time period relevant to the ADDCA claims damaged Serra, and GM is put on notice accordingly. The last two sentences of 1., above, dealing with unnecessary discovery are incorporated by reference as though fully set forth herein.**

  E)  GM's Motion is **DENIED without prejudice** as to any other relief requested by way of reconsideration, including but not limited to those portions seeking modification of the scheduling order or seeking leave to file additional

pleadings or take further discovery such as redeposing Serra's experts or amending GM's experts' disclosures and reports.

    **DONE** and **ORDERED** this the 27th day of October, 2006.

                                                                           **VIRGINIA EMERSON HOPKINS**
                                                                           United States District Judge

**Exhibit A**

EDS is GM's custodian of records as to vehicle data relevant to this action. The deposition of EDS's representative Steven Gergics was taken on September 8, 2005, nearly four (4) months after the May 20, 2005, Order involved in *Serra*. At the time, GM's *Serra* Appellant Brief had already been filed in the Eleventh Circuit.

The EDS deposition centers around two meetings, and the documents ("data") retrieved by EDS after the second meeting. Steven Gergics ("Gergics"), the EDS deponent, represented EDS at both meetings. The first meeting was in late 2004 or early 2005, the second was nine (9) months later at the beginning of September, 2005, a week or so prior to the EDS deposition. (GM knew the subpoena to EDS was coming when it had the second EDS meeting). At the time of the second meeting, briefing was partially completed in *Serra*. In the interim between the two meetings, GM had been ordered to produce data about vehicle allocation / misallocation, held in contempt after a hearing in February, 2005, and, after a May 16, hearing, the Sanctions Order appealed in *Serra* had been entered.

Gergics testified he operated ("owned" in his terminology) the vehicle allocation system software and data for GM's vehicle allocation personnel (which he also described as the "order fulfillment" team). *EDS* at 7-8. When GM had a request about such data, Gergics and his team would coordinate EDS's response to the GM

request. *Id*. at 8.  Gergics would make sure GM's data storage or retrieval system was up and available, functioning in response to "...their corporate strategy or their –our contract – contractual uptimes for our application." *Id* at 9.  Gergics and his team managed the data methodology by which GM distributes vehicles to its dealer body. *Id*.  At EDS, Gergics had been the system owner for three (3) years, and before that, he had been a subject expert (one responsible for the knowledge of a particular systems application), a systems engineer, and had helped develop new technology for such systems.  *Id*. at 10.

Gergics described the first (late 2004/early 2005) meeting, which included Jones) and GM's legal team (including at least one GM attorney in this action, who participated by telephone from Alabama) as

> "...educating the GM legal team of the reporting, the historical data reports that EDS provided for these - - these - - this dealer, I believe, at the time, or maybe it was just that one.  The wanted EDS's understanding of the report along with the GM order fulfillment team, as well.  They wanted to get the GM legal team comfortable about the process, the allocation process, and it was more of an explanation of that report.
> Q. So it was more educating lawyers.
> A. Exactly, exactly."

*EDS* at 27.
> "...I don't believe we even had data in there.  It was more just going over the formatting of the report, what this field means, what that field means. I don't think we went over anything as far as actual data for any group or any dealer."

*EDS* at 27-28.

Gergics also testified that GM's original data request to EDS did not include the period from January to June, 2001, and that no one from EDS told GM such data had been deleted or did not exist. *Id*. At 37-38.

At the time of the May, 2005, Sanctions hearing, GM was representing that everything prior to November of 2001 dealing with Serra and Edwards had been deleted, Doc. 227, Ex. A at 72; that was subsequently modified on appeal to June, 2001. Also at the May, 2005 Sanctions hearing, GM acknowledged at p.85 that its duty to retain documents was triggered by requests for production and by the complaint(s). The court was also told that GM's allocation expert, Tim Jones, had testified that, as to Serra and Edwards data prior to November of 2001, "it was not saved", *id*. at 76, that GM "could not produce what it did not have", and that Serra's problem was "..it's simply a matter of the plaintiff doesn't like what has been produced." *Id*. at 79.

Gergics described the second (August 2005) meeting thus:

"They [GM] wanted to get a clarification for or - - historical retention policy, the fact that we have 37 months of retention for GM dealer data." *(Id*. at 28) ...they were asking whether there were other data stored beyond - - or any other mechanisms for storing data, and Diana Mata, a GM employee, mentioned that we [EDS] have tape storage as well for data. We then explained the tape storage was a 14 - day - - 14-day tape storage that we do. In case we have a disaster, we have a backup tape

15

>recovery plan for the tape storage." *EDS* at 20-21. ( GM counsel Joe Lines was present at the meeting, and instructed the participants not to take notes.)

*Id*. at 20.

Finally, Gergics testified what happened when the subpoenas to EDS were received. Gergics's team gathered the requested data (which, based on Gergics' knowing what File A and File B data were, included such data, *EDS* at 32-35), Gergics reviewed it and testified that when he reviewed the data for

>"the seven specified Serra [Birmingham metropolitan Chevrolet] dealers going back from January of 1998 through January of 2004...and I - - then by looking at the data that I've provided, I verified - - I saw that there was data dating back - - dating back to the time frame –I forget what the early time frame was, but I verified that there was some data dating earlier than the request made by GM".

*EDS* at 35.

When asked about the two (2) Serra subpoenas served on EDS, Gergics testified that, while some data was not produced to anyone besides EDS's lawyers, there was nothing requested in the subpoenas that he (EDS) did not have. *Id*. at 14.

At that point Gergics called EDS's outside counsel, Gregory Kopacz ("Kopacz") (*EDS* at 35). Kopacz in turn called Joe Lines, GM counsel. *EDS* at 36. Kopacz determined, upon looking at a printout of the subpoenaed data he had received from Gergics and his team "that there were some dates on there earlier than I had expected based, you know, what little I knew about the case. I then tried to figure out

16

why it was there, why we had it, and once I determined that we did, in fact, have it, I then placed a phone call to (GM corporate counsel) Joe Lines on Monday of – it would have been last week...Monday before Labor Day". *EDS* at 36. (The day of the Kopacz to Lines call would have been August 28.)

The EDS deposition shows that GM had access to the disputed data involving Serra and Edwards and as to data involving the seven (7) Birmingham metropolitan area Chevrolet dealers. The EDS deposition shows that GM's access was there for the asking. GM's repeated statements to the contrary that such data didn't exist, that such data had been deleted, and that GM couldn't produce what it didn't have were based on a failure to ask EDS, its custodian of records for such data, whether or not the custodian had the data. When, in August, 2005, a subpoena was issued to EDS and GM did ask for the older data, EDS did have it.

Succinctly put, when the record is reviewed against the backdrop of the EDS deposition, GM has made a series of oral and written representations about its ability to locate data dealing with Serra and Edwards. Likewise, GM has made similar representations about its ability to locate data dealing with the other Birmingham metropolitan area Chevrolet dealers. Both sets of representations appear to be based on GM's 36 month data retention policy, and not on whether in fact the data had been preserved. Up until August of 2005, when GM was requested or ordered to produce

such data, GM did not request its records custodian to search for the data.